1                    UNITED STATES DISTRICT COURT

2                      DISTRICT OF MASSACHUSETTS

3                                  No. 1:13-cr-10164-WGY

4

5
    UNITED STATES OF AMERICA
6

7
    vs.
8

9
    MICHAEL BOURQUE, et al
10

11

12                            * * * * * * * *

13

14                        For Jury Trial Before:
                          Judge William G. Young
15

16
                          United States District Court
17                        District of Massachusetts (Boston)
                          One Courthouse Way
18                        Boston, Massachusetts 02210
                          Monday, April 14, 2014
19

20                            * * * * * * * *
21

22              REPORTER: RICHARD H. ROMANOW, RPR
                        Official Court Reporter
23                   United States District Court
          One Courthouse Way, Room 5510, Boston, MA 02210
24                   bulldog@richromanow.com

25

```
 1              A P P E A R A N C E S

 2   MICHAEL I. YOON, ESQ.
     NEIL GALLAGHER, ESQ.
 3      United States Attorney's Office
        J. Joseph Moakley U.S. Courthouse
 4      1 Courthouse Way, Suite 9200
        Boston, Massachusetts 02210
 5      (617) 748-3180
        Email: michael.yoon2@usdoj.gov
 6      For the United States

 7   WILLIAM H. CONNOLLY, ESQ.
        20 Park Plaza, Suite 1000
 8      Boston, MA 02210
        Email: Whc@williamconnollylaw.com
 9      For Michael Bourque

10   JOHN G. SWOMLEY, ESQ.
        Swomley & Tennen, LLP
11      227 Lewis Wharf
        Boston, Massachusetts 02110-3927
12      Email: Jswomley@swomleyandtennen.com
        For Robert Hagenaars
13
     JOHN F. PALMER, ESQ.
14      Seven Faneuil Hall Marketplace, North Bldg., 3rd Floor
        Boston, Massachusetts 02109
15      Email: Jpalmer@socialaw.com
        For Brian Chisholm
16
     DEREGE B. DEMISSIE, ESQ.
17      Demissie & Church
        929 Mass. Ave., Suite 01
18      Cambridge, Massachusetts 02139
        Email: Dd@demissiechurch.com
19      For Phillip Goolst

20   E. PETER PARKER, ESQ.
        151 Merrimac Street
21      Boston, Massachusetts 02114
        Email: Peter@parkerslaw.com
22      For Frank McGuire

23   LESLIE FELDMAN-RUMPLER, ESQ.
        101 Tremont Street, Suite 708
24      Boston, Massachusetts 02108
        Email: Lfedlmanr@aol.com
25      For Michael Roy
```

```
 1          (Continued.)

 2   LIAM D. SCULLY, ESQ.
         101 Summer Street, Fourth Floor
 3       Boston, MA 02110
         Email: Liamdscully@aol.com
 4       For Sean Cotter

 5   DAVID J. APFEL, ESQ.
     ROBIN SCHWARTZ, ESQ.
 6       Goodwin Procter, LLP
         Exchange Place, 53 State Street
 7       Boston, Massachusetts 02109
         Email: Dapfel@goodwinprocter.com
 8       For Mark Newton

 9   EDWARD J. McCORMICK, ESQ.
         McCormick & Maitland
10       195 Main Street, Suite Six - Hayward Manor
         Franklin, Massachusetts 02038
11       Email: Ejmccormick3@verizon.net
         For John Kinney
12
     DEVIN W. McBRIDE, ESQ.
13       One International Place, Suite 1820
         Boston, Massachusetts 02110
14       Email: Dvnmcbride33@gmail.com
         For Raymond Panaggio
15
      JAMES H. BUDREAU, ESQ.
16       Law Office of James H. Budreau
         20 Park Plaza, Suite 1405
17       Boston, Massachusetts 02116
         Email: Jamesbudreau@gmail.com
18       For Corey Assencoa

19    JOHN M. DOMBROWSKI, ESQ.
         Dombrowski & Aveni
20       6 Grove Avenue
         Leominster, Massachusetts 01453-3324
21       Email: Johnmdombrowski@yahoo.com
         For Mark Ouellette
22

23

24

25
```

1                    I N D E X

2

3     PLEA CHANGE HEARINGS............................   5

4     JURY SELECTION................................. 136

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                     P R O C E E D I N G S
2                (Begins, 9:15 a.m.)
3                THE CLERK:  Criminal Action 13-10164, the
4      United States of America versus Bourque, et al.
5                THE COURT:  I'm going to proceed this way.
6      I'm informed that various of the individuals at the bar
7      desire to tender pleas of guilty.  So let's just get the
8      folks in, and the Clerk has set it up for me, who are
9      sitting in the jury box, to identify themselves.  I'm
10     going to be talking to you individually.
11           But, Mr. Kinney?
12                MR. KINNEY:  Yes, your Honor.
13                THE COURT:  Thank you.
14           Mr. Goolst?
15                MR. GOOLST:  (Nods.)
16                THE COURT:  Yes.
17           Mr. Akasa?
18                MR. AKASA:  (Raises hand.)
19                THE COURT:  Thank you.
20           And, Mr. Roy?
21                MR. ROY:  (Raises hand.)
22                THE COURT:  All right.  And, counsel, you
23     should feel free to come stand by your clients.  They're
24     in custody, so naturally I've got marshals here, but you
25     get so you can consult with your clients.  And I'll
```

1    stand here so that I can speak to them all directly.

2            Well, actually, that's not going to work, I've

3    got to look at them, because we're going to talk, we're

4    really going to talk together.  And while I can do this

5    and I can do it fairly in a group, each one of you is

6    entitled to be treated individually.  Each one of you is

7    in charge, really in charge of whether you're going to

8    go through with this and plead guilty or not.  So let me

9    start this way.

10           My name is Bill Young.  I'm the judge who is

11    responsible for presiding in this session of the court.

12    I hear, through the lawyers, who told the Clerk, that

13    each one of you wants to plead guilty to the charge that

14    has been made against you individually.  Before I can

15    let you plead guilty, I have to find out certain

16    things.

17           I have to find out that you, each one of you,

18    knows what you're doing.  I have to find out that you

19    know what you're giving up, because you give up things

20    that are terribly important to you.  I have to find out

21    that you know what you're letting yourself into, what

22    can happen to you if you plead guilty.  I have to find

23    out that you want to plead guilty, not that you're happy

24    about it, but that you, individually, each one of you --

25    not the lawyers, not your family, nobody else, you've

decided that the best thing for you to do is plead

guilty.  And then I have to find out that the government

has enough evidence against each one of you that if we

go to trial on this case, you could be found guilty of

the charge against you.

        To find these things out, I ask you questions.  If

you don't understand something I'm asking you, stop me.

I have to explain it so that you understand it.  And

while I need to look you in the eye and we need to talk,

your lawyers have come up as close as we can manage so

that you can talk to them and you can stop this at any

time and say, "I want to talk to my lawyer."  Just

gesture, I'll stop and we'll wait.  I'm not in a hurry

here.

        Lastly it's entirely up to you whether you go

through with pleading guilty today or not.  If you

decide you don't want to plead guilty, I'm not going to

be angry.  I'm all set to go to trial, my job is to give

fair and impartial trials, and I'm ready to give you,

each one of you, such a trial.

        I want to be very clear with you that I would

never ever punish you or any of the co-defendants for

going to trial.  Having a trial is one of your

constitutional rights.  Now, real world, usually there's

a discount for people who plead guilty.  The reason?

```
 1    The government doesn't have to spend the tax money to
 2    have a trial.  Usually I give the discount.  I'm not
 3    bargaining with you, you're entitled to know how I
 4    work.  Unless I find out you've committed some other
 5    crime or you lied to me or something like that, usually
 6    I give the discount.  So if you decide you want a trial,
 7    fine, no discount, but I'll never punish you, not one
 8    day, for going to trial.
 9               Now, let's go, I'm going to do the, "Do you
10    know what you're doing?" piece of it first.
11               But before I ask the questions, you should be
12    sworn and the Clerk will swear you.
13               (ALL DEFENDANTS, sworn.)
14               THE COURT:  And we'll start in the order that
15    I called your name.
16          And, Mr. Kinney, would you state your full name.
17               MR. KINNEY:  John Patrick Kinney.
18               THE COURT:  And, Mr. Kinney, do you understand
19    the things I've just explained?
20               MR. KINNEY:  Yes, your Honor.
21               THE COURT:  How old are you, Mr. Kinney?
22               MR. KINNEY:  34.
23               THE COURT:  How far did you go in school?
24               MR. KINNEY:  I got my GED.
25               THE COURT:  Are you taking any medication
```

1    today?

2            MR. KINNEY:  No.

3            THE COURT:  Under the influence of alcohol?

4            MR. KINNEY:  No.

5            THE COURT:  Under the influence of any drug?

6            MR. KINNEY:  No.

7            THE COURT:  Know what you're charged with?

8            MR. KINNEY:  Yes.

9            THE COURT:  Tell me.

10            MR. KINNEY:  Conspiracy with intent to

11    distribute oxycodone.

12            THE COURT:  We'll stop there, for the moment.

13        Mr. Goolst, will you state your full name.

14            MR. GOOLST:  Philip Goolst.

15            THE COURT:  And did you understand the things

16    that I've just explained?

17            MR. GOOLST:  Yes.

18            THE COURT:  How old are you, sir?

19            MR. GOOLST:  44.

20            (Interruption by Court Reporter.)

21            THE COURT:  How far did you go in school?

22            MR. GOOLST:  High school.

23            THE COURT:  One thing I skipped with

24    Mr. Kinney and I'm going to go back.

25            Have you ever been treated for a mental condition

1    of any sort?  And I'll stick with you, Mr. Goolst.

2                    MR. GOOLST:  No.

3                    THE COURT:  Are you taking any medication

4    today?

5                    MR. GOOLST:  No.

6                    THE COURT:  Are you under the influence of

7    alcohol?

8                    MR. GOOLST:  No.

9                    THE COURT:  Under the influence of any drug?

10                   MR. GOOLST:  No.

11                   THE COURT:  Do you know what you're charged

12   with?

13                   MR. GOOLST:  Yes.

14                   THE COURT:  Tell me.

15                   MR. GOOLST:  Conspiracy to deliver oxycontin.

16                   THE COURT REPORTER:  I'm sorry, Judge, I

17   didn't hear that.

18                   THE COURT:  Conspiracy to deliver oxycontin,

19   he said.

20        And back to you, Mr. Kinney, because I didn't ask

21   about your mental state.

22        Have you ever been treated for any mental

23   condition of any sort?

24                   MR. KINNEY:  No, your Honor.

25                   THE COURT:  Are you aware of any mental

```
 1    condition you may have?

 2              MR. KINNEY:  No.

 3              THE COURT:  All right.  Now we'll got to

 4    Mr. Akasa.

 5         Would you state your full name, sir.

 6              MR. AKASA:  David Akasa.

 7              THE COURT:  And, Mr. Akasa, do you understand

 8    the things that I have just explained here?

 9              MR. AKASA:  Yes.

10              THE COURT:  How old are you?

11              MR. AKASA:  25.

12              THE COURT:  How far did you go in school?

13              MR. AKASA:  College.

14              THE COURT:  A graduate?

15              MR. AKASA:  I was a senior.

16              THE COURT:  All right.  Have you ever been

17    treated for a mental condition of any sort?

18              MR. AKASA:  No.

19              THE COURT:  Are you aware of any mental

20    condition you may have?  You have to answer.  You said

21    "No"?

22              MR. AKASA:  No.

23              THE COURT:  All right.  Are you taking any

24    medication today?

25              MR. AKASA:  Yes.
```

```
 1                    THE COURT:  Tell me, if you don't mind.

 2                    MR. AKASA:  Insulin.

 3                    THE COURT:  What's that for?

 4                    MR. AKASA:  Diabetes.

 5                    THE COURT:  Are you taking it as prescribed?

 6                    MR. AKASA:  Yes.

 7                    THE COURT:  How do you feel today?

 8                    MR. AKASA:  Good.

 9                    THE COURT:  My concern is you feel normal and

10    able to make decisions on your own, is that right?

11                    MR. AKASA:  Yes.

12                    THE COURT:  And so you know that I'm the judge

13    and I'm neutral, you know that the government is the

14    prosecutor, they're the ones who are pressing the

15    charge, and you have a lawyer who is representing you,

16    and you understand those roles?

17                    MR. AKASA:  Yes.

18                    THE COURT:  Do you think you can make your own

19    decisions today?

20                    MR. AKASA:  Yes, sir.

21                    THE COURT:  Are you under the influence of

22    alcohol?

23                    MR. AKASA:  No.

24                    THE COURT:  Are you under the influence of any

25    drug?
```

1              MR. AKASA:  No.

2              THE COURT:  Do you know what you're charged

3    with?

4              MR. AKASA:  Conspiracy with intent to possess

5    and distribute oxycodone.

6              THE COURT:  All right.

7         And, Mr. Chisholm, would you state your full name.

8              MR. CHISHOLM:  Brian Chisholm.

9              THE COURT:  How old are you, Mr. Chisolm?

10             MR. CHISOLM:  45.

11             THE COURT:  How far did you go in school?

12             MR. CHISHOLM:  I graduated high school,

13   attended college.

14             THE COURT:  How far did you get in college?

15             MR. CHISOLM:  A little short of an associate's

16   degree.

17             THE COURT:  Have you ever been treated for a

18   mental condition of any sort?

19             MR. CHISHOLM:  No.

20             THE COURT:  Are you aware of any mental

21   condition you may have?

22             MR. CHISHOLM:  No.

23             THE COURT:  Are you taking any medication?

24             MR. CHISHOLM:  No.

25             THE COURT:  Under the influence of alcohol?

```
1                    MR. CHISHOLM:  No.

2                    THE COURT:  Under the influence of any drug?

3                    MR. CHISHOLM:  No.

4                    THE COURT:  Do you know what you're charged

5       with?

6                    MR. CHISOLM:  Yes.

7                    THE COURT:  Tell me.

8                    MR. CHISOLM:  Conspiracy to possess and

9       distribute oxycodone.

10                    THE COURT:  And, Mr. Roy, would you please

11      state your full name.

12                    MR. ROY:  Francis Roy.

13                    THE COURT:  And how old are you, sir?

14                    MR. ROY:  33.

15                    THE COURT:  And how far did you go in school?

16                    MR. ROY:  I graduated high school.

17                    THE COURT:  Have you ever been treated for a

18      mental condition, sir?

19                    MR. ROY:  No, sir.

20                    THE COURT:  Are you aware of any mental

21      illness or condition you may have?

22                    MR. ROY:  No.

23                    THE COURT:  Are you taking any medication

24      today?

25                    MR. ROY:  No.
```

1          THE COURT:  Under the influence of any drug?

2          MR. ROY:  No, sir.

3          THE COURT:  Under the influence of alcohol?

4          MR. ROY:  No.

5          THE COURT:  Do you know what you're charged

6     with?

7          MR. ROY:  Yes.

8          THE COURT:  Tell me.

9          MR. ROY:  Conspiracy to distribute oxycodone.

10         THE COURT:  Do you understand the matters that

11    I explained when I first starting talking to you this

12    morning?

13         MR. ROY:  Yes.

14         THE COURT:  And I'll skip back to you,

15    Mr. Chisholm.

16         Do you understand the matters I explained to you

17    earlier?

18         MR. CHISOLM:  Yes.

19         THE COURT:  And, Mr. Akasa, do you understand

20    the matters I explained to you earlier?

21         MR. AKASA:  Yes.

22         THE COURT:  All right.

23         Now, talking to you all, I want to explain to you

24    your rights, perhaps not all of them, but your

25    significant rights.

1          The government has made this charge, it's a charge

2     of conspiracy, but each one of you now starts innocent

3     and the government has to prove as to each one of you

4     individually that you are guilty of conspiracy.  You're

5     entitled to an individual verdict even though we'll try

6     the case as to a group.  The verdict will be

7     individual.

8          Now, here's what they've got to prove and they've

9     got to prove it, the government, beyond a reasonable

10    doubt.  They have to prove that each one of you joined

11    in a conspiracy to do something that the law prohibits.

12    And this joinder in the conspiracy -- and it's not good

13    enough that maybe you hung around with the wrong people,

14    it's not proof of conspiracy that other people were

15    engaged in a conspiracy to possess oxycodone with intent

16    to distribute or do other acts that violate the law,

17    even if you knew about it.  "Conspiracy" means you and

18    one of the other people that they have charged, or more

19    than one, engaged in an actual deal to violate the law,

20    an actual agreement.

21          Now, the deal has got to be with another

22    co-conspirator, another person who, like you, is

23    prepared, is planning, is agreeing to violate the law.

24    Undercover police officers, informants, they don't

25    count, they're not co-conspirators because they're not

1    really, truly -- whatever they may say, they're not

2    truly in on the deal.

3         So conspiracy is that criminal agreement to

4    violate the law.  It doesn't have to be in writing.  It

5    doesn't have to be a handshake.  It doesn't have to be a

6    wink or a nod.  But it's got to be genuine.  They've got

7    to prove that you got in on or formed, were part of,

8    agreed, with this conspiracy to violate the law.  That's

9    one thing.

10        The second thing they've got to prove is that what

11   the specific goal, the specific intent of the

12   conspirators is, and in this case the specific intent

13   is, the goal of the conspiracy has got to be, um, not,

14   for example, receiving stolen refrigerators and

15   distributing them -- it isn't just a conspiracy to

16   violate the law in some respects, it's a specific

17   conspiracy, and here the specific conspiracy that

18   they've charged and they've got to prove is to possess

19   with intent to distribute oxycodone.

20        What does that mean?  "Possess" means what you

21   would think it would mean, it's the common understanding

22   of "possess."  You "possess" something when you have

23   it.  I've got my keys in my pocket.  I possess them.

24   I'm carrying them around.  But it also means having the

25   power to exercise control over them.  I have a briefcase

in my office here in the building.  Now I'm here in the

courtroom, the briefcase is there, but I put the

briefcase there and I can go take it when I want it.  I

possess it.

So, first of all, the goal has to be to

possess of the conspiracy.  Here it's to possess

oxycodone, a specific substance, a substance that the

law forbids the people from possessing, unless available

through the medical business and the like.  But the law

generally forbids us all from possessing oxycodone.

That's not enough.  It's to possess this oxycodone

with the idea not of using it, not of taking it, but of

distributing it.  And distributing it, in terms of the

law, means passing it on to other people.  Now, usually

that means selling it and making some money from the

sale of it.  But the charge here is conspiracy, it's an

agreement to violate the law and the specific conspiracy

is to possess oxycodone with the intent to distribute

it.  And that's the charge.

The government doesn't have to prove that any of

you actually did it, but they have to prove that you

were in on a deal to do it.

In this session of the court, as I read the

Constitution, one of the things that may bear upon what

sentence I will impose upon you, if you plead guilty or

are found guilty, is how much oxycodone is reasonably
attributable to each one of you.  That doesn't mean how
much oxycodone you actually distribute, actually did, it
means how much reasonably you knew this group, these
conspirators, were dealing with, whether you did it or
not.  I'll make them prove it to a jury beyond a
reasonable doubt.

Now, there may be some other things, which one was
the leader or something else.  Anything that would make
your sentence higher, any of the things I'm supposed to
look at to decide what sentence -- not the stuff that
helps you, a discount because you pleaded guilty, or
anything else about you personally, that they don't have
to prove, but I'll consider it at the appropriate time.
But anything that would make your sentence higher, I'll
make them prove it to a jury beyond a reasonable doubt
if we go to trial.

I keep talking about proving and trials.  If we go
to trial here, a jury will decide these things, not me.
The jury, you'll have some say through your attorneys
who sits on that jury.  So the government has some say,
too, but you have some say.  The jury of average people,
they'll be the ones who decide.

At the trial you have the right to confront the
witnesses against you.  Now that means the witnesses,

1    they'll testify right there from that witness stand,

2    you'll be right here in the courtroom, you can watch

3    them, but much more important than that, just watching

4    them, your lawyers can ask them questions, can cross-

5    examine them, your lawyers can make arguments on your

6    behalf, your lawyers can suggest that as to the two

7    elements I say the government has to prove, there is a

8    reasonable doubt.  And if there's a reasonable doubt,

9    you cannot be found guilty.  The lawyers can argue that.

10        You can call witnesses on your own behalf.  You

11   can testify on your own behalf, but you don't have to.

12   In fact you don't have to do anything.  The government

13   made these charges -- or the charge, it's a single

14   charge, and the government has got to prove this charge

15   beyond a reasonable doubt.  You don't have to do

16   anything.  You can sit there at counsel table and see

17   what the government proves.  And to the extent you're

18   silent, I say to the jury, you're innocent.  That's the

19   word I use.  You are innocent people.  And the

20   government made the charge, the government's got to

21   prove the charge beyond a reasonable doubt.

22        Now, you can push back in all the ways that I

23   said, but you don't have to, you don't have to do

24   anything, and they cannot, the jury cannot hold it

25   against you.

1          Now that applies to me, too, seriously insofar as

2     my mind can do it.  Yes I come in here, I'm told certain

3     people are going to plead, you people are in custody,

4     that's to make sure you show up for the trial, but to me

5     you're all innocent because I don't know what the

6     evidence is going to be in this case and my job is to

7     give a fair and impartial trial.  So I'm not thinking,

8     "Well, this one is probably guilty and maybe there's

9     some question about that one," to me you're innocent.

10    And when I explain these things, I'm not giving you

11    anything.  These are your rights, you have every one of

12    these rights.

13          Now, if you plead guilty, you're giving them all

14    away.  Here's what's going to happen.  When I'm done

15    making sure you're acting voluntarily, I'll say to

16    Mr. Yoon, "So as to these five folks, what have you got,

17    tell me briefly what evidence you have?"  And then I'll

18    say, "Well, is that true?  Do you understand that?"

19    That's as close to a trial as you ever get.  There's

20    never a jury.  You don't have the right to cross-examine

21    or confront the witnesses against you.  You still have

22    the right to be silent.

23          Now, that's true.  Until I sentence you, you don't

24    have to say anything about what your involvement is.

25    Once you're sentenced though, then the government has

1    every right to find out what you did as to this charge,

2    what you did as to this charge, once you're sentenced.

3    In other words, your right to be silent is gone.

4         Now, for the ones who want to go to trial, I plan

5    to start the trial today.  But who knows?  Suppose I

6    continued that trial and then, as time passes, I

7    sentence you, that means you can be called to testify

8    against the other people they've charged and you have,

9    if you're sentenced, you have nothing to say about it.

10        Likewise if you plead guilty here this morning and

11   you go from truly being innocent, as far as I'm

12   concerned, to being guilty, you're guilty and all that

13   remains is for me to figure out what the sentence is,

14   not today, but once I've got a presentence report.

15   There's no taking back the plea if you plead, then

16   you're guilty, and all I have to do is sentence you.

17        Now, Mr. Kinney, do you understand all those

18   things I just explained?

19             MR. KINNEY:  Yes, your Honor.

20             THE COURT:  And, Mr. Goolst, do you understand

21   those things?

22             MR. GOOLST:  Yes, your Honor.

23             THE COURT:  Mr. Akasa, do you understand those

24   things?

25             MR. AKASA:  Yes.

1          THE COURT:  Mr Chisholm, do you understand
2     those things?
3          MR. CHISHOLM:  Yes, your Honor.
4          THE COURT:  And, Mr. Roy, do you understand
5     those things?
6          MR. ROY:  Yes, your Honor.
7          THE COURT:  Now let's talk about what may
8     happen to you.  And because sentencing is complex, I
9     need to talk to the government's lawyer here and it may
10    be different for different ones of you for different
11    reasons.  So I turn now to the -- and I'll go person by
12    person and we'll figure it out, some of you are pleading
13    without a plea agreement, some of you have plea
14    agreements and we'll take that individually.  But the
15    reason I talk to him now is just what he thinks he can
16    prove.  He's the one whose job it is to see if he can't
17    come up with a sentence that the government wants.
18        So while you're still innocent, you need to listen
19    to what he says could happen to you.  Now that doesn't
20    mean that that's what I will do, I'm neutral, I'm the
21    judge, but ultimately I will sentence, and I need to
22    know from him what, as I would constitute it, what's the
23    highest thing, what's the heaviest sentence I could
24    impose upon you.  And that is I don't -- let's say I
25    don't give you any discount and I go as high as the

1    sentencing guidelines will go, which is as high as I

2    think the Constitution will allow me to go, and then I

3    want him to tell me what the sentencing guidelines

4    recommend.

5         Now that doesn't mean -- and if there's any

6    mandatory minimum, I want to know that.  I want to know

7    it because I want you to know it while you're still

8    innocent.  And then if you have a plea agreement, I want

9    to go over the plea agreement so that you really know

10   what could happen to you here.  So now we're going to go

11   person by person and talk it through.

12        So we'll start with Mr. Kinney with respect to --

13   I want to know what enhancements and where they lead,

14   talk of the guideline, and then I want to know with it

15   the discount for the plea, what's the range.

16             MR. YOON:  Yes, your Honor.

17        For Mr. Kinney, given that the defendant, um, was

18   responsible for 498 to 1,990 oxycodone 30-milligram

19   pills, which translates into 14.92 grams and 59.70 grams

20   of oxycodone, the equivalence of between 100 and 400

21   kilograms of marijuana, leads to a base offense level of

22   26 at the criminal history 2.

23        And so, your Honor, just simply that, um, it is 70

24   to 87 months, that is without a plea.  Should there be a

25   plea of guilty, the guideline range would be 51 months

```
 1   to 63 months.
 2               THE COURT:  And no minimum mandatory?
 3               MR. YOON:  Correct, your Honor.
 4               THE COURT:  All right.
 5       Mr. Kinney, now, you and I need to talk.  So what
 6   he tells me is if you plead guilty here, I could send
 7   you to prison for 87 months.  And I'm going to use all
 8   these figures because -- I'm not saying it would be
 9   higher than 87, but you understand it could be up to 87
10   months.  Are you clear on that?
11               MR. KINNEY:  Yes, your Honor.
12               THE COURT:  Now, under these guidelines,
13   they're advisory, I don't have to follow them.  I can go
14   higher.  I can go lower.  And at the sentencing I'm
15   going to listen to your attorney as well.  But the
16   guidelines are just that, they're guidelines, and I take
17   them seriously.  And they say, for the government, that
18   I should sentence you to prison for 51 to 63 months.  Do
19   you understand that?
20               THE DEFENDANT:  Yes, your Honor.
21               THE COURT:  Now, in your case you have a plea
22   agreement.  Let's take a look at it, make sure that is
23   your plea agreement.
24               MR. KINNEY:  Yes, it is.
25               THE COURT:  And have you read that?
```

1              MR. KINNEY:  Yes, sir.

2              THE COURT:  And have you talked it all over

3     with your attorney?

4              MR. KINNEY:  Yes, I have.

5              THE COURT:  Do you think you understand it?

6              MR. KINNEY:  Yes.

7              THE COURT:  So let's see what it says.

8         With a plea agreement, it's like a contract

9     between you and the government.  If you do what you're

10    supposed to do under the plea agreement, I will make

11    them do what they're supposed to do under the plea

12    agreement.  But you understand I'm not bargaining with

13    you, I just want you to understand.

14        Do you understand that?

15             MR. KINNEY:  Yes, your Honor.

16             THE COURT:  So here's what they say they are

17    going to recommend.  (Pause.)  They say they are going

18    recommend the discount and the low end of the

19    guidelines, is that how you understand it?

20             MR. KINNEY:  Yes, your Honor.

21             THE COURT:  So it sounds like they're going to

22    be recommending that you go prison for 51 months.  Do

23    you understand that?

24             MR. KINNEY:  Yes, your Honor.

25             THE COURT:  Okay.  They put in all these plea

1    agreements that if I sentence you in accordance with

2    what this deal is here, that you can't appeal, you can't

3    challenge it after I sentence you, and that's the law to

4    put this in here.  But when I come to sentence you, if

5    you plead guilty or are found guilty, I'm going to tell

6    you that you have a right to appeal and you do.  The

7    problem is that the only way you do, if you go through

8    with this, with this plea agreement, is if there is

9    something called "manifest injustice," because they're

10   going to run right into me or some judge in a higher

11   court and say, "Look, he pleaded guilty and he waived

12   his rights to appeal and the like."  Now, a judge could

13   find manifest injustice, but I'll tell you, since I

14   started seeing this in plea agreements, I've never seen

15   a case where that happened.  So in effect you've lost

16   your right to appeal.

17        Do you understand that?

18             MR. KINNEY:  Yes, your Honor.

19             THE COURT:  Now, other than this deal, that's

20   what your plea agreement is, has there been any promise

21   made to you, any promise at all to get you plead

22   guilty?

23             MR. KINNEY:  No, your Honor.

24             THE COURT:  No one said, "You know, plead

25   guilty before Young because we know he'll do this or

1    that"?

2                  MR. KINNEY:  No, your Honor.

3                  THE COURT:  Did anyone threaten you with

4    anything to get you to plead guilty?

5                  MR. KINNEY:  No.

6                  THE COURT:  This is a conspiracy case.  Are

7    you covering up for someone else by pleading guilty

8    yourself?

9                  MR. KINNEY:  No.

10                 THE COURT:  Do you know that if you're

11   pleading guilty to this charge, um, if you are not a

12   citizen, you have the risk of being deported from the

13   United States, denied admission under the laws of the

14   United States, denied naturalization under the laws of

15   the United States?

16                 MR. KINNEY:  Yes, I understand that.

17                 THE COURT:  Have you had enough time to talk

18   all of this over with Mr. McCormick, your attorney?

19                 MR. KINNEY:  Yes, I have.

20                 THE COURT:  Has he been a good attorney for

21   you, gotten for you those things which are your rights

22   under the law?

23                 MR. KINNEY:  Yes, he has.

24                 THE COURT:  Are you satisfied with his

25   representation of you?

```
 1              MR. KINNEY:  Yes.

 2              THE COURT:  You still want to plead guilty?

 3              MR. KINNEY:  Yes, your Honor.

 4              THE COURT:  Why?

 5              MR. KINNEY:  Because I am guilty.

 6              THE COURT:  All right.

 7         Now Mr. Goolst.  In your case you don't have a

 8    plea agreement, so we'll see where we are here.  And I'm

 9    going to ask the same question of Mr. Yoon.  It's

10    perfectly fine to plea without an agreement, but we

11    don't know what he's going to recommend, so I'll ask

12    him.

13         And you haven't got a deal.  You haven't waived

14    your rights to appeal what I do.  It's what is called a

15    "straight-up plea," you're going to plea, but you don't

16    have a deal with the government.  That's lawful, but I

17    want you to understand it.

18         Do you understand it, Mr. Goolst?

19              MR. GOOLST:  Yes.

20              THE COURT:  Now, Mr. Yoon, he's still required

21    to follow the law and I need to know how his

22    calculations go even though at the time of sentencing

23    I'll listen to your lawyer and I'll listen to you.  So

24    the same calculations as to Mr. Goolst.

25              MR. YOON:  Your Honor, I did want to make
```

1    clear for all of the defendants, um, before I proceeded,

2    that the sentencing guideline ranges that I am advising

3    the Court of are calculated, um, without the two-point

4    suggested reduction by the sentencing commission

5    amendment of April 10th, 2014.  So the sentencing

6    recommendation of the government will actually be

7    ultimately at sentencing will be two levels below the

8    sentencing guideline range.

9              THE COURT:  Well, that's helpful.  So what

10   you're saying is you're going to go ahead, since I have

11   discretion anyway, you're going to adopt what the

12   sentencing commission has advised, so your range is

13   going to be two levels lower.

14             MR. YOON:  Yes, your Honor.

15             THE COURT:  Then, though it makes it more

16   complex, we'll need to know, everyone needs to know.  So

17   go back to Mr. Kinney.

18             MR. YOON:  Yes, your Honor.

19             THE COURT:  So as to Mr. Kinney, what is the

20   range you're going to be advising me of?

21             MR. YOON:  Yes, for Mr. Kinney the ultimate

22   range that the government will advise will be a 41-to-

23   51-month range, your Honor, so the low end of the

24   guidelines will be 41 months.

25             THE COURT:  All right.  The sentencing

```
1    commission is changing their policy really and I respect

2    that, though I'm not bound by it, and so though now it

3    reads 51 to 63 months, they've just amended it and since

4    they've amended it, the government is going to adopt

5    that.  So he tells me what he really will recommend is

6    41 to 51 months.

7            Do you understand that?

8            MR. KINNEY:  Yes, your Honor.

9            THE COURT:  Now, understand I don't have to go

10   along with any of that, I can go up to 87 months.  We're

11   clear on that?

12           MR. KINNEY:  Yes.

13           THE COURT:  Now that he's explained that,

14   let's get these various figures, Mr. Yoon, for

15   Mr. Goolst.

16           MR. YOON:  Yes, your Honor.  Thank you.

17       For Mr. Goolst, the range of oxycodone

18   attributable to Mr. Goolst is between 498 and 1,990

19   oxycodone 30-milligram pills, translating into 14.92

20   grams and 59.70 grams of oxycodone.  Your Honor, the

21   equivalency there is between 100 and 400 kilograms of

22   marijuana.  Your Honor, the base offense level would be

23   24.  The government does believe that Mr. Goolst, as a

24   runner for Mr. Bourque, was a minor participant under

25   3(b)(1.2)(b).  So, your Honor --
```

1            THE COURT:  Now, don't -- I appreciate you're

2     saying that, but to get the maximum --

3            MR. YOON:  Yes, sir.

4            THE COURT:  -- don't figure that in.

5            MR. YOON:  Yes, sir.

6            THE COURT:  But you can figure it in as to the

7     other calculations you give me, and here's why.  Not

8     because I wouldn't go along with that, but you've got to

9     know the worst that can happen to you.  So assume that I

10    don't go along with that, that's the figure I want from

11    him, from the maximum that you could get hit with, and

12    then, since that's the government's view, we'll see what

13    they say as to the other.

14        You understand now, I don't have to go along with

15    this, I just want you to know what, as a practical

16    matter, you're really looking at.  Right?  You

17    understand this?

18            MR. GOOLST:  Yes.

19            THE COURT:  Very well.

20        All right.  Without that, for the maximum, but

21    then include it for the various ranges you're going to

22    give me.

23            MR. YOON:  Yes, your Honor.  That range will

24    be 78 months to 97 months, um, with, your Honor, a -- a

25    reduction, your Honor, then the potential range, if the

defendant is considered to be a minor participant,

would, in fact, be 63 to 78 months, your Honor.  Your

Honor, with acceptance, it would be 46 to 57 months.

And, your Honor, the government will be recommending a

range of 37 to 46 months.  And so the low end of the

guidelines, 37 months.

THE COURT:  Tell me what the range is before

this amendment?

MR. YOON:  Oh, I apologize, your Honor, I

appear to have misstated.  If I could start over.

Mr. Demissie has pointed that out --

(Pause.)

THE COURT:  These things are complex, but

they're very serious to all of you, because these

numbers mean something.  It's all very well for me to

say I don't have to follow them, but they come from the

sentencing commission and I pay attention to them.  So

we need to hear the right numbers now while you're still

innocent.

MR. YOON:  Yes, your Honor.  Actually the

final range, your Honor, the government will be

recommending, is going to be 37 to 46 months, the low

end being 37.

THE COURT:  Understand.  But without the

recent amendment, what's the range, as it stands now?

1      MR. YOON:  Yes, your Honor.  As it stands now,

2   46 to 57 months, your Honor.

3      THE COURT:  Thank you.  Okay.

4      Now, even with all of this data, I could send you

5   to prison for 97 months.  Do you understand that?

6      MR. GOOLST:  Yes, your Honor.

7      THE COURT:  The sentencing guidelines, as they

8   stand now, say that I should send you to prison for 46

9   to 57 months, but with this amendment, which the

10   government's going to go along with, that will take us

11   to 37 to 46 months, and in your case, even without a

12   plea, they're telling me that they will recommend 37

13   months.  So if you plead guilty, you can hold them to

14   that.

15      Do you understand those things?

16      MR. GOOLST:  I do.

17      THE COURT:  All right.

18      Now, other than the promise, because that's what

19   it is, that Mr. Yoon just made to you, other than that

20   promise, has anyone promised you anything to get you to

21   plead guilty?

22      MR. GOOLST:  No, your Honor.

23      THE COURT:  Are you -- you know, nothing about

24   me, you know, "We know Young, Young will do this or

25   That," anyone say anything like that?

1          MR. GOOLST:  No.

2          THE COURT:  Anyone threaten you with anything

3  to get you to plead guilty?

4          MR. GOOLST:  No, your Honor.

5          THE COURT:  Are you covering up for someone

6  else?

7          MR. GOOLST:  No, your Honor.

8          THE COURT:  Do you know if you're guilty of

9  this crime and not a citizen, you can be deported,

10  denied admission under the laws of the United States and

11  denied naturalization under the laws of the United

12  States.  Do you know that?

13          MR. GOOLST:  Yes.

14          THE COURT:  Are you satisfied with

15  Mr. Demissie as your attorney?

16          MR. GOOLST:  Yes.

17          THE COURT:  Has he been a good attorney for

18  you, gotten for you those things that are your rights?

19          MR. GOOLST:  Yes.

20          THE COURT:  Do you still want to plead

21  guilty?

22          MR. GOOLST:  Yes.

23          THE COURT:  Why?

24          MR. GOOLST:  Because I did it, your Honor.

25          THE COURT:  All right.

1             Now, Mr. Akasa, you have a plea agreement and

2      let's have a look at that first.

3             Do you understand the plea agreement is your deal

4      with the government?

5                     MR. AKASA:   Yes.

6                     THE COURT:   I show you that page.   Is that

7      your signature?

8                     MR. AKASA:   Yes.

9                     THE COURT:   And is that your plea agreement?

10                    MR. AKASA:   Yes, it is.

11                    THE COURT:   And have you talked this all over

12     with Mr. Barron?

13                    MR. AKASA:   Yes.

14                    THE COURT:   Do you think you understand it?

15                    MR. AKASA:   Yes, sir.

16                    THE COURT:   You know that that's your bargain

17     with the government.   I want you to be clear on that.

18     And as to you I want the same information from

19     Mr. Yoon.   He's going to tell me the most, as I

20     understand the Constitution, the highest sentence under

21     the Constitution I could impose upon you, then he can

22     take into account other reasons for going down and

23     giving you these ranges, the range as it stands now and

24     the amended range that they'll go along with.

25             But while we're still talking about the plea

1    agreement, I assume in here there's the same waiver

2    language about appealing.  They can do that, but I will

3    tell you that if I sentence you, that you have a right

4    to appeal and you do have a right to appeal, but if my

5    sentence falls within what's contemplated by this plea

6    agreement, it's really futile because if you try,

7    they'll say, "Wait a second, he agreed not to," and

8    unless there's manifest injustice, which I at least have

9    never seen, then you're stuck with the sentence I give

10   you.

11        Do you understand that?

12             MR. AKASA:  Yes, I do.

13             THE COURT:  All right.  Let's have the same

14   data from Mr. Yoon.

15             MR. YOON:  Yes, your Honor.

16        For Mr. Akasa, your Honor, Mr. Akasa is

17   accountable for 1200 oxycodone, 30 milligram pills, that

18   translates to between 14.92 grams and 59.70 grams of

19   oxycodone, equivalency to 100 to 400 kilograms of

20   marijuana.  And the base offense level is 26.  So the

21   highest guideline range at base level of 26 would be 63

22   to 78 months.

23             THE COURT:  So 78 is the top?

24             MR. YOON:  Yes, your Honor.

25             THE COURT:  All right.  And now the range with

1    the appropriate discount.

2              MR. YOON:  Yes, your Honor.  With acceptance

3    the range would be 46 to 57 months with a maximum of 57

4    months.  And the government's recommendation would take

5    into account the amendment and that range would fall to

6    37 for 46 months, the 46 months being the maximum of

7    that range.

8              THE COURT:  And your recommendation would be

9    37?

10             MR. YOON:  Correct, your Honor.

11             THE COURT:  So following the same procedure,

12   if you plead guilty here, I can sentence you up to 78

13   months in prison.

14        Do you understand that?

15             MR. AKASA:  Yes.

16             THE COURT:  And the range that at least I'm

17   advised as things stand today is a sentence of 46 to 57

18   months.

19        Do you understand that?

20             MR. AKASA:  Yes, I do.

21             THE COURT:  But because the government is

22   going to go along with this amendment, that brings it

23   down to 37 to 46 months and they're going to recommend

24   37 months.

25        Do you understand that?

1          MR. AKASA:  Yes.

2          THE COURT:  Have you had enough time to talk

3    all of this over with Mr. Barron?

4          MR. AKASA:  Yes.

5          THE COURT:  Has he been a good attorney for

6    you?

7          MR. AKASA:  Yes.

8          THE COURT:  Gotten for you those things that

9    are your rights under the law?

10         MR. AKASA:  Yes, your Honor.

11         THE COURT:  Are you satisfied with his

12   representation of you?

13         MR. AKASA:  Yes.

14         THE COURT:  Do you still want to plead

15   guilty?

16         MR. AKASA:  Yes, I do.

17         THE COURT:  Why?

18         MR. AKASA:  Because I'm guilty.

19         THE COURT:  Okay.

20       Now, Mr. Chisholm, you don't have a plea agreement

21   but you can still plead straight up, that means that

22   they haven't yet made a promise to you, but we'll see if

23   they'll willing to make a promise to you today.  But as

24   far as I know, there's no deal, is that correct?

25         MR. CHISHOLM:  That's correct.

```
 1              THE COURT:  All right.  So even without a deal
 2   I am interested -- I can't go higher than some number,
 3   under the Constitution, and I will be advised on another
 4   range or ranges and I certainly will take that into
 5   account, though I'm not bargaining with you.
 6         Do you understand those things?
 7              MR. CHISHOLM:  Yes, sir.
 8              THE COURT:  All right.  Mr. Yoon, would you
 9   give me the same information for Mr. Chisholm.
10              MR. YOON:  Yes, your Honor.  Thank you.
11         The range of oxycodone here would be between 498
12   and 1990 oxycodone, 30 milligram pills, between 14.92
13   grams and 59.70 grams of oxycodone, an equivalency to
14   between 100 and 400 kilograms of marijuana.
15         Your Honor, the defendant's base offense level is
16   29 as the defendant does fall into, um, under 4(b)(1.1),
17   the career offender sentencing guideline, as he was 18
18   years of age at the time of this offense.  The instant
19   offense, this offense, he's potentially pleading guilty
20   to is a felony of a controlled substance offense and the
21   defendant has two prior felony convictions for
22   controlled substance offenses.
23         That being the case, your Honor, the highest range
24   would be 151 to 188 months.  So the top of the range is
25   188.  Your Honor, with acceptance the range would fall
```

1    to 120 to 150 months.  So 150 would be the top of the

2    range.

3           In this case, your Honor, given the recent

4    amendment, the range would be 100 to -- 100 months to

5    125 months.  In this case, your Honor, while there is no

6    agreement, the government has spoken to counsel, and

7    while it is not a plea agreement or a promise having

8    been made, the government does believe it will recommend

9    a sentence for Mr. Chisholm in the range of 78 months to

10   92 months.

11          THE COURT:  Well, having mentioned that, if he

12   pleads guilty now, he can hold you to that.  So that's

13   the province, 78 to 92, from you.

14          MR. YOON:  Yes, your Honor.

15          THE COURT:  All right.  Just so long as we

16   understand.

17          So in your case, given your prior record, and you

18   don't get an separate trial on that, the documents are

19   there and we're not having a jury trial on what your

20   prior record is, so you are what's called -- if you

21   plead guilty to this, you're what's called a "career

22   offender" and I can put you in prison for 188 months.

23          Do you understand that?

24          MR. CHISHOLM:  Yes, your Honor.

25          THE COURT:  Now, with, under these guidelines

1   -- now I can go a little lower than these guidelines,

2   but I can go up to 188 months.  With the guidelines,

3   it's 120 to 150 months.  With the amendment, it's 100 to

4   125 months.

5       Do you understand that?

6           MR. CHISHOLM:  Yes.

7           THE COURT:  So that's what I'm going to be

8   told, that even with the amendment, the sentence that

9   the sentencing commission recommends for you is 100 to

10  125 months.  Now, they are, right here, with the Court

11  Reporter taking it down, they're promising to recommend

12  not less than 78 months nor more than 92 months.

13      Is that how you understand it?

14          MR. CHISHOLM:  Yes.

15          THE COURT:  Okay.  You understand that I don't

16  have to go along with any of that, I can go higher than

17  that all the way up to 188 months.  Do you understand

18  that?

19          MR. CHISHOLM:  Yes.

20          THE COURT:  Now, in your case, other than the

21  promise he just made to you, is there any promise, any

22  deal, any side consideration that I don't know about?

23          MR. CHISHOLM:  No.

24          THE COURT:  Anyone threaten you with anything

25  to get you to plead guilty?

```
 1                    MR. CHISHOLM:  No.
 2                    THE COURT:  Are you covering up for someone
 3        else by pleading guilty yourself?
 4                    MR. CHISHOLM:  No.
 5                    THE COURT:  You know that if you're convicted
 6        of this crime and you plead guilty of it and you're not
 7        a citizen, then you may be deported if you're not a
 8        natural citizen under the laws of the United States and
 9        you may be denied admission under the laws of the United
10        States.
11                    MR. CHISHOLM:  Yes, your Honor.
12                    THE COURT:  Have you had enough time to talk
13        this all over with your attorney?
14                    MR. CHISHOLM:  Yes.
15                    THE COURT:  Has he been a good attorney for
16        you?
17                    MR. CHISHOLM:  Yes.
18                    THE COURT:  Has he gotten to you those things
19        that are your rights under the law?
20                    MR. CHISHOLM:  Yes.
21                    THE COURT:  Are you satisfied with his
22        representation?
23                    MR. CHISHOLM:  Yes.
24                    THE COURT:  Do you still want to plead
25        guilty?
```

1          MR. CHISHOLM:  Yes.

2          THE COURT:  Why?

3          MR. CHISHOLM:  Because I'm guilty.

4          THE COURT:  Okay.

5      Mr. Roy, in your case there is a plea agreement.

6  Let's start there.  Okay.  I've given you a signed copy

7  of it, so you take a look at that document.

8      Is that your signature on the copy of it?

9          MR. ROY:  Yes, your Honor.

10          THE COURT:  Now, have you talked this all over

11  with Mr. Feldman-Rumpler?

12          MR. ROY:  Yes, your Honor.

13          THE COURT:  And have you read it?

14          MR. ROY:  Yes.

15          THE COURT:  And do you understand it?

16          MR. ROY:  Yes, sir.

17          THE COURT:  And here again, I suppose, this

18  business about waiver of his rights to appeal unless

19  otherwise -- well, I need to tell you that if I sentence

20  you, I will tell you that you have a right to appeal and

21  that's true, you do, but so long as my sentence falls

22  within those contemplated -- though I'm not part of the

23  bargain, so long as the result falls within what's

24  contemplated by this plea agreement, unless there's a

25  manifest injustice, you are stuck with the sentence that

1    I impose upon you.

2           Do you understand that?

3                MR. ROY:  Yes, your Honor.

4                THE COURT:  Now, I need to have Mr. Yoon tell

5    me the information that, just like the others, you need

6    to listen to Mr. Yoon.

7                MR. YOON:  Yes, your Honor.

8           Mr. Roy is accountable for 760 oxycodone, 30

9    milligram pills.  That is between 14.92 grams and 59.70

10   grams of oxycodone.  That is equivalent to between 100

11   and 400 kilograms of marijuana.

12          The base offense level, your Honor, is 26, um, a

13   base level of 26.  The range would be 78 to 97 months

14   with the high being 97 months.  With acceptance, your

15   Honor, the range would be 57 months to 71 months, the

16   highest being 71.  With the amendment, your Honor, the

17   range would be 46 to 57 months, 57 being the highest.

18   In this case, pursuant to a plea agreement, the

19   government will be recommending 46 months.

20               THE COURT:  All right.  Let's start with the

21   worst.  Based upon what he's told me, I can, under the

22   Constitution, sentence you to 97 months in prison.

23          Do you understand that?

24               MR. ROY:  Yes.

25               THE COURT:  I'm not saying I will, but I'm not

1   bargaining, I can go up to 97 months and the plea

2   agreement still stands in effect.  Do you understand

3   that?

4           MR. ROY:  Yes, your Honor.

5           THE COURT:  The range, as it now stands, is 57

6   to 71 months.  With this amendment, which the government

7   will go for, the range becomes 46 to 57 months and they

8   promise you, if you do all the stuff in the plea

9   agreement and plead guilty, that they will recommend to

10  me that I sentence you to 46 months in prison.

11      Do you understand that?

12          MR. ROY:  Yes, your Honor.

13          THE COURT:  Now, other than this plea

14  agreement and the promises that they make to you in this

15  plea agreement, has anyone promised you anything to get

16  you to plead guilty?

17          MR. ROY:  No, your Honor.

18          THE COURT:  Has anybody threatened you with

19  anything to get you to plead guilty?

20          MR. ROY:  No, your Honor.

21          THE COURT:  Are you covering up for someone

22  else by pleading guilty?

23          MR. ROY:  No.

24          THE COURT:  Do you know that if you're not a

25  citizen of the United States, that pleading guilty to

```
1    this crime may have the consequence of being deported

2    from the United States, denied naturalization under the

3    laws of the United States, denied admission under the

4    laws of the United States.  Do you know that?

5              MR. ROY:  Yes.

6              THE COURT:  Have you had enough time to talk

7    this all over with Ms. Feldman-Rumpler?

8              MR. ROY:  I did.

9              THE COURT:  Has she been a good attorney for

10   you, gotten for you the things that are your rights

11   under the law?

12             MR. ROY:  An excellent attorney.

13             THE COURT:  Are you satisfied with her

14   representation?

15             MR. ROY:  Yes, your Honor.

16             THE COURT:  Do you still want to plead

17   guilty?

18             MR. ROY:  Yes.

19             THE COURT:  Why?

20             MR. ROY:  Because I'm guilty.

21             THE COURT:  All right.

22        Here's what we're going to do now.  Mr. Yoon,

23   focusing on the essential elements of the crime, is

24   going to telling me, with respect to you five, and he

25   may have to mention other people, but he's just going to
```

1    tell me briefly with respect to you five -- and so I'm

2    clear, as to these five there's no enhancements but for

3    the amount of oxycodone.  I mean that's what we're

4    talking about?

5              MR. YOON:  Yes, your Honor.

6              THE COURT:   I mean, and a career offender for

7    Mr. Chisholm, but that's not a matter of proof at trial,

8    that's a matter of his record.

9              MR. YOON:  Yes, your Honor, that's correct.

10             THE COURT:  All right.  So he's going to

11   explain to you -- and you don't have to mention his

12   record again, but he's going to explain what evidence he

13   thinks he can put before the jury as to you.  When he's

14   done -- and I'm going to go sit down now, I'm going to

15   ask each one of you, "Do you understand what he said?"

16   And he may mention things that you don't know that don't

17   pertain to you.  But as to you, I'm going to say, "Now,

18   do you understand, as to you, what he said?"  And you

19   can say "Yes," "No."  And don't agree to anything that

20   you're not agreeing to, because I'm going to then say to

21   you, "Well, is that true?"  If you say to me, "It is

22   true," I'm going to believe it, I'm going to think that

23   actually happened, the person or persons, they're guilty

24   of that, what the crime is.

25         All right.  Briefly, Mr. Yoon.

1          MR. YOON:  Yes, your Honor.  The government,

2     through evidence, would show that between November of

3     2012 and May of 2013, through intercepted phone calls,

4     through law enforcement visual electronic surveillance

5     and also witness testimony, that the defendants, through

6     those phone calls and in their meetings, agreed to

7     possess with intent to distribute oxycodone and also to

8     distribute oxycodone.  The defendants, through those

9     phone calls, did agree to in fact possess with intent to

10    distribute and to distribute oxycodone.

11         Additionally, your Honor, the government would be

12    able to prove that these defendants bought oxycodone

13    from Michael Bourque in the amounts as were indicated

14    during the Court's conversations with the defendants.

15         The defendants, having bought that oxycodone, the

16    30 milligram pills from Michael Bourque, they were

17    purchased to be sold to retail pill customers and in

18    fact were sold to such customers.  That would be the

19    evidence at trial, your Honor.

20              THE COURT:  Um --

21              MR. DEMISSIE:  One moment, your Honor?

22              THE COURT:  Of course you may.

23              (Pause.)

24              THE COURT:  Well, while he's conferring,

25    Mr. Kinney, did you hear what Mr. Yoon says?

1                    MR. KINNEY:  Yes, your Honor.

2                    THE COURT:  Do you understand it?

3                    MR. KINNEY:  Yes.

4                    THE COURT:  And do you understand that if

5       that's true, if you tell me that's true, you'll be

6       agreeing to the amounts of oxycodone that were mentioned

7       earlier while I was talking about how the sentence would

8       potentially work out.

9            You understand that?

10                   MR. KINNEY:  Yes, your Honor.

11                   THE COURT:  Are those things true?

12                   MR. KINNEY:  Yes, your Honor.

13                   THE COURT:  All right.

14           Mr. Akasa, again I just want you to understand

15      that if you agree to this, you're agreeing to the

16      specific amounts that he talked about when I was asking

17      him about the potential sentence.

18           Do you understand what he had to say with respect

19      to you?

20                   MR. AKASA:  Yes, I do.

21                   THE COURT:  Is that true?

22                   MR. AKASA:  Yes, it is.

23                   THE COURT:  And, Mr. Chisholm, I want you to

24      be clear, if you agree to this, you're agreeing to the

25      amounts that we went over when I was talking to you

```
 1    individually and asking about the potential sentence.
 2         So let me ask you, did you understand what he had
 3    to say?
 4              MR. CHISHOLM:  Yes.
 5              THE COURT:  Now, as it pertains to you, is
 6    that true?
 7              MR. CHISHOLM:  Yes.
 8              THE COURT:  All right.
 9         Back to Mr. Goolst.  Mr. Goolst, one of the things
10    here is, if you agree to this, you're agreeing to the
11    amounts that he described when he was explaining to me
12    the potential sentence that might be imposed upon you.
13         Do you understand that?
14              MR. GOOLST:  I do.
15              THE COURT:  Do you understand what he had to
16    say?
17              MR. GOOLST:  Yes.
18              THE COURT:  Is what he had to say true?
19              MR. GOOLST:  Yes.
20              THE COURT:  All right.
21         Mr. Roy, understanding that we're -- you would be
22    agreeing to the amounts as he earlier explained them, do
23    you understand what he had to say?
24              MR. ROY:  Yes, your Honor.
25              THE COURT:  Are those things, as they pertain
```

1    to you, are they true?

2              MR. ROY:  Yes.

3              THE COURT:  Thank you.

4         All right.  Excuse me.  I find that Mr. John

5    Kinney, Mr. Philip Goolst, Mr. David Akasa, Mr. Brian

6    Chisholm, and Mr. Michael Roy, knowingly, intelligently,

7    and voluntarily are exercising their right to plead

8    guilty to this one-count indictment, and the clerk may

9    accept the plea.

10         All of this is serious, gentlemen, but this is

11   most serious.  The clerk, one by one, is going to ask

12   you -- and she's going to say, "You earlier pleaded not

13   guilty, do you want to change your plea to guilty?"  If

14   you want to go through with this, you say "yes."  If you

15   say "no," that's fine, we'll get you set for trial

16   here.  If you say, "yes," she'll say, "How do you now

17   plead, guilty or not guilty?"  If you say "guilty" when

18   the Clerk is asking you, you're guilty, no taking it

19   back or starting over.

20         Do you understand, Mr. Kinney?

21              MR. KINNEY:  Yes.

22              THE COURT:  Do you understand, Mr. Goolst?

23              MR. GOOLST:  Yes.

24              THE COURT:  Do you understand, Mr. Akasa?

25              MR. AKASA:  Yes.

1          THE COURT:  Do you understand, Mr. Chisholm?

2          MR. CHISHOLM:  Yes.

3          THE COURT:  Do you understand, Mr. Roy?

4          MR. ROY:  Yes.

5          THE COURT:  The Clerk may accept the pleas.

6          THE CLERK:  Mr. Kinney, you have previously

7   pled not guilty to a one-count indictment charging you

8   with conspiracy to possess with intent to distribute and

9   to distribute oxycodone in violation of Title 21, United

10  States Code Section 846.  Do you now wish to change your

11  plea, yes or no?

12         MR. KINNEY:  Yes.

13         THE COURT:  How do you now plead to Count 1,

14  guilty or not guilty?

15         MR. KINNEY:  Guilty.

16         THE CLERK:  Mr. Goolst, you have previously

17  pled not guilty to a one-count indictment charging you

18  with conspiracy to possess with intent to distribute and

19  to distribute oxycodone in violation of Title 21, United

20  States Code, Section 846.  Do you now wish to change

21  your plea, yes or no?

22         MR. GOOLST:  Yes.

23         THE COURT:  How do you plead to Count 1,

24  guilty or not guilty?

25         MR. GOOLST:  Guilty.

1          THE COURT:  Mr. Akasa, you have previously

2   pled not guilty to a one-count indictment charging you

3   with conspiracy to possess with intent to distribute and

4   to distribute oxycodone in violation of Title 21, United

5   States Code, Section 846.  Do you now wish to change

6   your plea?

7          MR. GOOLST:  Yes.

8          THE COURT:  How do you now plead to Count 1,

9   guilty or not guilty?

10          MR. GOOLST:  Guilty.

11          THE CLERK:  Mr. Chisholm, you have previously

12   plead not guilty to a one-count indictment charging you

13   with conspiracy to possess with intent to distribute and

14   to distribute oxycodone in violation of Title 21, United

15   States Code, Section 846.  Do you now wish to change

16   your plea, yes or no?

17          MR. CHISHOLM:  Yes.

18          THE COURT:  How do you now plead to Count 1,

19   guilty or not guilty?

20          MR. CHISHOLM:  Guilty.

21          THE COURT:  Mr. Roy, you have previously pled

22   not guilty to a one-count indictment charging you with

23   conspiracy to possess with intent to distribute and to

24   distribute oxycodone in violation of Title 21, United

25   States Code, Section 846.  Do you now wish to change

```
 1    your plea?

 2              MR. ROY:  Yes.

 3              THE COURT:  How do you now plead to Count 1,

 4    guilty or not guilty?

 5              MR. ROY:  Guilty.

 6              THE COURT:  Very well.  Let's set the time for

 7    sentencing.

 8         In Mr. Kinney's case, I propose the 9th of July at

 9    2:00 p.m.  Is that satisfactory, counsel?

10              MR. McCORMICK:  Your Honor, that is my

11    vacation week.

12              THE COURT:  All right.  We'll pick another

13    date.

14              THE CLERK:  Tuesday, July 22nd?

15              MR. McCORMICK:  That's fine.

16              THE COURT:  And for the government, Mr. Yoon?

17              MR. YOON:  Yes, sir, that's fine.  Thank you.

18              THE COURT:  That's the date.

19         And as to Mr. Goolst, sentencing on July 10th at

20    2:00 p.m.  Is that satisfactory?

21              MR. DEMISSIE:  Yes, your Honor.

22              MR. YOON:  Yes, your Honor.

23              THE COURT:  Very well.

24         Mr. Akasa, July 14th, at 2:00 p.m.?

25              MR. BARRON:  Yes, your Honor.
```

1          MR. YOON:  Yes, your Honor.

2          THE COURT:  Very well.

3      Mr. Chisholm, July 15th, at 2:00 p.m.?

4          MR. PALMER:  Your Honor, that's my vacation

5   week.

6          THE COURT:  We'll pick another date.

7          THE CLERK:  July 9th?

8          MR. PALMER:  That's fine.

9          THE COURT:  All right, July 9th at 2:00 p.m.

10   I didn't hear the government?

11          MR. YOON:  Yes, that's fine.

12          THE COURT:  Very well.

13      And, Mr. Roy, July 21st at 2:00 p.m.?

14          MS. FELDMAN-RUMPLER:  That's fine, your Honor.

15          MR. YOON:  That's fine, your Honor.  Thank

16   you.

17          THE COURT:  Very well.

18      Now, the defendants are in custody and they're

19   remanded to custody.  Counsel, you're excused, but would

20   you, before you leave the courthouse today, go by

21   probation, tell them of this changed circumstance so

22   that they may start a presentence report.  Thank you.

23   They're remanded to custody.

24          (10:20, first five leave.)

25          THE COURT:  The Court will take a brief recess

1    while we set up.  We'll recess.

2                  (10:20 a.m., break.)

3                  (Resumed, 10:30 a.m.)

4              THE COURT:  Now, gentlemen, whether or not you

5    observed the proceedings thus far, we will start fresh.

6          I've been told by the attorneys, through my Clerk,

7    that each one of you desires to tender a plea of guilty

8    to the one-count indictment against you.  Before I can

9    accept a plea -- if that's right, if you want to plead

10   guilty, before I can accept a plea, there's a variety of

11   things that I need to know.  Some things I can explain

12   to you generally and some things I must ask you

13   individually.

14         I need to know that each one of you knows what

15   he's doing.  I need to know that each one of you knows

16   what he's giving up, because you give up things that are

17   terribly important to you if you plead guilty.  I need

18   to know that each one knows, really knows, what you're

19   letting yourself in for if you plead guilty.  I need to

20   know that in fact you want to plead guilty, not that

21   you're happy about pleading guilty, but all things

22   considered, you, you're in the driver's seat, you want

23   to plead guilty to this charge.  Not the lawyers, of

24   course, you can listen to your lawyers and take advice

25   from them, not your family, not anybody else, you've

1    decided the best thing for you to do is plead guilty.

2         Now, the way I find this stuff out is by asking

3    questions.  I'll explain things to you and I'll ask you

4    individual questions.  You'll be under oath.  Please

5    understand about me, I honestly don't care whether you

6    plead guilty or not.  You're not doing anything for me

7    by pleading guilty and if you don't plead -- if you

8    decide at any stage not to plead guilty, I'm fine with

9    that.  I'm already going in this case.  I've got the

10   jurors downstairs.  Counsel are all ready to go.  I know

11   how to try this case.

12        Now, real world, usually there's a discount for

13   pleading guilty, a discount because then the government

14   doesn't have to spend the tax money to go through a

15   trial, and you should know about me that usually -- and

16   I'm not bargaining with you, I'm just explaining,

17   usually I give that discount, unless I find out the

18   person's committed other crimes or has lied to me or

19   something like that.  If we go to trial, there's no

20   discount, but you must understand, I will never -- I

21   would never punish a person, not one day, for going to

22   trial because one of your constitutional rights is to

23   have a fair and an impartial trial.  That's what we do.

24        So now let's start and, Mr. Ehwa, would you state

25   your full name?

```
1                MR. EHWA:  Mr. Joseph Ehwa.

2                THE COURT:  Mr. Ehwa.  Again, the Clerk -- I

3      skipped over it.  You're to do this under oath, and

4      that's one of the very good reasons, among many, that I

5      have a Clerk.  I don't mean to skip over it.  She'll put

6      you under oath.

7                (SIX DEFENDANTS, sworn.)

8                THE COURT:  Let me start again.

9          Would you state your name again, Mr. Ehwa.

10               MR. EHWA:  Thomas Joseph Ehwa.

11               THE COURT:  Do you understand the things I was

12     explaining generally?

13               MR. EHWA:  I do.

14               THE COURT:  How old are you, sir?

15               MR. EHWA:  31 years old.

16               THE COURT:  How far did you go in school?

17               MR. EHWA:  Finished high school.

18               THE COURT:  Have you ever been treated for a

19     mental condition of any sort?

20               MR. EHWA:  Yes, I have.

21               THE COURT:  Do you mind telling me?

22               MR. EHWA:  I have an anxiety disorder, an

23     addiction.

24               THE COURT:  Are you under treatment now?

25               MR. EHWA:  I see a counselor.  I started after
```

```
 1    I was diagnosed.
 2              THE COURT:  I see.  Are you taking medication
 3    today?
 4              MR. EHWA:  No, sir.
 5              THE COURT:  The reason I ask is not to be
 6    personal, but are you feeling normal today?
 7              MR. EHWA:  Yes, sir, I don't feel there's
 8    anything impeding my cognitive ability today.
 9              THE COURT:  Yeah, and the key thing is, you
10    have to make your own decisions.
11              MR. EHWA:  Yes, sir.
12              THE COURT:  You understand that I'm the judge
13    and I'm neutral, you understand that the prosecutor is
14    pressing the charge against you, your lawyer is in your
15    corner defending your rights, and you're in charge as to
16    whether you plead guilty or not.
17         You understand those things?
18              MR. EHWA:  Fully, your Honor.
19              THE COURT:  All right.
20         Are you taking any medication for something else?
21              MR. EHWA:  Um, yes.
22              THE COURT:  Would you tell me?
23              MR. EHWA:  A topical ointment for psoriasis,
24    your Honor.
25              THE COURT:  All right.  And you're comfortable
```

```
 1   today?

 2             MR. EHWA:  Oh, yes, your Honor.

 3             THE COURT:  Under the influence of alcohol?

 4             MR. EHWA:  No, sir.

 5             THE COURT:  Under the influence of any drug?

 6             MR. EHWA:  Not at all.

 7             THE COURT:  Do you know what you're charged

 8   with?

 9             MR. EHWA:  I do.

10             THE COURT:  Tell me.

11             MR. EHWA:  Conspiracy to distribute oxycontin

12   or oxycodone.

13             THE COURT:  All right.

14        Mr. McGuire, would you state your full name.

15             MR. McGUIRE:  Frank McGuire.

16             THE COURT:  And how old are you, sir?

17             MR. McGUIRE:  43.

18             THE COURT:  How far did you go in school?

19             MR. McGUIRE:  Um, I graduated high school.

20             THE COURT:  Are you aware of any mental

21   condition that you may have, are you being treated for

22   any?

23             MR. McGUIRE:  No.

24             THE COURT:  Are you aware of any?

25             MR. McGUIRE:  No.
```

```
 1              THE COURT:  Are you taking any medication
 2    today?
 3              MR. McGUIRE:  No.
 4              THE COURT:  Under the influence of alcohol?
 5              MR. McGUIRE:  No.
 6              THE COURT:  Under the influence of drugs?
 7              MR. McGUIRE:  No.
 8              THE COURT:  Do you know what you're charged
 9    with?
10              MR. McGUIRE:  Yes.
11              THE COURT:  Tell me.
12              MR. McGUIRE:  Conspiracy to distribute
13    oxycodone.
14              THE COURT:  Thank you.
15         Mr. Assencoa, would you state your full name.
16              MR. ASSENCOA:  Corey John Assencoa.
17              THE COURT:  Mr. Assencoa.  And how old are
18    you?
19              MR. ASSENCOA:  44.
20              THE COURT:  And you understand the things I
21    explained generally at the beginning?
22              MR. ASSENCOA:  Yes, I do.
23              THE COURT:  I skipped that with you,
24    Mr. McGuire, so let me go back to you.
25         Mr. McGuire, do you understand all the things that
```

```
 1   I explained to you at the beginning?

 2              MR. McGUIRE:  Yes.

 3              THE COURT:  And Mr. Assencoa again.

 4         How far did you go in school?

 5              MR. ASSENCOA:  I graduated high school.

 6              THE COURT:  Are you -- have you ever been

 7   treated for any mental condition?

 8              MR. ASSENCOA:  No.

 9              THE COURT:  Are you aware of any mental

10   condition?

11              MR. ASSENCOA:  No.

12              THE COURT:  Are you taking any medication

13   today?

14              MR. ASSENCOA:  No.

15              THE COURT:  Under the influence of any drugs?

16              MR. ASSENCOA:  No.

17              THE COURT:  Under the influence of alcohol?

18              MR. ASSENCOA:  No.

19              THE COURT:  Do you know what you're charged

20   with?

21              MR. ASSENCOA:  Yes I do.

22              THE COURT:  Tell me.

23              MR. ASSENCOA:  Conspiracy to distribute

24   oxycodone.

25              THE COURT:  Mr. Cotter, would you state your
```

1   full name.

2             MR. COTTER:  Sean Michael Cotter.

3             THE COURT:  How old are you, sir?

4             MR. COTTER:  27.

5             THE COURT:  Do you understand the things I've

6   explained generally at the beginning?

7             MR. COTTER:  Yes.

8             THE COURT:  How far did you go in school?

9             MR. COTTER:  I graduated high school and trade

10  school.

11            THE COURT:  Are you being treated for any

12  mental condition?

13            MR. COTTER:  No, your Honor.

14            THE COURT:  Are you aware of any mental

15  condition you may have?

16            MR. COTTER:  I've started treatment for my

17  addiction and I've had some severe hernias.

18            THE COURT:  All right.  Does that treatment

19  continue?

20            MR. COTTER:  No, sir.  Well, I'm doing AA

21  meetings and therapy for the addiction.  That's it.

22            THE COURT:  Are you taking any medication --

23            MR. COTTER:  No, your Honor --

24            THE COURT:  Well, are you taking medication

25  for anything else?

 1              MR. COTTER:  No, your Honor.

 2              THE COURT:  Under the influence of any drug

 3     today?

 4              MR. COTTER:  No, your Honor.

 5              THE COURT:  Under the influence of alcohol?

 6              MR. COTTER:  No, your Honor.

 7              THE COURT:  Do you know what you're charged

 8     with?

 9              MR. COTTER:  Yes, your Honor.

10              THE COURT:  Tell me.

11              MR. COTTER:  Conspiracy to distribute

12     oxycodone.

13              THE COURT:  Mr. Ouellette, would you state

14     your full name.

15              MR. OUELLETTE:  Mark Ouellette.

16              THE COURT:  And, Mr. Ouellette, do you

17     understand those things I explained at the beginning?

18              MR. OUELLETTE:  I do.

19              THE COURT:  How old are you, sir?

20              MR. OUELLETTE:  44.

21              THE COURT:  How far did you go in school?

22              MR. OUELLETTE:  9th grade.

23              THE COURT:  Have you ever been treated for a

24     mental condition?

25              MR. OUELLETTE:  No.

```
 1                    THE COURT:  Are you aware of any mental
 2      condition you may have?
 3                    MR. OUELLETTE:  No.
 4                    THE COURT:  Under the influence of alcohol?
 5                    MR. OUELLETTE:  No.
 6                    THE COURT:  Are you taking any other
 7      medication?  I'm sorry.
 8                    MR. OUELLETTE:  No.
 9                    THE COURT:  Under the influence of any drug?
10                    MR. OUELLETTE:  No.
11                    THE COURT:  Do you know what you're charged
12      with?
13                    MR. OUELLETTE:  Yes.
14                    THE COURT:  Tell me.
15                    MR. OUELLETTE:  Conspiracy to distribute
16      oxycodone.
17                    THE COURT:  And, Mr. Panaggio, would you state
18      your full name.
19                    MR. PANAGGIO:  Raymond Panaggio.
20                    THE COURT:  And do you understand those things
21      I explained at the beginning?
22                    MR. PANAGGIO:  Yes, I understand.
23                    THE COURT:  How old are you, sir?
24                    MR. PANAGGIO:  I'm 45.
25                    THE COURT:  Are you treating for any mental
```

1    condition?

2           MR. PANAGGIO:  No.

3           THE COURT:  Are you aware of any mental

4    condition you may have?

5           MR. PANAGGIO:  No.

6           THE COURT:  Taking any medication?

7           MR. PANAGGIO:  No.

8           THE COURT:  Under the influence of alcohol?

9           MR. PANAGGIO:  No.

10          THE COURT:  Under the influence of any drug?

11          MR. PANAGGIO:  No.

12          THE COURT:  Do you know what you're charged

13   with?

14          MR. PANAGGIO:  Yes.

15          THE COURT:  Tell me.

16          MR. PANAGGIO:  Conspiracy to distribute

17   oxycodone.

18          THE COURT:  All right.  Now, let's talk about

19   your rights and what it is that the government has to

20   do.

21          The government has charged each one of you with

22   one count, one charge, conspiracy to possess with intent

23   to distribute oxycodone.  Here's what the government has

24   to prove, and they have to prove it against each one of

25   you as an individual.  If you go to trial, it may be a

1    group of you, but the verdict slip will be a slip that

2    calls out each one of you by name and calls for an

3    individualized determination by the jury.

4        The government has to prove that each of you,

5    separately, engaged in conspiracy.  A conspiracy is an

6    agreement to do something that the law forbids.  If you

7    are not guilty of conspiracy because you've associated

8    with the wrong people, were in the wrong crowd, even if

9    you were around people who were violating the law,

10   violating the law in this particular respect, possessing

11   with intent to distribute oxycodone, that doesn't make

12   you guilty of conspiracy.  Before you could be found

13   guilty of conspiracy, you will have to have agreed with

14   one or more of the other conspirators -- the real

15   conspirators, not undercover police officers or

16   informants or other people, they're not the real

17   conspirators.  The essence of conspiracy is the

18   agreement between two or more people to do something the

19   law forbids.  That's the first thing the government has

20   to prove.  And it's got to be a real agreement.  It

21   doesn't have to be in writing, it doesn't have to be a

22   handshake, it doesn't have to be a wink or a nod, but it

23   has to be genuine, you and one or more of the other

24   conspirators agreeing to do something the law forbids.

25   That's the first thing they've got to prove.

1          Now, just showing such an agreement is not enough,

2     this after all is not a charge of receiving stolen

3     refrigerators, they've got to prove that the deal here

4     was to possess with intent to distribute oxycodone.  So

5     they have to -- they don't have to prove you did it, but

6     they have to prove that your specific intent in getting

7     into the conspiracy was, in fact, to do it.  So that is

8     to possess, the goal of the conspiracy was to possess,

9     you possess what you have, what you exercise control

10    over.

11         My example before and now is, in my pocket I have

12    some keys, I possess them, I'm carrying them around with

13    me.  Back in my office I have a briefcase.  I still

14    possess it, though I'm here and it's there.  I put it

15    there, I can go get it, and exercise control over it.

16    So to stash it, to move it from its stash, to deal with

17    it, is to possess it.  And what's the "it" here?  The

18    "it" is oxycodone, a specific type of contraband

19    substance that the law forbids you from having.  So to

20    possess oxycodone, and that's not enough, not to possess

21    it because you're going to use it, ingest it, but to

22    possess it with the intent to distribute it.

23         Now, the intent to distribute, I mean, in the real

24    world that usually means to sell it to make money, but

25    the law doesn't require the sale, it just requires that

```
 1   it be passed on to another person.  That's distributing
 2   it.
 3         Now, a conspiracy charge, they don't have to prove
 4   that any of you did it, but they have to prove that the
 5   deal was, the conspiracy was to possess oxycodone with
 6   the intent that it would be distributed.  And then in
 7   this session of the court I require the government to
 8   prove to the jury how much is reasonably attributable to
 9   you.
10         Now, that's not just how much you move, if you
11   actually did move any of it, not how much you
12   distributed or how much you sold, it's rather what's
13   reasonably attributable to you, which is what reasonably
14   you knew the conspiracy was dealing in, which may be
15   more than you actually touched.  But I will make them
16   prove beyond a reasonable doubt to the jury what that
17   amount is individually.
18         Now, I could talk about, "Well, I'll make them
19   prove it and the like," that means prove it to who?  To
20   a jury.  If we go to trial, you get a jury of average
21   people.  You will have some say in who sits on that
22   jury, so will the government, but you'll have some say
23   in who sits on it.  They find these facts.  I don't.  I
24   have nothing to say about these facts.  They'll find the
25   facts.
```

1          At the trial you have the right to confront the

2     evidence against you, which means you're right here in

3     court, you can watch these witnesses as they testify,

4     look them in the eye, but more than that you can have

5     your attorneys question them, cross-examine them, you

6     can call witnesses on your own behalf.  Your attorneys

7     may argue to the jury that in fact there is a reasonable

8     doubt and if there is a reasonable doubt, you cannot be

9     convicted.

10         You could testify on your own behalf, but that's

11    another right you have.  You don't have to.  You don't

12    have to do anything.  You can sit here at counsel table

13    and be entirely silent.  I tell the jury that you're

14    innocent, innocent of this charge, and if you're

15    innocent, of course, there's no obligation on you to

16    explain anything or answer any questions.  The

17    government made this charge, the government's got to

18    prove the charge beyond a reasonable doubt.

19         When I explain these rights, I'm not giving you

20    anything, these are your rights, you have these rights.

21    Now, if we go through with this, individually now, I'm

22    talking about you individually, and any one of you

23    individually, if you plead guilty, you give up all of

24    those rights, they're gone, completely gone.  We'll

25    never have a trial.  The closest we come to a trial is

1   right at the end when I ask Mr. Yoon, "Well, tell me

2   what evidence you have," and then I'll ask you whether

3   you understand that, is that true?  That's as close as

4   we come.  There'll never be any witnesses.  No cross-

5   examination.

6        Now, your right to be silent about these matters,

7   that right continues until I've imposed a sentence,

8   because to come up with a fair and impartial sentence,

9   probation will do a personal investigation of you, if

10  you've pled guilty, so I can impose a fair sentence.

11  You don't have to cooperate with that.  But once I

12  sentence you, then your right to be silent about your

13  participation in this conspiracy, you can't be silent

14  about it, and if for one reason or another -- it's not

15  everybody, the way I understand it, is pleading guilty

16  here, so there's going to be a trial, and if I were to

17  continue that trial out beyond the time where I sentence

18  you, you've got to testify.  They can call you in as a

19  witness.  You have to testify.  And not the least of it,

20  if you plead guilty here this morning, you go from being

21  truly innocent -- and I don't know you.  I don't know

22  any of the evidence about this case.  In my eyes you're

23  innocent.  People say they want to plead guilty for a

24  lot of different reasons, but if you plead guilty here

25  this morning, you go from being innocent to being guilty

```
1    and the only thing that remains is what I'm going to do
2    -- not today necessarily, but when I sentence you, and
3    that my mind is open on because we're not there yet.
4         So let me ask you.
5         Mr. Ehwa, do you understand these things?
6              MR. EHWA:  I do, your Honor.
7              THE COURT:  Mr. McGuire, do you understand
8    these things?
9              MR. McGUIRE:  Yes, your Honor.
10             THE COURT:  And, Mr. Assencoa, do you
11   understand this?
12             MR. ASSENCOA:  Yes, I do, your Honor.
13             THE COURT:  Mr. Cotter, do you understand
14   this?
15             MR. COTTER:  Yes, your Honor.
16             THE COURT:  Mr. Ouellette, do you understand
17   this?
18             MR.OUELLETTE:  Yes, your Honor.
19             THE COURT:  Mr. Panaggio, do understand this?
20             MR. PANAGGIO:  Yes, your Honor.
21             THE COURT:  Now, in each case here you folks
22   have plea agreements and we'll go over those and you
23   will understand why I turn to Mr. Yoon.  I want to know
24   from him, as I review the sentencing guidelines, I want
25   to know the highest sentence I can impose upon you.
```

1           Now, from doing the group before this, I have some

2    sense of how he's going to proceed.  He's going to tell

3    me that number -- and understand I'm not in on any of

4    these, um, plea bargains.  You go through with what

5    you're supposed to do in a plea bargain and make the

6    government go through what it's supposed to do, but I'm

7    not part of it.  So I need to know and you need to hear

8    what's the highest sentence I can impose upon you.  Then

9    he'll give me the range, giving you the discount and any

10   other mitigating factor, and then in these cases, um,

11   since the sentencing commission has voted to change the

12   range, he will go to the lower range, and ultimately

13   he'll tell me what he's going to recommend.  It doesn't

14   mean I have to go along with it.  I could.  Or I could

15   go lower or I could go higher.  At sentencing I'll

16   listen to him, I'll listen to your attorney, I'll listen

17   to you, but I will decide.  The sentence is my

18   responsibility.  But you need to know what position he's

19   taking.

20         And so once we've gone through these, um, plea

21   agreements, I will ask him.

22         So let's start with you, Mr. Ehwa.  Take a look at

23   that.  Take a look at the last page.

24         Is that your signature there?

25              MR. EHWA:  Yes, sir.

1              THE COURT:  Is that your plea agreement?

2              MR. EHWA:  Yes, sir.

3              THE COURT:  Have you read it?

4              MR. EHWA:  I have.

5              THE COURT:  Have you discussed it with

6   Mr. Korman, your attorney?

7              MR. EHWA:  I have.

8              THE COURT:  Do you think you understand it?

9              MR. EHWA:  I do.

10             THE COURT:  Now, I'm assuming, from what went

11  before, that much of the same data is in here.  First,

12  you understand that I'm not part of this, I'm not making

13  any bargain with you.  You understand that?

14             MR. EHWA:  I do, your Honor.

15             THE COURT:  Again they have this waiver of

16  rights to appeal.  It's lawful for them to put that in

17  there.  If you plead or if you're convicted, I will tell

18  you you have a right to appeal.  But if I sentence you

19  to within what's contemplated in this agreement, the

20  only way you can appeal is if there's a manifest

21  injustice and I haven't seen one yet.  Do you understand

22  that?

23             MR. EHWA:  I do, your Honor.

24             THE COURT:  So, in effect, you're stuck with

25  the sentence I impose.  Do you understand that?

1          MR. EHWA:  Yes, sir.

2          THE COURT:  All right, Mr. Yoon, with respect

3     to Mr. Ehwa?

4          MR. YOON:  Yes, your Honor.  Thank you.

5          Mr. Ehwa is responsible for 1,164 oxycodone

6     30-milligram pills, that is between 14.92 grams and

7     59.70 grams of oxycodone.  Your Honor, that is the

8     equivalent to between 100 and 400 kilograms of

9     marijuana.  At that level the base offense level is 26.

10    So, your Honor, the highest range would be 63 months to

11    78 months, 78 being the highest.  If there was

12    acceptance, the range would be 46 to 57 months, 57 being

13    the highest.

14         Your Honor, taking into consideration the United

15    States Sentencing Commission amendment, the guideline

16    range would be 37 to 46 months.  And, your Honor, as far

17    as the government's recommendation, should the defendant

18    qualify under 2(d)(1.1)(B)(16), the range would be 30 to

19    37 months.  In this case -- should that be the case, the

20    government would recommend 30 months.

21         THE COURT:  But you don't know yet?

22         MR. YOON:  Your Honor, I don't know whether he

23    will satisfy the provision in a plea agreement under

24    2(d)(1.1)(B)(16), the safety valve.

25         THE COURT:  No, I got the statute.

1           MR. YOON:  Oh, I'm sorry, your Honor.

2           THE COURT:  All right.

3       If you plead guilty here today, I can put you in

4   prison for 78 months.  Do you understand that?

5           MR. EHWA:  Yes, sir.

6           THE COURT:  The range, as things stand, is 46

7   to 57 months.  The sentencing commission has amended

8   that range and that takes you down to 37 to 46 months.

9   The -- it may be that you qualify for the safety valve.

10  If you qualify for the safety valve, that takes you down

11  to 30 to 37 months.

12      Do you understand this?

13          MR. EHWA:  Yes, your Honor.

14          THE COURT:  Now, a word about this safety

15  valve.

16      In order to qualify for the safety valve, you've

17  got to tell them everything you know about everything,

18  every criminal act, everything.  Do you understand

19  that?

20          MR. EHWA:  Yes, your Honor.

21          THE COURT:  Now, they say that if you do and

22  if they're satisfied with that, then they'll recommend

23  the lower range, the 30 months.  The way this safety

24  valve works, I get to make that determination as to

25  whether you have made these full disclosures that the

1    law requires, but as a practical matter, I have very --

2    if they tell me "No," let's say they don't talk to you,

3    so then we're back to 37 to 46 months --

4         And in that instance you'll recommend 37 months?

5              MR. YOON:  Correct, your Honor.

6              THE COURT:  All right.  So if you don't get

7    the safety valve, they'll be saying 37.  What you need

8    to understand is I have -- your lawyers make arguments

9    on your behalf, but I have very little ability to go

10   behind what the government tells me.  If they say,

11   "Well, we don't think he's told us everything or we

12   don't think he's told us the truth, I'm not possessed

13   with enough information usually to say, "Well, I think

14   he has, so I'm going down to that lower range."

15        Do you understand that?

16             MR. EHWA:  Yes, your Honor.

17             THE COURT:  All right.  Do you understand if

18   you plead guilty to this drug offense, now you're not in

19   custody, and unless there are extraordinary

20   circumstance, I have to take you into custody today.

21        Are you clear on that?

22             MR. EHWA:  Yes, your Honor.

23             THE COURT:  Other than this plea agreement,

24   has anyone -- is there any other agreement, any other

25   deal, any side agreement that I don't know about?

1    MR. EHWA:  No, your Honor.

2    THE COURT:  All right.  Has anyone threatened

3  you with anything to get you to plead guilty?

4    MR. EHWA:  No, your Honor.

5    THE COURT:  Are you covering up for someone

6  else by pleading guilty yourself?

7    MR. EHWA:  No, your Honor.

8    THE COURT:  Do you know that a conviction of

9  this crime, if you're not a citizen, you may be deported

10  from the United States, denied admission under the laws

11  of the United States, denied naturalization under the

12  laws of the United States?

13    MR. EHWA:  Yes, your Honor.

14    THE COURT:  Have you had enough time to talk

15  all of this over with Mr. Korman?

16    MR. EHWA:  I have, your Honor.

17    THE COURT:  He's been a good attorney for you,

18  gotten you those things which you have rights under the

19  law?

20    MR. EHWA:  Yes, your Honor.

21    THE COURT:  Are you satisfied with his

22  representation of you?

23    MR. EHWA:  I truly am, your Honor.

24    THE COURT:  Do you still want to plead

25  guilty?

```
1              MR. EHWA:  Yes, your Honor.

2              THE COURT:  Why?

3              MR. EHWA:  It's what I want to do.

4              THE COURT:  But why?

5              MR. EHWA:  Because I did the crime.

6              THE COURT:  Mr. McGuire, take a look at this

7     document and, um, make sure that we have your plea

8     agreement, make sure that's what it is.

9              MR. McGUIRE:  Yes.

10             THE COURT:  And is that your signature there

11    on the last page?

12             MR. McGUIRE:  Yes.

13             THE COURT:  Did you read it before you signed

14    it?

15             MR. McGUIRE:  Yes.

16             THE COURT:  Have you talked it all over with

17    Mr. Parker, your attorney?

18             MR. McGUIRE:  Yes.

19             THE COURT:  Do you believe you understand it?

20             MR. McGUIRE:  Yes.

21             THE COURT:  And you know I'm not part of it,

22    I'm not bargaining with you?

23             MR. McGUIRE:  Yes.

24             THE COURT:  Let's see.

25          They've got this usual waiver of appeal rights.
```

1    If you plead guilty and I sentence you, I'm going to

2    tell you you have a right to appeal, but if I sentence

3    you to within what was contemplated by this plea

4    agreement, even though I'm not part of it, that's how

5    the sentence comes out, the only way you can appeal is

6    in the case of a manifest injustice and I've never seen

7    one.

8         Do you understand that?

9              MR. McGUIRE:  Yes.

10             THE COURT:  So that means that you're stuck

11   with the sentence.

12        You're clear on that?

13             MR. McGUIRE:  Yes.

14             THE COURT:  Now, we'll talk specifically.

15   I'll ask Mr. Yoon to give me the same information with

16   respect to you and overall.

17             MR. YOON:  Thank you, your Honor.

18        For Mr. McGuire, Mr. McGuire is responsible for

19   greater than 498 oxycodone 30 milligram pills, but less

20   than 1990 oxycodone 30 milligram pills.  That is between

21   14.92 grams and 59.70 grams of oxycodone.  It has an

22   equivalent of between 100 and 400 kilograms of

23   marijuana.  That results in a base offense level of 26.

24   Your Honor, the highest guideline range at that base

25   offense level for Mr. McGuire would be 78 to 97 months,

1    97 being the top of the range.  Your Honor, should there

2    be acceptance, the range would be 57 to 71 months, 71

3    being the top of the range.  With the amendment of the

4    United States sentencing commission, that range would be

5    46 to 57 months, with the top being 57 months.

6              THE COURT:  Again I'm not just basing it on

7    what he says, but -- because at sentencing I'm going

8    listen to your attorney, too, but if his calculations

9    are correct, I can send you to prison for 97 months.  Do

10   you understand that?

11             MR. McGUIRE:  Yes.

12             THE COURT:  Now, these guidelines, as they now

13   stand, it would recommend for you 57 to 71 months.

14   Under the amendment, which the government says it will

15   go for, the range would be 46 to 57 months.

16        And you'll recommend 46?

17             MR. YOON:  Correct, your Honor.

18             THE COURT:  He'll recommend the low end of the

19   range.  I could go lower, I could go higher, up to 97,

20   but that's what he'll recommend.  And if you go through

21   with it, you can hold him to that.

22        Do you understand that?

23             MR. McGUIRE:  Yes, your Honor.

24             THE COURT:  All right.  And there's no other

25   agreement here that I don't know about, is there?  No

1    says, "Well, we're going to do this or that, so go ahead

2    and do it"?

3                MR. McGUIRE:  No.

4                THE COURT:  Anyone threaten you with anything

5    to make you plead guilty?

6                MR. McGUIRE:  No.

7                THE COURT:  Are you covering up for someone

8    else by pleading guilty yourself?

9                MR. McGUIRE:  No.

10               THE COURT:  Do you know that if you're found

11   guilty or plead guilty to this crime and you're not a

12   citizen, you can be deported from the United States,

13   denied admission to the United States, denied

14   naturalization to the United States, do you understand

15   that?

16               MR. McGUIRE:  Yes.

17               THE COURT:  Have you had enough time to talk

18   all of this over with Mr. Parker?

19               MR. McGUIRE:  Yes.

20               THE COURT:  Do you think he's been a good

21   attorney for you, gotten for you those things that you

22   have a right to get?

23               MR. McGUIRE:  Yes.

24               THE COURT:  Are you satisfied with his

25   representation of you?

1          MR. McGUIRE:  Yes.

2          THE COURT:  Do you still want to plead

3   guilty?

4          MR. McGUIRE:  Yes.

5          THE COURT:  Why?

6          MR. McGUIRE:  I'm guilty.

7          THE COURT:  All right.

8       Mr. Assencoa, you have a plea agreement here, or

9   what looks like it.  Take a look at that and make sure

10  that is your plea agreement.

11         MR. ASSENCOA:  That is, sir.

12         THE COURT:  And that's your signature on the

13  last page?

14         MR. ASSENCOA:  Yes, it is.

15         THE COURT:  Did it read before you signed it?

16         MR. ASSENCOA:  Yes, I did.

17         THE COURT:  Did you talk it all over with

18  Mr. Budreau?

19         MR. ASSENCOA:  Yes, I did.

20         THE COURT:  Do you think you understand it?

21         MR. ASSENCOA:  I do, yes.

22         THE COURT:  I imagine here that there is this

23  waiver provision?

24         MR. ASSENCOA:  Yes.

25         THE COURT:  You've heard me explain it before

1    and I'll do it the same way with you.

2        So long as, um, by signing this, that this is your

3    deal with the government -- and I'm not bargaining with

4    you, but you can hold them to what they agreed to and

5    they can hold you.  But if I sentence you within what's

6    contemplated by this agreement, it doesn't mean things

7    are going to go your way, but within what's contemplated

8    by this agreement, you can try to appeal, but I must

9    tell you -- I'll always tell you, that the only way you

10   can do it is if there's a manifest injustice and I

11   haven't seen one yet.  So really you're stuck with my

12   sentence.

13       Do you understand that?

14            MR. ASSENCOA:  I do.

15            THE COURT:  Let me go back to Mr. McGuire for

16   a minute.  I'm sorry.

17       This is a drug trial.  If you plead guilty here

18   today, unless there's extraordinary circumstances, I

19   have to take you into custody, do you understand that?

20   Today.

21            MR. McGUIRE:  Yes, your Honor.

22            THE COURT:  Now, back to Mr. Assencoa.  Thank

23   you.

24       Well, let's hear what the government has to say,

25   recognizing I'm not required to follow this, but you

1    need to know what the worst is that can happen to you.

2    Mr. Yoon.

3            MR. YOON:  Your Honor, thank you.

4        For Mr. Assencoa, um, Mr. Assencoa is responsible

5    for 1,000 oxycodone 30 milligram pills.  That's between

6    14.92 grams and 59.70 grams of oxycodone.  This is the

7    equivalent of between 100 and 400 kilograms of

8    marijuana.  And that results in a base offense level of

9    26.

10        Your Honor, the range at that offense level, the

11   highest would be 63 to 78 months with 78 months being

12   the highest or top of the range.  And with acceptance,

13   your Honor, the range is 46 to 57 months, 57 being the

14   top of the range.  And with the recent amendment, um,

15   the range would be 37 to 46 months, with 46 months being

16   the top of the range.

17        In this case, your Honor, should Mr. Assencoa

18   qualify for the safety valve, the range would go from 30

19   months to 37 months, and in this case the government

20   does believe that he has satisfied the safety valve

21   requirements under 2 -- I'm sorry, 5(c)(1.2)(A)(5), the

22   rest of the factors being found by probation later on.

23   Should he qualify for the safety valve, the

24   recommendation of the government would be 30 months.

25            THE COURT:  All right.

```
1              Now, Mr. Assencoa, if you plead guilty here -- and
2      I'm not bargaining with you, just letting you know, I
3      could put you in prison for 78 months, do you
4      understand?
5                      MR. ASSENCOA:  Yes, I do.
6                      THE COURT:  The range with a plea, as it now
7      stands, is 46 to 57 months.  With this amendment, that
8      takes it down to 37 to 46 months.  The government tells
9      me that you do qualify for the safety valve.  Now, the
10     fact that they think you do doesn't mean that I will
11     find that you do, but it's certainly not going to hurt
12     you.  As before, I was saying, "Well, I have no way of
13     going behind what they say it is, and in a sense that
14     also, I guess, helps you because I don't have the
15     information to challenge it.  But every case is its own
16     case.  And so you understand that to go to this range of
17     30 to 37 months would require a finding on my part that
18     you deserve the safety valve.
19             Do you understand that?
20                     MR. ASSENCOA:  Yes, I do.
21                     THE COURT:  Then if you do deserve the safety
22     valve, you know they're going to be recommending 30
23     months in prison, you know that?
24                     MR. ASSENCOA:  Yes, your Honor.
25                     THE COURT:  If you don't get the safety valve,
```

1    I assume they'll still be recommending 37 months.

2         Correct, Mr. Yoon?

3              MR. YOON:  Yes, your Honor, that's correct.

4              THE COURT:  All right.  So they'll be at the

5    low end, but this last piece, the safety valve, that's

6    something I have to determine.

7         Do you understand that?

8              MR. ASSENCOA:  Yes, your Honor.

9              THE COURT:  Now, you know that, as this is a

10   drug crime, if you plead guilty here today, unless

11   there's extraordinary circumstances, I have to take you

12   into custody today?

13             MR. ASSENCOA:  Yes, I do.

14             THE COURT:  Other than this plea, is there any

15   agreement in this case that I don't know about, any side

16   agreement?

17             MR. ASSENCOA:  No, your Honor.

18             THE COURT:  Anyone threaten you with anything

19   to get you to plead guilty?

20             MR. ASSENCOA:  No, sir.

21             THE COURT:  Are you covering up for anyone

22   else by pleading guilty today?

23             MR. ASSENCOA:  No, sir.

24             THE COURT:  Now, you know that if you are now

25   guilty or are now pleading guilty to this crime and you

```
1   are not a citizen, that may have the consequence of

2   you're being deported, denied admission under the laws

3   of the United States, denied naturalization under the

4   laws of the United States.  Do you understand that?

5               MR. ASSENCOA:  Yes.

6               THE COURT:  Have you had enough time to talk

7   all of this over with Mr. Budreau?

8               MR. ASSENCOA:  Yes, sir.

9               THE COURT:  Do you think he's been a good

10  lawyer for you, gotten for you those things that are

11  your rights under the law?

12              MR. ASSENCOA:  Yes, I do.

13              THE COURT:  Are you satisfied with his

14  representation of you?

15              MR. ASSENCOA:  Yes, I am.

16              THE COURT:  Do you still want to plead

17  guilty?

18              MR. ASSENCOA:  Yes, I do.

19              THE COURT:  Why?

20              MR. ASSENCOA:  Because I'm guilty, your Honor.

21              THE COURT:  All right.

22        Mr. Cotter, I'm given a plea agreement here.  Take

23  a look to see if that's your plea agreement.

24              MR. COTTER:  Yes, your Honor.

25              THE COURT:  And is that your signature there
```

1   on the last page?

2           MR. COTTER:  Yes, your Honor.

3           THE COURT:  Have you had enough time to read

4   this agreement?

5           MR. COTTER:  Yes, your Honor.

6           THE COURT:  Do you understand it?

7           MR. COTTER:  Yes, your Honor.

8           THE COURT:  Let's look it over.

9       Again they put in this waiver of appeal, so if you

10  plead guilty I'm going to tell you that you can appeal,

11  but you understand that if I sentence you to what's

12  within or contemplated by this plea agreement, unless

13  there's manifest injustice, you're stuck with the

14  sentence I impose upon you.

15      Do you understand that?

16          MR. COTTER:  Yes, your Honor.

17          THE COURT:  And now I'll ask Mr. Yoon to tell

18  us, um, in your case, what the necessary information is

19  on you.

20          MR. YOON:  Yes, your Honor.  Thank you.

21      For Mr. Cotter, Mr. Cotter is responsible for 700

22  oxycodone 30 milligram pills, that's between 14.92 grams

23  and 59.70 grams of oxycodone, and that is the equivalent

24  of between 100 and 200 kilograms of marijuana, and that

25  results in a base offense level of 26, your Honor.  And

1    that being the offense level, the highest range would be

2    63 to 78 months, or 78 would be the top of the range.

3         Should there be acceptance, your Honor, the range

4    is 46 to 57 months, 57 months being the top of the

5    range.  And with the recent amendment, your Honor, the

6    range would be 37 months to 46 months, 46 months being

7    the top of the range.  And should Mr. Cotter satisfy the

8    requirements of 2(b)(1.1)(b)(16), that range would fall

9    to 30 months to 37 months.

10             THE COURT:  And you recommend the low end of

11   the applicable range?

12             MR. YOON:  Yes, your Honor.

13             THE COURT:  Now, I'm not part of any

14   bargaining, you understand that?

15             MR. COTTER:  Yes, your Honor.

16             THE COURT:  So I could sentence you up to 78

17   months in prison.

18        Are you clear on that?

19             MR. COTTER:  Yes, your Honor.

20             THE COURT:  Now, the range, as it now stands,

21   as it is recommended to me, is 46 to 57 months, the

22   sentencing commission has amended that range, and so

23   that takes us down to 37 to 46 months, and the

24   government at least will go along with this

25   recommendation.  Also, it appears you may qualify for

1    the safety valve.  If you qualify for the safety valve,

2    that takes you down to 30 to 37 months.

3         In order to qualify for the safety value, among

4    other things, you've got to tell them everything you

5    know about everything, this crime, other crimes,

6    everything you know, and it's up to the government --

7    it's up to the government, in the first instance, to say

8    whether they are satisfied with that.  The thing you

9    need to know is I haven't got much way of going behind

10   this if they tell me they're not satisfied, that they

11   don't think that you've been completely truthful.  Oh,

12   I'll listen to your attorney, and it's my call, I'll

13   listen to you, but going in I am not in the law

14   enforcement business, so I'm not very good at or in a

15   position to say, "Well, I think he's been telling the

16   truth, so I'm going to give him the benefit of that."

17        Do you understand that?

18             MR. COTTER:  Yes, your Honor.

19             THE COURT:  Now, you understand that this is a

20   drug trial and if you plead guilty here today, I am

21   required to take you into custody, do you know that,

22   today?

23             MR. COTTER:  Yes, your Honor.

24             THE COURT:  Unless there is extraordinary

25   circumstances.

1          Other than this agreement, has anyone made any

2     deal with you, made any promises to you, anything that I

3     don't know about?

4               MR. COTTER:  No, your Honor.

5               THE COURT:  Has anyone threatened you with

6     anything to get you to plead guilty?

7               MR. COTTER:  No.

8               THE COURT:  Are you covering up for someone

9     else by pleading guilty this afternoon?

10              MR. COTTER:  No, your Honor.

11              THE COURT:  You know that if you're not a

12    citizen of the United States, a conviction of this crime

13    may have the consequence of your being deported from the

14    United States, denied naturalization under the laws of

15    the United States, denied admission under the laws of

16    the United States, do you know that?

17              MR. COTTER:  Yes, your Honor.

18              THE COURT:  Again, have you had enough time to

19    talk all of this over with Mr. Scully, your Honor?

20              MR. COTTER:  Yes, your Honor.

21              THE COURT:  Do you think he's been a good

22    attorney for you, gotten for you those things that are

23    your rights under the law?

24              MR. COTTER:  A very good attorney.

25              THE COURT:  Are you satisfied with his

```
 1    representation?
 2              MR. COTTER:  Yes, your Honor.
 3              THE COURT:  Do you still want to plead
 4    guilty?
 5              MR. COTTER:  Yes, your Honor.
 6              THE COURT:  Why?
 7              MR. COTTER:  I am guilty.
 8              THE COURT:  All right.
 9        Mr. Ouellette, take a look at your plea agreement
10    here and let me know if that in fact is your plea
11    agreement?
12              MR. OUELLETTE:  Yes.
13              THE COURT:  And did you sign that on the last
14    page there?
15              MR. OUELLETTE:  Yes.
16              THE COURT:  You did.
17        Have you had enough time to talk all of this over
18    with Mr. Dombrowski?
19              MR. OUELLETTE:  I have.
20              THE COURT:  You've read this?
21              MR. OUELLETTE:  Yes.
22              THE COURT:  Do you think you understand it?
23              MR. OUELLETTE:  Yes, your Honor.
24              THE COURT:  Again, here they've got this
25    usual, um, waiver or rights to bring an appeal.  This
```

1    means that if I -- if you plead and I sentence you, I --

2    and my sentence falls within what's understood in this

3    plea agreement, then unless there is manifest injustice,

4    you're stuck with my sentence.

5         Do you understand that?

6              MR. OUELLETTE:  Yes, your Honor.

7              THE COURT:  If you appeal, they'll run right

8    in before me or before some other judge and say, "Oh,

9    you waived an appeal," and it just won't work unless

10   there's manifest injustice, and I've never seen that.

11        Do you understand that?

12             MR. OUELLETTE:  Yes, your Honor.

13             THE COURT:  Do you see this business over here

14   on Page 6?

15             MR. OUELLETTE:  Yes.

16             THE COURT:  And you've read that and

17   understand it?

18             MR. OUELLETTE:  Yes.

19             THE COURT:  You know that all they're agreeing

20   to is that they're going to think about those things and

21   they're going to tell me what they think at the time of

22   the sentencing.

23        Do you understand that?

24             MR. OUELLETTE:  Yes.

25             THE COURT:  So as we sit here now, we don't

1    know what they're going to tell me.

2          You're clear on that?

3                MR. OUELLETTE:  Understood, your Honor.

4                THE COURT:  Very well.

5          Then the same information as to Mr. Ouellette.

6                MR. YOON:  Yes, your Honor.  Thank you.

7          For Mr. Ouellette, your Honor, Mr. Ouellette is

8    responsible for 2,230 oxycodone 30 milligram pills,

9    that's between 59.70 grams and 104.47 grams of

10   oxycodone.  That is the equivalent to between 400 and

11   700 kilograms of marijuana.

12         Your Honor, the defendant's base offense level

13   would begin at 26, but is increased by 2 points under

14   2(d)(1.1)(b)(1).

15               THE COURT:  What's that for?

16               MR. YOON:  For the possession of a firearm,

17   your Honor.

18               THE COURT:  Uh-huh.

19               MR. YOON:  So the base offense level would be

20   28.  At that offense level, your Honor, the range is 78

21   to 97 months, with 97 months being the top of that

22   range.  With acceptance, your Honor, the range will be

23   57 to 71 months, 71 months being the top of the range.

24   And, your Honor, after the amendment, the range would be

25   46 months to 57 months, 57 months being the top of that

```
 1   range.
 2              THE COURT:  All right.  Now, about this
 3   firearm piece, like the amount, in your case, when we
 4   all go to trial, they separately have to prove to the
 5   jury, on evidence beyond a reasonable doubt, that you
 6   possessed a firearm.
 7        Do you understand I will require them to do that
 8   or I won't count the firearm?
 9              MR. OUELLETTE:  Yes.
10              THE COURT:  So if you agree to the firearm,
11   then I can sentence you up to 97 months.  We're clear on
12   that?
13              MR. OUELLETTE:  Yes.
14              THE COURT:  The range, as it now stands, is --
15   and I'll have a recommendation of not less than 57 nor
16   more than 71 months, but with the amendment it's 46 to
17   57 months, and they're going to recommend the 46 months
18   absent other things that may go into their calculation.
19   But as we sit here today, it's 46 months.
20        Do you understand that?
21              MR. OUELLETTE:  Yes, your Honor.
22              THE COURT:  Now, other than this agreement,
23   your agreement, um, with the government, is there any
24   other deal or any other promises beyond what's in this
25   agreement that I don't know about from reading the
```

1    agreement?

2              MR. OUELLETTE:  No, sir.

3              THE COURT:  Anyone threaten you with anything

4    to get you to plead guilty?

5              MR. OUELLETTE:  No, sir.

6              THE COURT:  Are you covering up for anyone

7    else by pleading guilty yourself?

8              MR. OUELLETTE:  No, your Honor.

9              THE COURT:  You know that if you're guilty of

10   a crime, that may have the consequence of your being

11   deported if you're not a United States citizen -- it may

12   have the consequence of your being deported from the

13   United States, denied admission under the laws of the

14   United States, denied naturalization under the laws of

15   the United States.

16       Do you understand that?

17             MR. OUELLETTE:  Yes, I do.

18             THE COURT:  Have you had enough time to talk

19   all of this over with Mr. Dombrowski?

20             MR. OUELLETTE:  Yes, sir.

21             THE COURT:  Has he been a good lawyer for you,

22   gotten for you those things that are your rights under

23   the law?

24             MR. OUELLETTE:  Yes, your Honor.

25             THE COURT:  Are you satisfied with his

```
 1   representation of you?
 2                MR. OUELLETTE:  Yes.
 3                THE COURT:  He's a good lawyer?
 4                MR. OUELLETTE:  Yes, your Honor.
 5                THE COURT:  Do you still want to plead
 6   guilty?
 7                MR. OUELLETTE:  Yes.
 8                THE COURT:  Why?
 9                MR. OUELLETTE:  Because I'm guilty.
10                THE COURT:  Mr. Panaggio, I have a plea
11   agreement here for you.  You can take a look at it.
12   (Hands over.)
13        Is that your signature there on the last page?
14                MR. PANAGGIO:  Yes, it is, your Honor.
15                THE COURT:  And is that your plea agreement?
16                MR. PANAGGIO:  Yes, sir.
17                THE COURT:  And did you read it or look it
18   over before you signed it?
19                MR. PANAGGIO:  Yes, your Honor.
20                THE COURT:  Have you talked it over with your
21   lawyer, Mr. McBride, before you signed it?
22                MR. PANAGGIO:  Yes, your Honor.
23                THE COURT:  Do you think you understand it?
24                MR. PANAGGIO:  Yes, your Honor.
25                THE COURT:  All right.
```

1           And if I look at this, it's got this waiver

2     business here.  Do you see this on Page 5?

3               MR. PANAGGIO:  Yes.

4               THE COURT:  Now, as I've explained to the

5     others, this means that this is a deal, it's a bargain,

6     you do what you're supposed to do and the government has

7     to do what it's supposed to do, but part of it is you're

8     waiving your right to appeal, and I'll tell you, when I

9     come to sentence you, that you have the right to appeal,

10    but if my sentence, whatever it is, is within the ambit

11    of what this agreement contemplates, then you're stuck

12    with it as a practical matter because all you can say is

13    that it's manifest injustice and I've never seen a case

14    yet that's adopted that.

15         Do you understand that?

16              MR. PANAGGIO:  Yes, I do, your Honor.

17              THE COURT:  Now, over here on Page 6, do you

18    see the information that starts there?

19              MR. PANAGGIO:  Yes.

20              THE COURT:  And you've read it?

21              MR. PANAGGIO:  Yes.

22              THE COURT:  And you understand it?

23              MR. PANAGGIO:  Yes.

24              THE COURT:  All that obligates them to do is

25    think about these matters, albeit in good faith, but

1     that's all they're obligated to do, they don't have to

2     make any recommendation or anything, they, the

3     government, is just going to take that into account.

4          You understand that?

5               MR. PANAGGIO:  Yes, your Honor.

6               THE COURT:  Now, let's go back, let's hear

7     what Mr. Yoon has to say as to the calculations.

8               MR. YOON:  Yes, your Honor.  Thank you.

9          For Mr. Panaggio, Mr. Panaggio is responsible for

10    1900 oxycodone 30 milligram pills.  That's between 14.92

11    grams and 59.70 grams of oxycodone.  And that's

12    equivalent to between 100 and 400 kilograms of

13    marijuana.  And at that level the base offense level is

14    26.  So at that offense level the range is 63 to 78

15    months, with 78 months being the highest or top of that

16    range.  And with acceptance, your Honor, the range would

17    be 46 to 57 months, with 57 months being the top of that

18    range.  And with the amendment, your Honor, the range

19    would be 37 to 46 months, the 46 months would be the top

20    of that range.

21         And in this instance, Mr. Panaggio, um, the

22    government believes -- for his part he might just

23    qualify for the safety valve and with the safety valve

24    that falls to 30 months to 37 months.  And in either

25    instance, either under the amendment or the safety

1   valve, the government would be recommending the low end.

2          THE COURT:  Now, Mr. Panaggio, I'm not part of

3   any bargain here, you've got one with the government,

4   but I'm not part of it.  But you understand that at the

5   quantities he's talking about, I can sentence you to

6   prison for 78 months, I can go that high.

7       Do you understand that?

8          MR. PANAGGIO:  Yes, your Honor.

9          THE COURT:  Then there's this range, as it

10  stands now, of 46 to 57 months, the Commission has

11  amended that range, and that takes us down to 37 to 46

12  months, and the government will go along with that.  But

13  that doesn't mean I'm going to go along with it.  But

14  they will and that accounts for something.  They do say

15  that you're eligible for this safety valve and that

16  takes it down to 30 to 37 months.

17      Now, remember, to be granted the safety valve,

18  that's my call, I have to be satisfied that in fact you

19  have made all the disclosures that you're required to

20  make and the other things about your criminal history

21  are all in place.  I have to be satisfied with that.

22  But certainly it accounts for something that the

23  government says that you qualify because, as I've

24  explained to others, I don't have much of a way of going

25  behind that.

1        But do you understand that that last step, that's

2    my call, you're clear on that?

3              MR. PANAGGIO:  Yes, your Honor.

4              THE COURT:  And then in this it talks about

5    other post arrests, incidents, but all they're saying is

6    they're going to think about that and, depending on what

7    they think, we'll hear that at the time of sentencing.

8        Do you understand that?  They don't have to do

9    anything, they just have to think about it.

10       Is that clear?

11             MR. PANAGGIO:  Yes, your Honor.

12             THE COURT:  Now, again this is a drug case and

13   so if you plead guilty here today, unless there's

14   extraordinary circumstances, I'm supposed to take you

15   into custody today.

16       Are you clear on that?

17             MR. PANAGGIO:  Yes, I am, your Honor.

18             THE COURT:  And, Mr. Ouellette, I didn't ask

19   you that, so let me ask you now.

20       This is a drug trial and if you plead guilty,

21   unless there is extraordinary circumstances, I'm

22   supposed to take you into custody today, if you plead

23   guilty?

24             MR. OUELLETTE:  Yes, your Honor.

25             THE COURT:  All right.

1          Now, following the procedure we followed before,

2     we're going to hear what Mr. Yoon has to say.  He will

3     make it simple and he will tailor it to each one of you

4     six individuals.  I want to know, do you understand it,

5     and then I'll want to know if it's true.

6          Now, crucial to this is the drug quantity.  He

7     doesn't have to go back all over these drug quantities

8     because we've discussed them when I've been discussing

9     what might happen to you with respect to each of you and

10    with respect to Mr. Ouellette with the firearm, but

11    understand that if you agree to his recitation -- and I

12    expect him to mention the firearm, although he doesn't

13    have to mention the drug quantities, you are agreeing to

14    those things that I need to know to sentence you.

15         Do you understand that, Mr. Ehwa?

16              MR. EHWA:  Yes, your Honor.

17              THE COURT:  Mr. McGuire?

18              MR. McGUIRE:  Yes, your Honor.

19              THE COURT:  Mr. Assencoa?

20              MR. ASSENCOA:  Yes, your Honor.

21              THE COURT:  Mr. Cotter?

22              MR. COTTER:  Yes, your Honor.

23              THE COURT:  Mr. Ouellette?

24              MR. OUELLETTE:  Yes, your Honor.

25              THE COURT:  Mr. Panaggio?

1          MR. PANAGGIO:  Yes, your Honor.

2          THE COURT:  Very well.

3       Mr. Yoon, briefly.

4          MR. YOON:  Yes, sir.  Thank you.

5       The government would be able to show through

6    evidence that between November of 2012 and May of 2013,

7    through wire interception, recorded calls and text

8    messages, and also law enforcement visual and electronic

9    surveillance, and also witness testimony, that each

10   defendant agreed to possess oxycodone with the intent to

11   distribute it and also did in fact possess it, and did

12   in fact distribute oxycodone.  Secondly, your Honor, the

13   defendants agreed, in a phone call with Michael Bourque,

14   to in fact possess with intent to distribute oxycodone

15   and in fact did distribute that oxycodone.  Third, your

16   Honor, that each defendant did buy oxycodone from

17   Michael Bourque in the amounts that have been described

18   previously, which were then -- which were purchased to

19   be sold to retail pill customers and in fact which were

20   sold to such customers.

21       And specifically to Mr. Ouellette, um,

22   Mr. Ouellette did possess a firearm, um, and an

23   operational one, during his interaction with law

24   enforcement.  So he did possess that firearm.

25       But those are the facts the government would be

1    able to prove with regard to these defendants.

2              THE COURT:  Thank you.

3         Mr. Ehwa, did you hear what Mr. Yoon had to say?

4              MR. EHWA:  I did, your Honor.

5              THE COURT:  Do you understand it?

6              MR. EHWA:  Yes, your Honor.

7              THE COURT:  Is it true?

8              MR. EHWA:  Yes, your Honor.

9              THE COURT:  Mr. McGuire, did you hear what

10   Mr. Yoon had to say?

11             MR. McGUIRE:  Yes, your Honor.

12             THE COURT:  Do you understand it?

13             MR. McGUIRE:  Yes, your Honor.

14             MR. PARKER:  Your Honor, with respect to one

15   of the things Mr. Yoon said, um, I'm not sure that we

16   need to agree to it or that Mr. McGuire is willing to

17   agree to it, and that's that he bought from Bourque with

18   the intention of reselling.  He did agree to possess

19   with intent to distribute, he did in fact possess with

20   intent to distribute, but, um, he was more of a runner,

21   which is how his role --

22             THE COURT:  Well, I'm not going to take the

23   "more of a runner," though I'll hear from you at the

24   time of sentencing.  But what Mr. Parker said is like an

25   amendment.

1          So whether or not you bought from Mr. Bourque

2     directly, as part of a deal with other co-conspirators,

3     do you agree that you possessed that quantity of

4     oxycodone with the idea of distributing it and you went

5     ahead and distributed it?  Is that true?

6                    MR. McGUIRE:  Yes, your Honor.

7                    THE COURT:  Very well.

8            Mr. Assencoa, did you hear what Mr. Yoon had to

9     say?

10                   MR. ASSENCOA:  Yes, your Honor.

11                   THE COURT:  Do you understand it?

12                   MR. ASSENCOA:  Yes, I do.

13                   THE COURT:  Is it true?

14                   MR. ASSENCOA:  Yes, your Honor.

15                   THE COURT:  Mr. Cotter, did you hear what

16    Mr. Yoon had to say?

17                   MR. COTTER:  Yes, your Honor.

18                   THE COURT:  Do you understand it?

19                   MR. COTTER:  Yes, your Honor.

20                   THE COURT:  Is it true?

21                   MR. COTTER:  Yes, your Honor.

22                   THE COURT:  Thank you.

23           Mr. Ouellette, did you hear what Mr. Yoon had to

24    say?

25                   MR. OUELLETTE:  Yes.

1          THE COURT:  Do you understand it?

2          MR. OUELLETTE:  Yes, I do.

3          THE COURT:  Is it true?

4          MR. OUELLETTE:  It's true.

5          THE COURT:  Okay.

6      Mr. Panaggio, did you hear what Mr. Yoon had to

7  say?

8          MR. PANAGGIO:  Yes, your Honor.

9          THE COURT:  Do you understand it?

10          MR. PANAGGIO:  Yes, I do.

11          THE COURT:  Is it true?

12          MR. PANAGGIO:  Yes, your Honor.

13          THE COURT:  Very well.

14          MR. SCULLY:  Your Honor, on behalf of

15  Mr. Cotter, if I might just say, I have a similar

16  circumstance as with Mr. Parker that applies to

17  Mr. Cotter, that he didn't exactly purchase directly

18  from Bourque the amount of oxycodone, but --

19          THE COURT:  But it was part of this

20  conspiratorial deal?

21          MR. SCULLY:  Yes.  He essentially is a middle-

22  man.

23          THE COURT:  Well, I'm not going to take the

24  characterization.

25      But, Mr. Cotter, it's very important and that's

1   why we're saying these things for the record because

2   it's on this record, if you do go ahead and plead

3   guilty, that I'm going to have to impose sentence.

4         So let me say to you what I think you're going to

5   agree to, but if you don't, you tell me.

6         You're not agreeing that purchases were made

7   directly from Bourque, but you're agreeing that as part

8   of this conspiracy you did possess, with the intent to

9   distribute, oxycodone and you in fact distributed it.

10        Is it true that you agree to that?

11              MR. COTTER:  Yes, your Honor.

12              THE COURT:  Very well.

13        All right.  I find that Mr. Thomas Ehwa, Mr. Frank

14  McGuire, Mr. Cory Assencoa, Mr. Sean Cotter, Mr. Mark

15  Ouellette, and Mr. Raymond Panaggio, knowingly,

16  intelligently, and voluntarily have exercised their

17  right to plead guilty and the Clerk may accept the

18  plea.

19        Gentlemen, this is all very serious.  This is most

20  serious.  The Clerk will say to you, in the same order

21  I've been talking to you, "You previously pleaded not

22  guilty, do you want now to change your plea to guilty?"

23  in the appropriate legal language.  If you want to stop,

24  tell her "No" and we'll put you on for trial.  If you

25  want to plead guilty, tell her "yes," she'll ask you,

1    "How do you now plead, guilty or not guilty?"  If it's

2    guilty, you will plead guilty.  But understand that if

3    you plead guilty, there's no taking it back or starting

4    over.

5         Do you understand, Mr. Ehwa?

6              MR. EHWA:  Yes, your Honor.

7              THE COURT:  Mr. McGuire?

8              MR. McGUIRE:  Yes, your Honor.

9              THE COURT:  Mr. Assencoa?

10             MR. ASSENCOA:  Yes, your Honor.

11             THE COURT:  Mr. Cotter?

12             MR. COTTER:  Yes, your Honor.

13             THE COURT:  Mr. Ouellette?

14             MR. OUELLETTE:  Yes, your Honor.

15             THE COURT:  Mr. Panaggio?

16             MR. PANAGGIO:  Yes, your Honor.

17             THE COURT:  Very well.  The Clerk may accept

18   the plea.

19             THE CLERK:  Mr. Ehwa, you have previously pled

20   not guilty to a one-count indictment charging you with

21   conspiracy to possess with intent to distribute and to

22   distribute oxycodone in violation of Title 21, United

23   States Code Section 846.  Do you now wish to change your

24   plea, "yes" or "no"?

25             MR. EHWA:  Yes.

1              THE CLERK:  How do you now plead to Count 1,
2    guilty or not guilty?
3              MR. EHWA:  Guilty.
4              THE CLERK:  Mr. McGuire, you have previously
5    pled not guilty to a one-count indictment charging you
6    with conspiracy to possess with intent to distribute and
7    to distribute oxycodone in violation of Title 21, United
8    States Code Section 846.  Do you now wish to change your
9    plea, "yes" or "no"?
10             MR. McGUIRE:  Yes.
11             THE CLERK:  How do you now plead to Count 1,
12   guilty or not guilty?
13             MR. McGUIRE:  Guilty.
14             THE CLERK:  Mr. Assencoa, you have previously
15   pled not guilty to a one-count indictment charging you
16   with conspiracy to possess with intent to distribute and
17   to distribute oxycodone in violation of Title 21, United
18   States Code Section 846.  Do you now wish to change your
19   plea "yes" or "no"?
20             MR. ASSENCOA:  Yes.
21             THE CLERK:  How do you now plead to Count 1,
22   guilty or not guilty?
23             MR. ASSENCOA:  Guilty.
24             THE CLERK:  Mr. Cotter, you have previously
25   pled not guilty to a one-count indictment charging you

1    with conspiracy to possess with intent to distribute and

2    to distribute oxycodone in violation of Title 21, United

3    States Code Section 846.  Do you now wish to change your

4    plea, "yes" or "no"?

5              MR. COTTER:  Yes.

6              THE CLERK:  How do you now plead to Count 1,

7    guilty or not guilty?

8              MR. COTTER:  Guilty.

9              THE CLERK:  Mr. Ouellette, you have previously

10   pled not guilty to a one-count indictment charging you

11   with conspiracy to possess with intent to distribute and

12   to distribute oxycodone in violation of Title 21, United

13   States Code Section 846.  Do you now wish to change your

14   plea, "yes" or "no"?

15             MR. OUELLETTE:  Yes.

16             THE CLERK:  How do you now plead to Count 1,

17   guilty or not guilty?

18             MR. OUELLETTE:  Guilty.

19             THE CLERK:  Mr. Panaggio, you have previously

20   pled not guilty to a one-count indictment charging you

21   with conspiracy to possess with intent to distribute and

22   to distribute oxycodone in violation of Title 21, United

23   States Code Section 846.  Do you now wish to change your

24   plea, "yes" or "no"?

25             MR. PANAGGIO:  Yes.

```
1              THE CLERK:  How do you now plead to Count 1,
2    guilty or not guilty?
3              MR. PANAGGIO:  Guilty.
4              THE COURT:  All right.  I propose sentencing
5    for Mr. Ehwa on the 9th of July at 2:00 p.m.
6         Is that satisfactory?
7              MR. KORMAN:  I apologize, your Honor, I'm
8    actually out of the state for the first two weeks in
9    July.
10             THE COURT:  No apology necessary.  We'll pick
11   another date.
12             THE CLERK:  Hang on.  July 24th?
13             MR. KORMAN:  Sure.
14             THE COURT:  The government?
15             MR. YOON:  Yes, your Honor.  Thank you.
16             THE COURT:  At 2:00 p.m.
17        For Mr. McGuire I propose July 10th at 2:00 p.m.
18             MR. PARKER:  Could I have the week of July
19   21st, your Honor?
20             THE COURT:  The Clerk will assign a date.
21             THE CLERK:  Wednesday, July 23rd.
22             THE COURT:  Is that all right, Mr. Yoon?
23             MR. YOON:  Yes, your Honor.  Thank you.
24             THE COURT:  Very well.
25        Mr. Assencoa I propose to sentence on July 14th at
```

1    2:00 p.m.

2              MR. BUDREAU:  Your Honor -- um, that's fine,

3    your Honor.

4              THE COURT:  The government?

5              MR. YOON:  Yes, your Honor.  Thank you.

6              THE COURT:  All right.

7         Mr. Cotter I propose to sentence on July 15th at

8    2:00 p.m.

9              MR. SCULLY:  That works for the defendant,

10   your Honor.

11             THE COURT:  Thank you.

12             MR. YOON:  Thank you, your Honor.

13             THE COURT:  I propose to sentence

14   Mr. Ouellette on July 23rd at 2:00 p.m.

15             MR. DOMBROWSKI:  That's fine, your Honor.

16             MR. YOON:  Yes, your Honor, thank you.

17             THE COURT:  And Mr. Panaggio on that same time

18   and place, July 23rd at 2:00 p.m.

19             MR. McBRIDE:  That works well, thank you, your

20   Honor.

21             THE COURT:  Very well.

22        Mr. Yoon, do you suggest that there are

23   extraordinary circumstances with respect to any of these

24   individuals?

25             MR. YOON:  Yes, your Honor, with regard to

1    Mr. Ouellette and Mr. Panaggio, the government would

2    suggest that.  But with regard to the other defendants,

3    your Honor, the government would not have any objection

4    should the Court not actually enter the pleas, um, given

5    the recommendations of pretrial in these cases, with

6    Mr. Ehwa, Mr. McGuire, Mr. Assencoa and Mr. Cotter.

7                (Pause.)

8                THE COURT:  I understand that.

9                MR. YOON:  Yes.  Thank you.

10               THE COURT:  I understand that.

11               (Pause.)

12               THE COURT:  All right.  I'm going to accept

13   that and all of these individuals will remain on the

14   same terms of release pending sentencing, and I will

15   formally accept the pleas of Mr. Ehwa, Mr. McGuire,

16   Mr. Assencoa, and Mr. Cotter, at the time of sentencing.

17        Now, since they'll remain at liberty, counsel will

18   you go now, with them, to probation, tell them of this

19   changed circumstance, so that they may start a

20   presentence report.  And again I'll take a brief recess

21   and we'll set up for the remainder of the hearing.

22   We'll recess.

23               (Recess, 11:40 a.m.)

24               (Resumed, 11:50 a.m.)

25               THE CLERK:  Now hearing Criminal Matter

1    13-10164, the United States of America versus Michael

2    Bourque, Mr. Hagenaars, and Mr. Newton.

3                THE COURT:  Good morning.  Would counsel

4    identify themselves.

5                MR. GALLAGHER:  Good morning, your Honor.

6    Neil Gallagher and Michael Yoon for the United States.

7                MR. YOON:  Good morning, your Honor.

8                MR. CONNOLLY:  Good morning, your Honor.

9    Attorney Bill Connolly for defendant Michael Bourque.

10               MR. SWOMLEY:  Good morning, your Honor.  John

11   Swomley for Mr. Hagenaars.

12               MR. APFEL:  Good morning, your Honor.  David

13   Apfel with Robyn Schwartz from my office on behalf of

14   Mark Newton, who is seated at counsel table.

15               THE COURT:  Thank you.

16         All right.  Mr. Bourque, when we left matters at

17   the last hearing, I had said that you had every right to

18   represent yourself and Mr. Connolly would be standby

19   counsel.  The way I'm going to proceed is to treat you

20   exactly as I treat the other two folks who are accused,

21   and that is, to call on Mr. Connolly and let

22   Mr. Connolly make arguments and question witnesses and

23   the like.  If at any time, you want to do that yourself,

24   I will let you, and at that time I will explain to the

25   jury that you have the right to represent yourself and

1   you're exercising that right.  Is that satisfactory to

2   you?

3          MR. BOURQUE:  Yes, your Honor.

4          THE COURT:  All right.  Now, I have some

5   matters that I ought to take care of ahead of time and

6   the first is this.  Mr. Connolly, acting on your behalf,

7   made a motion that he doesn't want the amounts, the drug

8   amounts mentioned in this trial, and I can see a reason

9   for that in your case.  But we need then to figure out

10  how that is going to be determined.  And, Mr. Connolly,

11  you know my practice, it is -- I'm not giving him a

12  separate jury trial on that, so is that to be tried to

13  me on evidence beyond a reasonable doubt or is it to be

14  handled, if there is a guilty finding, at the time of

15  sentencing upon representations of counsel and

16  Mr. Burke?  How do you want to do it?

17         MR. CONNOLLY:  I understood the first part.  I

18  didn't understand the second part.  It's our intention

19  to have the issues -- if in fact your Honor is inclined

20  to put the issues to the jury, we're going to try the

21  charge itself, the conspiracy, to the jury and also drug

22  weight and sentencing enhancements to the same jury.

23         THE COURT:  Well, but then they're all part of

24  the same trial.  I'm not having a bifurcated trial.  If

25  that's what you're asking for, which is your right,

1     we're having a trial and I'll deny this motion.

2               MR. CONNOLLY:  I just want to make sure I

3     understand the Court's procedure.  My understanding is

4     that this Court gives a defendant the right to have a

5     jury determine drug weight and sentencing enhancements

6     beyond a reasonable doubt.

7               THE COURT:  Exactly correct.

8               MR. CONNOLLY:  Okay.  And what I'm not sure is

9     if Mr. Bourque goes to trial on the conspiracy charge?

10              THE COURT:  Let me see if I can answer it.

11    It's a general verdict and this is true for each of the

12    folks going to trial, it's a general verdict, not

13    guilty, guilty, and the jury will be instructed, if

14    guilty, how much, in terms of reasonable attribution,

15    which I will charge them, and I will tell them they

16    never reach that unless they find him guilty.  But if

17    they reach that, how much or what are the ranges based

18    upon what we've heard at trial, but it has to be on

19    evidence beyond a reasonable doubt.  The jury then tells

20    me or doesn't tell me and I use that in sentencing.

21              MR. CONNOLLY:  Okay.

22              THE COURT:  And you're satisfied with that?

23              MR. CONNOLLY:  I am and that's how we'll

24    proceed.  So the basis of the motion is based upon my

25    understanding of this Court's view on what sets the

1    defendant's maximum penalty, it is not based upon what

2    Congress states in the statutes, it's what the penalty

3    actually this defendant is exposed to potentially will

4    be.  And based upon that, I don't know if you still

5    adhere to your ruling in *Green*, but it's my

6    understanding that --

7              THE COURT:  Well, let me respond, because I

8    think I can answer, but then I want you to --

9         Each of these individuals, the way I read the

10   Constitution, is -- it's a statutory maximum, but

11   Congress has this quasi-determinant sentencing

12   guidelines.  Constitutionally the heaviest sentence I

13   could impose is the top of the applicable guideline,

14   which in this case involves drug weight, and it may be

15   there because I'm going to ask them, they're going to

16   say he's an organizer, leader or something like that,

17   I'll make them prove that and we'll see what the jury

18   says about that after a general verdict.  But it's one

19   jury, it's not a bifurcated trial.

20        So once I have that verdict slip, then the top of

21   the applicable guideline constitutionally is the highest

22   sentence I could impose notwithstanding the statutory

23   maximum.  And the reason is, to go higher than that

24   would be unguided discretion, which of course Congress

25   frowns on.  Why would I do it since the sentencing

1    guidelines gives me the appropriate criteria?

2         Now, I do think I have every right to go down for

3    mitigating factors, but the top is the top of the

4    applicable guideline as established either by admissions

5    on a plea or by jury findings.

6              MR. CONNOLLY:  Understood.  Understood.

7              THE COURT:  Now go ahead.

8              MR. CONNOLLY:  That's consistent with what my

9    understanding was of the Court's position.  My argument

10   to the Court is that if you set the maximum based upon

11   drug weight and other enhancements proved to a jury

12   beyond a reasonable doubt, then Mr. Bourque's sentence,

13   his maximum penalty is being increased by the drug

14   weight and by the other sentencing enhancements.

15   Therefore, each of those factors becomes an element of

16   the crime pursuant to *Apprendi*, and also consistent with

17   your decision in *Green,* and if that is the case,

18   consistent with the language in the Supreme Court's case

19   in *O'Brien*, those facts, because they raised the

20   sentence, have to be pled in the indictment before

21   they're proven to a jury.

22             THE COURT:  I understand the argument, I

23   reject it, and your rights are saved.  It is an

24   intriguing argument, but I reject it.

25        All right.  So one more thing then and I'll call

1    for the jury.  I want -- under *Padilla*, I want in each

2    case the government to state in open court what it's

3    offering as a plea, if it's offering anything, so that

4    the defense and the defendants hear it.  Does anyone

5    object to my doing that?  These people are innocent,

6    they're getting a trial, but under *Padilla*, I want to be

7    sure that they know everything.

8         I hear no objection.  So, Mr. Yoon, what are you

9    offering Mr. Burke if he pleads?

10             MR. YOON:  Yes, your Honor.  Could I just have

11   one moment, your Honor?

12             (Pause.)

13             MR. YOON:  Your Honor, previously for

14   Mr. Bourque the government had tendered a plea agreement

15   to counsel, um, and in that -- your Honor, in that the

16   government had agreed to a pill weight of I believe

17   greater than 15,000 pills, but less than 49,000 pills,

18   your Honor.  That was the offer that was made.  In

19   addition to that, your Honor, the enhancements, um, the

20   enhancement the government would have sought would have

21   been the leadership status for Mr. Bourque.  So a plea

22   to that and the bottom resulting guideline range was the

23   plea offer for Mr. Bourque.

24             THE COURT:  And what is it?

25             MR. YOON:  One moment, your Honor.

```
 1                THE COURT:  And just so we're clear now, we're
 2      trying the case, as to him, you're seeking an
 3      enhancement for pill weight and a leadership role?
 4                MR. YOON:  That's correct, your Honor.
 5                THE COURT:  Thank you.
 6                (Pause.)
 7                MR. YOON:  Your Honor, the range that the
 8      government was offering, um, with acceptance pursuant to
 9      the plea agreement would have been 168 months to 210
10      months.  That would be for Mr. Bourque.
11                THE COURT:  And what was going to be your
12      recommendation?
13                MR. YOON:  The low end of that guideline, your
14      Honor.
15                THE COURT:  The low end of that guideline.
16                MR. YOON:  Yes, your Honor, 168 months.
17                THE COURT:  Mr. Bourque, you're starting this
18      trial absolutely innocent, but has that information been
19      conveyed to you?  That's all I'm asking.
20                MR. BOURQUE:  Yes, your Honor.
21                THE COURT:  You understand it, fine.
22                All right.  As to Mr. Hagenaars.
23                MR. YOON:  Yes, sir, a plea agreement was
24      tendered and in that the base level was going to be 26,
25      your Honor, between 498 pills and less than 1,990 pills,
```

1    and with acceptance the range would have been 46 to 57

2    months and the offer would have been 46 months.

3              THE COURT:  No objection if I ask your client

4    that he has received that information?

5              MR. SWOMLEY:  No objection, your Honor.

6              THE COURT:  Have you received that

7    information, Mr. Hagenaars?

8              MR. HAGENAARS:  Yes, your Honor.

9              THE COURT:  Thank you.

10        Now, as to Mr. Nelson.

11             MR. YOON:  For Mr. Newton, your Honor.

12             THE COURT:  Newton, rather.  I'm sorry.

13             MR. YOON:  Yes, a plea agreement was tendered,

14   um, and the base level would be 26, with acceptance the

15   range would have been 46 to 57 months, the government

16   would have asked for the low end of the guidelines at 46

17   months.

18             THE COURT:  No objection if I ask Mr. Newton

19   that, Mr. Apfel, that he has the information?

20             MR. APFEL:  No objection, your Honor, except

21   that the information he had was lower than 46 to 57

22   months.

23             MR. YOON:  Your Honor, with the amendment,

24   your Honor, there may have been a reduction in the

25   sentencing, um, recommendation for Mr. Hagenaars and

1  Mr. Newton and I believe -- and the actual offer would

2  have been a range of 30 to 37 months and the offer would

3  have been at the low end of 30 months, I believe.

4          THE COURT:  For both of them?

5          MR. YOON:  Yes, your Honor.

6          THE COURT:  Well, while we're sticking with

7  Mr. Newton, may I ask him if that's how he understands

8  it?

9          MR. APFEL:  You may, your Honor.

10          THE COURT:  Is that how you understand it,

11  Mr. Newton?

12          MR. NEWTON:  Yes, your Honor.

13          THE COURT:  Mr. Hagenaars?

14          MR. SWOMLEY:  He has never been offered 37

15  months.  Never.  This is news to me and he might have

16  taken it.  And if that's an offer, then I would be

17  interested in discussing it with my client.  But I've

18  never been given that offer.

19          THE COURT:  Just so we're clear, as to

20  Mr. Hagenaars, what is it?

21          MR. YOON:  Your Honor, the plea agreement was

22  -- a draft agreement was tendered to counsel.

23          THE COURT:  No, no, just tell me what it is.

24          MR. YOON:  30 months, your Honor.

25          THE COURT:  30 months.  All right.  He says he

1    may be interested in that.

2           MR. SWOMLEY:  I'd like to take my client in

3    the back and talk about it.

4           THE COURT:  Is he in custody?  He's not.  I'll

5    give you 5 minutes.

6           (Mr. Swomley and client leave.)

7           THE COURT:  Now, I see no reason to sever

8    these based upon how it's coming out and the motion in

9    limine, um, now as to Mr. Burke, the motion in limine to

10   preclude evidence relevant to drug weight, that's denied

11   in view of our discussion.  Mr. Burke's motion in limine

12   to exclude evidence of a controlled buy, that's denied.

13       How long is this case going to take, Mr. Yoon?

14   And I'm not holding you to it.  But I need to know.

15           MR. GALLAGHER:  Your Honor, I'm answering that

16   question because I've been sort of organizing it.

17           THE COURT:  Of course, Mr. Gallagher.

18           MR. GALLAGHER:  I anticipate, your Honor,

19   given that Monday is a holiday, that we probably won't

20   finish the government's evidence by Tuesday.  That may

21   be, um, amended because of the absence of Mr. Hagenaars,

22   but I would say that there's a good chance we will spill

23   over to the following Tuesday.  So I would say on

24   Tuesday of next week we'll finish the government's

25   evidence.

```
1              THE COURT:  All right.  So you know my
2     schedule.  I'm not going to sit until -- I'm going to
3     sit Tuesday and Wednesday.  If we don't get it done
4     Wednesday, I'm going to be out of court Thursday and
5     Friday and Monday and Tuesday.  It's not a problem, but
6     I will tell the jury.
7          Mr. Swomley?
8              MR. SWOMLEY:  Mr. Hagenaars would like to
9     change his plea.
10             THE COURT:  He may come forward to be inquired
11    of.
12             (MR. HAGENAARS, sworn.)
13             MR. YOON:  Your Honor, may we just have one
14    moment?  I just want to ensure that I have time to speak
15    with Mr. Gallagher fully.
16             THE COURT:  Go ahead and talk with him.  I'll
17    talk with Mr. Hagenaars.
18         Please be seated, sir.
19             MR. GALLAGHER:  Your Honor, I apologize.
20         So the difference is -- I think the
21    misunderstanding is that 30 months is with the safety
22    valve, and so that is not the recommendation that we
23    made, if the safety valve proffer is complied with.
24             THE COURT:  So you'll go 30 months, if he
25    meets the safety valve, otherwise it's 37 months is your
```

```
1    recommendation.
2              MR. YOON:  Yes.
3              MR. GALLAGHER:  Yes, your Honor.
4              THE COURT:  I can explain that to him.
5         Does he still want to go forward?
6              MR. SWOMLEY:  I don't believe he's eligible
7    for the safety valve and I think that was clear from the
8    beginning.  I don't --
9              THE COURT:  Then they say it's 37 months.  And
10   does he want to plea or not?
11             MR. SWOMLEY:  Your Honor, it's still lower
12   than anything that we've discussed, but I have yet to
13   discuss that.  I mean when I went back there I was
14   saying 30 months and he was saying, "Yes, I'll take 30
15   months."  It's the lowest he'd been offered.  And I'm
16   sorry that this is rather piecemeal.
17             THE COURT:  No, no, you take a moment and
18   discuss it.
19             MR. SWOMLEY:  Right here?
20             THE COURT:  Absolutely, but privately.
21             (Judge steps down from the bench.)
22             (Discussion off the record.)
23             MR. SWOMLEY:  He'll take 37 months, your
24   Honor.
25             MR. GALLAGHER:  Your Honor, I profoundly
```

1    apologize, but I think there is a misunderstanding and

2    the problem is -- is with the criminal history, that the

3    criminal history -- counsel believes he has four

4    criminal history points, which will take him to Category

5    3, which would not be 37 to 46 months, but 46 to 57

6    months.

7            THE COURT:  Well, look, um, that's not what

8    you said and you're not to be trapped into saying

9    something, but these are things you should know.  And

10   when I ask, especially on the eve of trial, I imagine

11   that you have researched that all out.

12       Now, you're telling me now that based upon what

13   you think you're going to recommend what, 46?  Is that

14   what you said?

15           MR. GALLAGHER:  Yes, your Honor, that was --

16   it was in the plea agreement dated April 1st and the

17   unknown here, which counsel believes is the criminal

18   history, will prevent safety valve and would change the

19   criminal history category to 1 -- to level 3.

20           THE COURT:  Well, no one is going to be

21   trapped here.  I mean they've now moved the markers

22   twice.  I -- a plea's got to be voluntary and I'm only

23   going to explain it based upon what they say and it

24   sounds to me like this is a trial and we'll see where we

25   come out.

1           MR. SWOMLEY:  There is something very unfair

2    about being told one thing, right, when he's sitting on

3    the hot seat and we're prepared to go to trial --

4           THE COURT:  Mr. Swomley, I'm sitting here,

5    too, you know.  I'm sitting here, too.  I have the

6    responsibility of presiding over this.  I'm not going to

7    trap the government into saying something.  But there's

8    no mandatory minimums here.  I'm going to be the

9    sentencing judge.  This is a straight-up plea.  I don't

10   bargain with anyone.  I'm going to explain things based

11   upon the figures that they give me.  You can argue

12   against it and you can argue the proceedings here as

13   well.  Beyond that, there's nothing I can say.  You tell

14   me what he wants to do.

15          MR. SWOMLEY:  Can I understand what you meant

16   just then, your Honor, by you're -- I know you're the

17   sentencing judge, I know that you're the judge who just

18   witnessed what I would consider to be something that my

19   client should not have had to subject himself to, absent

20   the government's good faith representations.  When he

21   hears something in open court, he's changing his mind

22   and he's doing that openly here and --

23          THE COURT:  And I will do the explanations and

24   I'm not engaging in bargaining.  I'm ready to go to

25   trial and I'll call for the jury, unless he wants to

```
 1   plea.  You tell me.
 2              (Pause.)
 3              MR. SWOMLEY:  I guess I need to talk with him
 4   further, your Honor.  But my understanding is that I'm
 5   now back to what number are we talking?
 6              THE COURT:  46 is what I heard.
 7              MR. SWOMLEY:  Well, you want to talk about it
 8   some more?
 9              THE COURT:  Well, the most we can do is --
10   look, you'll have time to talk to him, but let's send
11   for the jury and we'll see where we are.
12              MR. SWOMLEY:  Thank you.
13              MR. APFEL:  Your Honor, before we call for the
14   jury, several quick matters.  One, I want to just
15   understand the upshot of the conversation we had with
16   Mr. Connolly.
17         Will you be sending the special verdict form to
18   the jury?
19              THE COURT:  I wouldn't call it a "special
20   verdict" -- the verdict form will, as to each
21   individual, say "not guilty," "guilty," separately, then
22   as to each individual, separately, two subquestions as
23   to Mr. Bourque, "Leadership role in the language of the
24   guidelines?"  "No."  "Yes."  "How much?"  "The Range?"
25   It's like the lesser included in the state courts.  I'll
```

1    listen to the evidence and the ranges that a jury could

2    find will be put to the jury.  And I will tell them that

3    if they can determine, fine, and if they can't, also

4    fine, beyond a reasonable doubt.  Separately.  So two

5    subparts as to him, one subpart as to your client and

6    Mr. Hagenaars.

7              MR. APFEL:  Just on the number of pills, the

8    quantity.

9              THE COURT:  Right, the drug quantity.

10             MR. APFEL:  All right.

11        And then briefly, your Honor, on the motion to

12   sever.  Obviously you understood that the --

13             THE COURT:  Well, let me just --

14        Are they here?

15             (Pause.)

16             THE COURT:  Yes, very briefly.

17             MR. APFEL:  Um, things have changed a bit

18   because Mr. Bourque is not pleading guilty to the

19   underlying conspiracy, but there's still the prejudicial

20   spillover argument.

21             THE COURT:  Yeah.  Denied.

22             MR. APFEL:  And there is another argument that

23   I would like to be heard at sidebar out of the presence

24   of the government.

25             THE COURT:  Well, I'm not hearing anything out

```
 1   of the presence the government.  So that's that.
 2             MR. APFEL:  It involves an issue of strategy
 3   that I don't think the government is entitled to hear.
 4             THE COURT:  And I don't give advice.  So we'll
 5   bring in the jury.
 6             MR. APFEL:  It would be advising your Honor as
 7   to something that may come up at trial that will result
 8   in prejudice to Mr. Newton and to Mr. Hagenaars.
 9             THE COURT:  Well, I'll have to deal with it as
10   it comes up in trial.  I don't give ex parte
11   conferences.
12             MR. APFEL:  If I could then have one moment
13   then to speak to Mr. Connolly?
14             THE COURT:  You may as the jury is coming in.
15        Bring in the jury.
16             MR. GALLAGHER:  Your Honor, I don't need to
17   speak now, but I have two points I'd like to ask the
18   Court after the jury is excused, just for tomorrow
19   morning.
20             THE COURT:  Fine.  We're starting at 10:00
21   tomorrow in view of the religious holiday, just so you
22   know.
23             MR. GALLAGHER:  Okay, thank you, your Honor.
24   Thank you.
25             (Pause.)
```

1          MR. APFEL:  Your Honor, I'm prepared to

2     explain the argument in open court in the presence of

3     the government.

4          THE COURT:  Well, then that's fine but let's

5     bring in the jury and we'll do it at the sidebar.

6          You just assume do it out of the hearing of the

7     jury?

8          MR. APFEL:  Yes, your Honor, and you would

9     want me to do it out of the hearing of the jury.

10          THE COURT:  Come up to the sidebar.

11

12          AT THE SIDEBAR

13          MR. APFEL:  Mr. Newton obviously is not

14     pleading to the conspiracy before trial, but

15     Mr. Connolly has informed us that at some point during

16     the trial, and he's not sure when, he may concede as a

17     matter of strategy that Mr. Chisholm was involved in the

18     first charged conspiracy while at the same time

19     Mr. Bourque would not be taking the stand to testify.

20     And that would really leave me --

21          THE COURT:  All right.  Well, I don't see how

22     he can concede it if he doesn't take the stand.  He

23     would argue it.

24          MR. APFEL:  He could concede it in argument

25     and make it clear to the jury that Mr. Bourque is

1    admitting --

2              THE COURT:  I can take care of that with

3    cautionary instructions.  It seems to me I can do that.

4              MR. APFEL:  I don't think it's susceptible to

5    cautionary instructions and I would ask that my

6    objection be saved.

7              MR. SWOMLEY:  And I would like to join in

8    that.

9              THE COURT:  A couple of things in a multi

10   defendant case.  First of all, the objection of one is

11   the objections of all.  You can decide on which of you

12   is to tell me.  So your rights are saved, so long as

13   anybody objects.  Second, we will interrogate witnesses

14   in the order that they appear in the indictment.

15        So, Mr. Connolly, of course, Mr. Swomley,

16   Mr. Apfel, but if you're willing to cooperate, you can

17   change that, just slip me a piece of paper that says

18   that on it, otherwise I will follow the order of the

19   indictment and then the order of the examination would

20   be Mr. Connolly, Mr. Swomley, Mr. Apfel, then the

21   government, not the government sandwiched in between.

22   Okay?

23             MR. APFEL:  Your Honor, several other

24   housekeeping matters, as the jury is coming in,

25   substantive housekeeping matters.  One is I filed a

1    while back an ex parte motion, which I'm happy to

2    discuss with the government as well, your Honor, a

3    motion for funds in order to retain an expert on the

4    issue of the street value of drugs and code terms.

5            THE COURT:  I'm very skeptical of either of

6    them putting on such an expert or you putting on such an

7    expert, but I'm willing to look at it.

8            MR. APFEL:  I mean I just feel somewhat

9    hamstrung because we don't have that expert.

10           THE COURT:  I will have done it today.

11           MR. APFEL:  And in light of the evidence that

12   the government is offering by way of its exhibit list

13   and its witness list, it appears as if they intend to

14   put on evidence, albeit perhaps not through an expert,

15   or not someone called an "expert," of codes --

16           THE COURT:  Unless they have someone that they

17   flipped in this conspiracy, outside experts on codes,

18   I'm absolutely -- well I don't give advisory opinions.

19           MR. SWOMLEY:  Can I know that at least when

20   this jury is sworn I can talk to my client?

21           THE COURT:  That's what I intend.  Given the

22   hour, I'm simply going to pick up, I will tomorrow at

23   10:00.  That's how I plan it.

24           MR. APFEL:  How many jurors are we going to

25   seat?

```
 1                  THE COURT:  14.

 2                  MR. APFEL:  We'll have --

 3                  THE COURT:  You'll have the aggregate, yes.

 4                  MR. APFEL:  And with the aggregate, we have to

 5      share?

 6                  THE COURT:  That's right.

 7                  MR. GALLAGHER:  No backstriking, your Honor?

 8                  THE COURT:  No backstriking.

 9                  MR. GALLAGHER:  Let the record reflect too

10      that the courtroom is open and the jurors are coming in

11      in and the public as well.

12                  THE COURT:  And you're right, it's open as we

13      speak and it better doggone well stay open.

14                  MR. APFEL:  Your Honor, voir dire questions.

15      I know Mr. Connolly submitted voir dire questions.

16                  THE COURT:  You'll hear what I ask and you may

17      make objections at the appropriate time.

18                  MR. APFEL:  Okay.

19

20                  (In open court.)

21                  THE COURT:  Call the case.

22                  (Jury venire present.)

23                  THE CLERK:  Now hearing Criminal Matter

24      13-10164, the United States of America versus Bourque,

25      Hagenaars, and Newton.
```

1            THE COURT:  Good morning, ladies and

2    gentlemen.  My name is William Young, I'm the judge who

3    presides in this session of the court.  You're summonsed

4    here potentially to be chosen as jurors in a particular

5    case, this particular case is a so-called criminal case,

6    and that's the type of case where the government makes

7    charges against particular individuals.

8            Now, in this case you will understand that each of

9    the three individuals whom the government has charged,

10   they are innocent.  They are innocent men.  They could

11   only be found guilty if the jury that we pick here today

12   comes to believe that the government has proved to the

13   jury unanimously, beyond a reasonable doubt, that the

14   particular individual or individuals are guilty.

15           So what we're going to do now, we'll have you

16   stand and Ms. Gaudet will administer an oath to you.

17   The oath is simply to answer my questions honestly.  So

18   I'm going to introduce these folks, I'm going to tell

19   you at least what the charge is, it's one charge against

20   all three, and I'm going to ask you some logical

21   questions designed to see whether it's appropriate that

22   you sit as a juror in this particular case.

23           Now, if you would answer any of my questions

24   "yes," if you think your answer would be "yes," maybe

25   it's "yes," perhaps it's "yes," it could be "yes," I

 1    want you to raise your hand.  And Ms. Gaudet and I are

 2    watching to see who raises their hands.  And when I'm

 3    done asking the questions, we'll have everyone who

 4    raised their hands line up in that aisle there.  And

 5    then we'll have you come up, one by one, and I will ask

 6    you some other questions -- the lawyers will come up so

 7    they can hear, to see again whether it's appropriate

 8    that you sit as a juror on this particular case.

 9         Now, suppose I excuse you.  I don't want you

10    thinking that we don't think you can be a good juror,

11    it's just for whatever appropriate legal reason it's

12    best that you not serve as a juror on this particular

13    case.  Now, you're not going anywhere, if that happens,

14    you'll go back downstairs.  We'll send you out on

15    another case.  We have plenty.

16         So when that's done -- when that's done, then we

17    will fill the box with -- well, not the entire box, but

18    we'll pick enough of you and tell you where to sit and

19    we'll do it in random order from the jury list and then

20    individually I will ask each one of you just to tell us

21    where you work, in a very few words, you don't have to

22    stand up, you don't have to introduce yourself, of

23    course we call you by name, um, where you work, what do

24    you do there, and if you're married, would you tell us

25    what your spouse does and where he or she works.

1        When that's done I come over here and I talk with

2    the lawyers some more and some more of you may be

3    excused.  Again don't think that the lawyers don't like

4    you or don't think that you'd be any good, this just

5    shows you how meticulously careful we are in picking the

6    particular jury who, after all, are going to be the

7    judges of the facts in this case.

8        So with that in mind the Clerk may swear the

9    venire.

10               (JURY VENIRE, sworn.)

11               THE CLERK:  Can you please stand, raise your

12    right hand and repeat after me saying your own name

13    after the pronoun "I."

14               (Oath repeated by venire.)

15               THE CLERK:  I, do solemnly swear, to answer

16    truthfully questions put to me concerning my

17    qualifications to sit as a juror in this case.

18        You may be seated.

19               (Pause.)

20               THE COURT:  Now, as I said, this is a

21    so-called "criminal case" and that means that this is a

22    case where the government has brought a criminal charge,

23    in this case, against three particular individuals.

24    Again, those individuals are innocent.  You don't hold

25    it against them that they're here in the courtroom, you

1   don't hold it against them that there's going to be a

2   trial, they are innocent.  Only a jury will decide

3   whether they are not guilty or guilty.  But as we meet

4   today, they are innocent men.  They don't have to do

5   anything, they don't have to explain themselves, the

6   government made this charge, the government has to prove

7   this charge beyond a reasonable doubt.  And you take

8   each one of the three separately, you consider each one

9   of the three separately.

10        So let me introduce to you the people who will

11  represent the government and they are Assistant United

12  States Attorneys, Michael I. Yoon and Neil J. Gallagher,

13  who are now standing and facing you.  Thank you.

14        The first of the individuals who the government

15  complains of -- well, let me tell you what the charge

16  is.  The charge is conspiracy to possess with intent to

17  distribute oxycodone.  Oxycodone is a contraband

18  substance and the public is not entitled to have any of

19  it.  The government has made this single charge of

20  conspiracy, but they've made the charge against all

21  three.  And so I want to introduce to you the people who

22  are accused, they are innocent as we start the trial.

23  And we'll start with Mr. Michael Bourque, if you'll

24  stand and face the jury, with his attorney, Mr. William

25  Connolly.

1           MR. CONNOLLY:  Good afternoon.

2           THE COURT:  All right.  And at that table is

3    Mr. Robert Hagenaars with his attorney, John Swomley.

4           MR. SWOMLEY:  Good afternoon.

5           THE COURT:  And at -- and, let's see.  At this

6    table is Mr. Mark Newton with his attorneys, David Apfel

7    -- and, Mr. Apfel, forgive me, ma'am, I didn't get your

8    name and that's my fault.

9           MR. APFEL:  Robyn Schwartz, your Honor.

10          THE COURT:  Ms. Robyn Schwartz, are his

11   attorneys.

12       All right.  Thank you.

13          MR. APFEL:  Good afternoon.

14          THE COURT:  Now, you've heard the charge.  Let

15   me ask you first then, do you know any of these people?

16   Are you related to these people in any way?  Anyone?

17          (Silence.)

18          THE COURT:  The charge you've heard.  Have any

19   of you heard anything about this case?  I don't know

20   that there's really been anything in the paper, but --

21   well, on any media.

22       Have you heard anything at all about this case

23   from any source whatsoever?  Anyone come in here having

24   heard anything about the case?

25          (Silence.)

1              THE COURT:  Now, because we've been doing the

2    necessary legal work, you've been kept downstairs there

3    for a while.  Has there been any scuttlebutt, any talk

4    about this case?  Has anyone -- now that I've mentioned

5    the names of the lawyers and the people who are charged,

6    has anyone said anything to you about this case in any

7    way, shape or form?

8              (Silence.)

9              THE COURT:  Let me read to you the people who

10   may be witnesses in this case.  I do not say that they

11   will all be witnesses.  But these are the people who may

12   be called.

13       Jason Sutherland.  Mr. Sutherland is with the

14   Natick Police Department.  Christopher Yancey, who lives

15   in Natick, Massachusetts.  John Connors -- I'm sorry,

16   Joseph Connors, he's with the Waltham Police Department.

17   Barry Stewart, who's employed by Jet Comm Systems of --

18   which is in Ottawa, Canada.  Alexis Eon, who works for

19   Verizon.  Raymond McDonald, who works for T-Mobile.

20   Matthew Gutwill, who works for the Framingham Police

21   Department.  Raymond Panaggio of Newton, Massachusetts.

22   Domenic J. Tiberi of the Millis Police Department.

23   Richard T. Manning of the Waltham Police Department.

24   David Robinson of the Newton Police Department.  Michael

25   O'Shaughnessey, who works for the Drug Enforcement

1    Administration, a federal agency.  Jeff DeRosa of the

2    Framingham Police Department.  James Lewis of the

3    Framingham Police Department.  Brian Curtis of the

4    Framingham Police Department.  Leonard Pini of the

5    Framingham Police Department.  Kevin J. Delahanti of the

6    Natick Police Department.  Brian Bosselman of the Natick

7    Police Department.  Kevin Slattery of the Framingham

8    Police Department.  And Michelle G. Camilary, who works

9    for the Drug Enforcement Administration.

10         Do any of you or any member of your family, so far

11   you are aware, are you related to or acquainted with any

12   of those individuals?

13            (Silence.)

14            THE COURT:  Now, a number of them -- well,

15   let's start with the lawyers and the litigants first.

16         Have any of you ever been employed in any capacity

17   or has any member of your family ever been employed by

18   the United States Attorney's Office, where the two

19   prosecutors work, employed by, um, Mr. Gallagher or

20   Mr. Yoon individually or as their attorneys, employed by

21   Mr. Bourque or his attorney, Mr. Connolly, employed by

22   Mr. Hagenaars or Mr. Swomley, his attorney, have you

23   ever been employed by Mr. Newton or his attorneys,

24   Mr. Apfel, Ms. Schwartz, or the law firm of which

25   they're a part, the attorneys, Wilmer Hale here in

```
1    Boston, ever been employed --
2                 MR. APFEL:  The firm is Goodwin Procter, your
3    Honor.
4                 THE COURT:  I'm sorry.  And so it is.  Forgive
5    me.  Forgive me.  An equally good firm.
6         The firm of Goodwin Procter here in Boston, anyone
7    ever been employed?
8                 (Silence.)
9                 THE COURT:  Though you may not have been
10   employed by it, have you or any member of your family
11   ever been involved in any litigation, any litigation,
12   whether you were a witness or whether you were a
13   partner, litigation brought by Mr. Yoon, Mr. Gallagher,
14   or brought by the U.S. Attorney's Office, brought -- I'm
15   not suggesting there was any, but brought by Mr. Bourque
16   or his attorney, Mr. Connolly, or if they were defending
17   such litigation, um, brought by Mr. Hagenaars,
18   Mr. Swomley, brought by Mr. Newton, the law firm of
19   Goodwin Procter, or Mr. Apfel or Ms. Schwartz, ever been
20   involved in any litigation or anybody in your family
21   involved in any litigation that involved anybody who is
22   involved in this case?
23                 (Silence.)
24                 THE COURT:  Now, because there's a bunch of
25   police officers here, law enforcement people, let me ask
```

1    you this.

2         Are you or have you or any member of your

3    immediate family, by which I mean mother, father,

4    husband, wife, brother, sister, son or daughter, that's

5    your immediate family, are they or are you or have they

6    ever in the past, ever been involved -- ever been

7    employed by any law enforcement agency at all, any

8    police department, state police, corrections officers,

9    prosecutors, or government, FBI, the Drug Enforcement

10   Administration which calls itself the DEA, any U.S.

11   Attorney's Office, anyone ever had someone so employed?

12              (People raise hands.)

13              THE COURT:  And I thank you.

14        All right.  Knowing what I have told you at least

15   about what the charge is, have any of you formed any

16   opinions now, now going in, as to whether any of the

17   three individuals accused are either not guilty or

18   guilty of the charges against them?

19              (Silence.)

20              THE COURT:  Are any of you sensible of any

21   bias or prejudice whatsoever?  And when I say are you

22   "sensible of it," I mean are you aware of any?

23              (Silence.)

24              THE COURT:  Do any of you -- and notice my

25   questions are getting broader now here.

1          Do any of you know any reason why you do not stand

2     indifferent in this case?  When I say "stand

3     indifferent," I'm trying to search out your feelings

4     either about this case or about cases of this sort.

5          Now, this is a so-called criminal case.  Under the

6     Constitution of the United States, and I've told it to

7     you, people who are caught up in this process, they

8     truly are innocent.  No one can be found guilty of

9     anything unless it's proved to a jury of the people that

10    in fact the person, taking each one individual, is

11    guilty and guilty beyond a reasonable doubt.  The person

12    accused doesn't have to do anything, doesn't have to say

13    anything, doesn't have to do anything, and that makes

14    sense because the government brought this charge, the

15    government's got to prove this charge beyond a

16    reasonable doubt.  They don't have to do anything.  And

17    if they don't, you do not hold it against them.

18         So when I ask this question, are you truly

19    indifferent, do you have feelings about these

20    constitutional rights that would in any way interfere

21    with your ability to be a juror here?

22              (Silence.)

23              THE COURT:  All right.  Let me ask you this.

24         Do you have feelings about our criminal justice

25    system that I ought know about?  This is a so-called

1    drug case, oxycodone is a contraband and people can't

2    have it, it's a drug case, and the alleged conspiracy

3    here is to possess with intent to distribute oxycodone.

4    So do you've got feelings about people who are accused

5    of a drug crime, feelings about the attorneys who

6    represent such people, feelings about prosecutors who

7    bring cases making such allegations, feelings about

8    judges, feelings about our criminal justice system that

9    I ought to know about going in?  Anyone?

10               (People raise hands.)

11               THE COURT:  Thank you.

12         Now here's how we plan this, I've got no

13   guarantees on this, and I can't in a criminal case

14   because in a criminal case, under the Constitution,

15   everybody gets a chance to put on all the evidence that

16   they may have.  So my questions, one of the things I was

17   asking while you were waiting, is how long is this going

18   to take?  And this is what we figure, but I cannot

19   guarantee it.

20         We think that this jury will sit this week.  We do

21   not sit on Monday -- it's not a federal holiday, but

22   it's Patriots Day and the Marathon is run in Boston and

23   the traffic is all snarled up, so we don't call jurors

24   in, we work, but we don't call you in.  So you get a

25   three-day weekend.  We sit on Tuesday.  We sit on

1   Wednesday, next week.  People think we'll be done by

2   Wednesday next week, but no guarantees.  If we're done

3   by Wednesday -- if we're not done by Wednesday next

4   week, because of my schedule, not theirs, then we go off

5   a week until the following Wednesday and then surely we

6   will finish up the following Wednesday which is the

7   Wednesday the 28th -- no, I'm in May.  Hold on a second

8   here.  Yeah, Wednesday will be the 30th, the 1st and 2nd

9   of May.  So we expect to sit in this case, starting at

10  10:00 a.m. tomorrow morning, but running until 1:00 in

11  the afternoon.  I let people go in the afternoon, the

12  lawyers can do their work, and I have other work to do.

13          So we'll sit tomorrow starting at 10:00, the 16th,

14  17th, the 18th, and then we will not sit on Monday,

15  we'll sit on Tuesday the 22nd, Wednesday the 23rd, we

16  may be done.  If we're not done, we'll come back on

17  Wednesday the 30th and finish up that week.

18          Now, I don't want to emphasize the schedule, but

19  you're entitled to know the schedule because we're aware

20  that we're imposing on your time though this is a vital

21  constitutional service.

22          So my last question is going to be, do any of you

23  know any important reason why you ought not be called to

24  sit as a juror in this case?

25          Now, before I ask it, I want you to think back

```
 1    over all the questions I have asked, the witnesses, the
 2    questions about standing indifferent and the like, and
 3    if you now think that you ought to answer "yes," please
 4    do.
 5          Do any of you know any important reason why you
 6    ought not be called to sit as a juror in this case?
 7                (People raise hands.)
 8          THE COURT:  Very well.  Would all the people
 9    who've raised their hand, for any reason, would you line
10    up in this aisle here and we'll inquire of you
11    individually.
12
13                AT THE SIDEBAR
14          THE COURT:  Mr. Apfel, forgive me.  I hold
15    Goodwin Procter in enormous high regard.
16          MR. APFEL:  I know, your Honor.
17          (First juror.)
18          THE COURT:  Your name, sir?
19          THE JUROR:  Gregory Sarni.
20          THE COURT:  Yes, Mr. Sarni.
21          THE JUROR:  I have a hardship placed on me.
22    My dad recently passed away and the house is being
23    sold.  So I have less than two weeks to get 60 years
24    worth of stuff out of there.
25          THE COURT:  Yes.  We'll excuse you in this
```

```
 1    case.  Actually you're deferred and then they will call
 2    you back within a year, so you can serve.  But we'll let
 3    you go now.  Take that back downstairs.
 4              THE CLERK:  That was Juror Number 20.
 5              MR. GALLAGHER:  Judge, could you ask the
 6    jurors by numbers?
 7              THE COURT:  What?
 8              MR. GALLAGHER:  Could I ask the Court to ask
 9    the jurors their numbers, so we know which jurors?
10              THE COURT:  They don't know their numbers.
11              (Next juror.)
12              THE COURT:  May I have your name, sir?
13              THE JUROR:  Mike Zucarelli.
14              THE COURT:  Yes, Mr. Zucarelli.
15              THE JUROR:  I work for the outdoor Y and part
16    of what I do is outreach, I work with the town committee
17    in Norton, I work with the police officers in getting
18    drugs and alcohol off the streets.
19              THE COURT:  Now -- and naturally that's why
20    Congress has criminalized certain activity having to do
21    with drugs.
22         Do you think that work that you've done affects
23    your ability to be fair and impartial with respect to
24    these three individuals who have been charged?
25              THE JUROR:  Probably not.  I wouldn't say 100
```

1    percent.

2              THE COURT:  100 percent what?

3              THE JUROR:  That I could be perfectly

4    impartial.

5              THE COURT:  Well, perfection is not required.

6    Let me put it to you this way.

7         Suppose you came to believe that there was a

8    reasonable doubt as to one or the other, but probably

9    they did it.  Would you find it difficult to argue with

10   your fellow jurors that there was a reasonable doubt and

11   therefore that person or persons should be acquitted and

12   walk out?

13             THE JUROR:  Yes, sir.

14             THE COURT:  So you think you could do that, if

15   that's what you believe?

16             THE JUROR:  Yes, sir.

17             THE COURT:  So I hear you saying that you

18   really do think you could be fair and impartial as

19   between the government and these three individuals?

20             THE JUROR:  Yes, sir.

21             THE COURT:  Thank you for telling us.  We'll

22   ask you to stay.

23             (Next juror.)

24             THE CLERK:  Juror Number 15.

25             MR. SWOMLEY:  Your Honor, can I make an

```
 1   objection for cause.
 2                THE COURT:  Yeah, now is the time.
 3                MR. SWOMLEY:  Then I do, your Honor.
 4                THE COURT:  Denied.
 5                (Next juror.)
 6                THE JUROR:  Hi.  Mary Norton.
 7                THE COURT:  Yes.
 8                THE JUROR:  My daughter's graduating college
 9   in North Carolina.  I need to be in North Carolina May
10   1st.  I'm driving April 30th.  And I told this to the
11   folks when I arrived.
12                THE COURT:  Yeah.  I know.  We'll let you go.
13                THE CLERK:  Her name, Judge?
14                THE JUROR:  Ms. Norton.  24.
15                THE COURT:  You're excused.  And wait a
16   minute, we need to give you your thing.
17        Enjoy your daughter's graduation.
18                THE JUROR:  Thank you.
19                THE COURT:  Okay.
20                (Next juror.)
21                THE COURT:  Your name, sir?
22                THE JUROR:  My name is Bill Ryle, your Honor.
23                THE COURT:  Yes, Mr. Ryle.
24                THE JUROR:  The reason for my coming is my
25   wife and I are both retired school teachers and we made
```

1    a reservation to go on vacation on April 30th, and I

2    don't know if -- it might -- well, you said it might go

3    to that time period.

4              THE COURT:  It might.

5         Are they nonrefundable?

6              THE JUROR:  Yes, sir, they are.

7         And the second thing is --

8              THE COURT:  Go on vacation.

9              THE JUROR:  Thank you very much.

10             (Next juror.)

11             THE CLERK:  Juror 28.

12             THE COURT:  Your name, sir?

13             THE JUROR:  Paul Kleinman.

14             THE COURT:  Yes, Mr. Kleinman.

15             THE JUROR:  I'm a physician, I work at

16   Children's Hospital, and I'm a consultant to the child

17   abuse team.  I'm regularly involved in the investigation

18   of child abuse cases, I regularly testify generally for

19   the prosecution.  I work with the medical examiner's

20   office.

21             THE COURT:  Okay.  Thank you for telling us.

22   It's just what we need to know.  But now I'm asking you

23   as an individual, this so-called "drug case," and of

24   course there's reasons for the drug laws, but the fact

25   these people are here doesn't amount to anything, they

1    really do start the trial absolutely innocent.

2         Do you think, given your involvement with the

3    process generally, that you can be fair to them and

4    equally fair to the government in this case?

5              THE JUROR:  I feel reasonably confident that I

6    can.

7              THE COURT:  Okay, and thank you for the

8    answer.  Let me test it this way.

9         Suppose -- because the test here is proof beyond a

10   reasonable doubt.

11        So suppose you independently come, as to one or

12   more of them, you've got a reasonable doubt.  Could you

13   -- could you argue for that reasonable doubt even if

14   probably they did it or the person did it?

15             THE JUROR:  Um, well, if I were going to think

16   about hypothetical situations where that might be an

17   issue, um, because my entire career has really been

18   focused on the area of child abuse and domestic

19   violence, if there were an element of that to the case,

20   then that might influence my thinking conceivably.

21             THE COURT:  There is none.  There is none.

22   And thank you for that.  So put it my way without adding

23   that in.

24        Can you really be fair to them or are you going to

25   be inclined for the government, because here the

1   government's brought a charge and here we all are, and

2   we're going to have a trial?

3          THE JUROR:  I can be reasonably certain of

4   that.

5          THE COURT:  Then I'll ask you to stay.  Thank

6   you.

7          (Juror leaves.)

8          MR. APFEL:  Challenge for cause.

9          THE COURT:  Noted, but denied.

10          THE CLERK:  Juror 15.

11          (Next juror.)

12          THE COURT:  Could I have your name, ma'am?

13          THE JUROR:  Christine Albernaz.

14          THE COURT:  Yes, Ms. Albernaz.

15          THE JUROR:  I have a significant other that is

16   currently in a rehab center for substance abuse and I

17   have family counseling to attend with him, and he has an

18   orthopedic appointment on Wednesday in Providence.

19          THE COURT:  When on Wednesday is the

20   appointment?

21          THE JUROR:  Wednesday in Providence.

22          THE COURT:  Yeah, when, in the afternoon?

23          THE JUROR:  He's currently in a substance

24   abuse program in Exeter, Rhode Island.

25          THE COURT:  Okay.  Recognizing, and you did

1   just right to tell us about that, but does that involve

2   personally -- does that affect you in this case one way

3   or another?

4               THE JUROR:  It does.

5               THE COURT:  It does?

6               THE JUROR:  Yes.  I just find it hard to be

7   able to differentiate the two, substance abuse, you

8   know, and --

9               THE COURT:  Okay.  So you think these people

10  are probably guilty of something if they --

11              THE JUROR:  Yes.

12              THE COURT:  You did just right to tell us.  Go

13  back downstairs and we'll find another case for you.

14              THE JUROR:  Okay.

15              THE COURT:  Juror Number 39.

16              (Next juror.)

17              THE JUROR:  Good afternoon.

18              THE COURT:  Could we have your name, sir?

19              THE JUROR:  My name is Edwin Vandenberghe.

20              THE COURT:  Yes, sir.

21              THE JUROR:  I worked 25 to 30 years in a

22  correction facility, I was a corrections officer, and in

23  my eyes everybody's guilty.  No disrespect to anyone

24  here.

25              THE COURT:  All right.  If that's your view,

1    you're excused from this case.  Go back downstairs and

2    we'll find a different case where it's not a criminal

3    case.

4              THE JUROR:  Yes.  Thank you, sir.

5              THE CLERK:  Juror Number 65.

6              MR. APFEL:  I think "everybody" includes you,

7    your Honor.

8              THE COURT:  Of course it does.

9              (Next juror.)

10             THE COURT:  Can we have your name, sir?

11             THE JUROR:  Cameron Thissell.

12             THE COURT:  Mr. Thissell, yes.  You answered

13   "Yes"?

14             THE JUROR:  I'm a full-time college student

15   and I have finals coming up and serving on this case

16   will require me to miss a lot of classes, so.

17             THE COURT:  Well, I need people from all walks

18   of life --

19             THE JUROR:  I understand that.

20             THE COURT:  -- and I teach as well.  We can

21   jimmy your finals for -- by which I mean simply move

22   them, for jury service.  So I'm going to ask you to

23   stay.  And if you have a final during any of the days

24   that -- I mean it's your obligation to tell the school

25   that you're serving as a juror if you get picked, but if

1    you have a jam moving the date of the final, then you

2    tell Ms. Gaudet and we'll take care of it.

3                THE JUROR:  Thank you.

4                THE COURT:  We'll ask you to stay.

5                (Juror leaves.)

6                THE CLERK:  What was his name again?

7                MR. APFEL:  Your Honor, cause.

8                THE COURT:  Well, let's find out who he is

9    first.  Thissell?

10               THE JUROR:  Juror Number 55.

11               THE COURT:  Yeah, it's noted, but overruled.

12               (Next juror.)

13               THE COURT:  Your name, please?

14               THE JUROR:  Kyle Bishop.

15               THE COURT:  Mr. Bishop.

16               THE JUROR:  I have a trip planned where I have

17   to leave the country on the 29th.

18               THE COURT:  To do what, if I may ask?

19               THE JUROR:  To take my wife away for her 40th

20   birthday to Mexico.

21               THE COURT:  You go on your trip.

22               THE JUROR:  Thank you.

23               THE COURT:  Well, let me give you your card

24   first.  Thank you.

25               THE JUROR:  Thank you, sir.

1          (Juror leaves.)

2          THE JUROR:  Juror Number 47.

3          (Next juror.)

4          THE COURT:  Can we have your name, sir?

5          THE JUROR:  Mark Rubino.

6          THE COURT:  Yes, Mr. Rubino.

7          THE JUROR:  I've had a family member charged

8   with the exact or very similar charges in this case, so

9   I don't think I can give a fair opinion in the case.

10          THE COURT:  Even though these are entirely

11   different cases?

12          THE JUROR:  It's the exact same charges, so.

13          THE COURT:  You did just right to tell us.  We

14   have to get your jury number, so, excuse me, but we'll

15   send you back downstairs and find a different case for

16   you.

17          THE JUROR:  Thank you.

18          THE COURT:  Thank you, sir.

19          THE JUROR:  Thanks.

20          (Next juror.)

21          THE COURT:  And your name, sir?

22          THE JUROR:  Francis Grande.

23          THE COURT:  Yes, Mr. Grande.

24          THE JUROR:  My wife and I are leaving on May

25   3rd on a prepaid vacation.

```
1              THE COURT:  The 3rd is a Saturday.  We'll get

2   you there.  This will be over by the Saturday or I'm

3   picking enough that I'll let you go.  You're going on

4   vacation, but we need you until then.  Well, we may.

5   We'll see if you're picked.

6              THE CLERK:  Juror 36.

7              MR. APFEL:  What number is it?

8              THE JUROR:  36.

9              MR. APFEL:  Um, motion to strike for cause.

10             THE COURT:  Noted.  Denied.

11             (Next juror.)

12             THE COURT:  Yes.

13             THE JUROR:  Yes, my name is Claudia Dunn and I

14  work for Thomson Family Adventures and I'm hosting a

15  conference starting on April 30th to May 2nd.  So that's

16  my only concern.

17             THE COURT:  You did right to tell us.  I try

18  to deal with that by sitting 9:00 till 1:00.  I really

19  need people from all walks of life.  So I'm going to

20  have to ask you to stay.  The only time we'll keep you

21  after 1:00 is the day or days the jury deliberates and

22  then we work 9:00 till 5:00.  Otherwise we'll have you

23  out of here every day by 1:00.  And of course we hope

24  that we'll get it done by a week from Wednesday.  But

25  we'll ask you to stay.  You've told me.  Thank you.
```

```
1                    THE JUROR:  Juror Number 66.

2                    MR. APFEL:  Motion to strike for cause, your

3       Honor.

4                    THE COURT:  Noted.  Denied.

5                    (Next juror.)

6                    THE COURT:  Yes.

7                    THE JUROR:  My wife's Cousin is getting

8       married, so I'm good this week, but until I fly out

9       Wednesday morning to LA.

10                   THE COURT:  Wednesday morning of next --

11                   THE JUROR:  Of next week.  This week I'm good.

12                   THE COURT:  Well, we'll be sitting Wednesday,

13      so -- and you're going to the wedding?

14                   THE JUROR:  I'm going to the wedding, yes,

15      sir.

16                   THE COURT:  Enjoy the wedding.  Take that

17      downstairs.  We may have a shorter case.

18                   THE JUROR:  Thank you.

19                   THE CLERK:  Juror 44.

20                   (Next juror.)

21                   THE COURT:  Hi, can we have your name, ma'am?

22                   THE JUROR:  My name is Carmen Perez.

23                   THE COURT:  Yes, Ms. Perez.

24                   THE JUROR:  I was involved, 10 years ago, with

25      a man who was charged with drug distribution.  So I
```

```
1    think I --
2              THE COURT:  Well, I mean you did just right to
3    tell us, but do you think that has any effect on your
4    views in this case?
5              THE JUROR:  No.
6              THE COURT:  In other words, these people have
7    been charged with a type of drug distribution,
8    conspiracy of it, but do you think you truly can be fair
9    to them and equally fair to the government who brings
10   the charges?
11             THE JUROR:  Yes.
12             THE COURT:  Okay.  Thank you.  We'll ask you
13   to stay.
14             THE JUROR:  Okay.
15             MR. APFEL:  Your Honor, I just missed what she
16   said.  She's involved in what?  What did she say about
17   drug distribution?
18             MR. GALLAGHER:  She has a family member who
19   was convicted of drug distribution.
20             MR. APFEL:  Oh, convicted, yes.
21             MR. GALLAGHER:  Can I ask you to ask her
22   questions, of that juror, your Honor.
23             THE COURT:  We'll see if she's chosen.  I
24   don't know that I will.  Thank you.  I'm satisfied.
25             (Next juror.)
```

```
1              THE COURT:  Can we have your name, sir?

2              THE JUROR:  John Sestito.

3              THE COURT:  Yes, Mr. Sestito.

4              THE JUROR:  I'm actually going to be traveling

5     for over the next two weeks, out of the state.

6              THE COURT:  What do you do?

7              THE JUROR:  I'm an engineer.

8              THE COURT:  I really need people from all

9     walks of life.  I mean you've told me.

10             THE JUROR:  I will be traveling all across the

11    country over the next few weeks.

12             THE COURT:  I understand, but I need people

13    from all walks of life.  Your job is absolutely secure

14    if you serve as a juror.  So I'm going to ask you to

15    stay.

16             MR. APFEL:  What number?

17             THE CLERK:  56.

18             MR. APFEL:  Motion to strike for cause, your

19    Honor.

20             THE COURT:  Denied.

21             (Next juror.)

22             THE COURT:  Your name, ma'am?

23             THE JUROR:  Marianne Marr.

24             THE COURT:  Yes, Ms. Marr.

25             THE JUROR:  I'm hypoglycemic from stomach
```

1    surgery.  I can't sit two hours without eating.

2              THE COURT:  Yeah, we -- we won't allow that to

3    happen.  We've had exactly situations like that.  You

4    bring stuff with you to eat, so you can eat.

5              THE JUROR:  Sometimes, yeah.

6              THE COURT:  Well, if you're chosen, I sit an

7    hour and 45 minutes, take a half an hour break, and then

8    sit another hour and 45 minutes.  I sit from 9:00 till

9    1:00.  We've had people in exactly the same situation.

10   You can either bring the stuff with you into the jury

11   box and eat it or we'll take recesses.  You have the

12   right to serve.  We'll ask you to stay.  And your health

13   situation comes first, so you make sure we're taking

14   care of it, and we will.

15             MR. APFEL:  What number?

16             THE CLERK:  16.

17             MR. APFEL:  Motion to strike for cause, your

18   Honor.

19             THE COURT:  Noted and denied.

20             (Next juror.)

21             THE COURT:  Can we have your name, sir?

22             THE JUROR:  Raymond Boyle.

23             THE COURT:  Yes, Mr. Boyle.

24             THE JUROR:  A vacation scheduled, I'm flying

25   out the 23rd.

1          THE COURT:  The 23rd.  Where are you going?

2          THE JUROR:  Puerto Rico, three days, on a

3      cruise.

4          THE COURT:  I shouldn't ask a personal

5      question, but we're going to let you go.  Let's just

6      find your number.  60, yes.

7          Okay, you're excused.  Have a wonderful vacation.

8          THE JUROR:  Thank you.

9          (Next juror.)

10          THE COURT:  Can I have your name, sir?

11          THE JUROR:  Yes, Robert Ginsberg.

12          THE COURT:  Yes, Mr. Ginsberg.

13          THE JUROR:  I'm not available tomorrow, this

14      is the first day of Passover, and then at the end of the

15      week starting on Friday and then all of next week I'm

16      away with my family on school vacation.

17          THE COURT:  Well, we certainly want to respect

18      your religious beliefs.  We were going to start at 10:00

19      tomorrow and in your beliefs that's not good enough?

20          THE JUROR:  Well, in my family I usually take

21      the first full day of Passover off.

22          THE COURT:  Then you're excused in this case.

23      Go back downstairs and we'll see if we have a different

24      case.

25          THE JUROR:  Juror Number 9.

```
 1              MR. APFEL:  What was the number of the prior
 2    person who was going on vacation?
 3              THE CLERK:  60.
 4              MR. APFEL:  Thank you.
 5              (Next juror.)
 6              THE JURY:  Hi.
 7              THE COURT:  Can we have your name, ma'am?
 8              THE JUROR:  Laura Willey.
 9              THE COURT:  Yes.
10              THE JUROR:  My husband works for Comcast and
11    is directly involved with the DEA setting up all the
12    cameras in the North Shore in the cities.
13              THE COURT:  When they do things?
14              THE JUROR:  Yeah.
15              THE COURT:  All right.  That doesn't prevent
16    you, but we want to know how you feel.  Given your
17    husband's work in aid of law enforcement with one of the
18    agencies that's involved here, and I don't know that we
19    have any camera evidence here, but maybe we do.  I don't
20    know.
21         But is that going to affect your ability to be a
22    juror in this case?
23              THE JUROR:  That particularly?  No.
24              THE COURT:  Well, is there something else?
25              THE JUROR:  Yeah.  What I do professionally
```

```
 1    for work, I'm a psychic medium, and I already have

 2    impulses.

 3              THE COURT:  So you think you know how this is

 4    coming out?

 5              THE JUROR:  Yes.  I know this is terrible to

 6    say, but it's what I do for a living.

 7              THE COURT:  Okay.  Don't tell us.

 8              (Laughter.)

 9              THE COURT:  And you're excused from this case.

10              (Juror leaves.)

11              MR. APFEL:  Are you sure she can't tell us?

12              THE CLERK:  Juror Number 57.

13              THE COURT:  I've never heard that excuse

14    before.

15              (Next juror.)

16              THE COURT:  Can I have your name, sir?

17              THE JUROR:  Francis Carr.

18              THE COURT:  Yes, Mr. Carr.

19              THE JUROR:  Two days ago my mother was

20    assaulted by a family member we live with and I'm in the

21    process of moving her to a safer apartment.

22              THE COURT:  Yeah, I think we're going to

23    excuse you on this case, sir, so you can tend to that.

24    And thank you for telling us.

25              THE JUROR:  Thank you.
```

1            THE CLERK:  Juror Number 10.

2            (Next juror.)

3            THE COURT:  Your name, sir?

4            THE JUROR:  Brian Plante.

5            THE COURT:  Yes, Mr. Plante.

6            THE JUROR:  My brother is a captain in the

7    Federal Bureau of Prisons.

8            THE COURT:  All right.  Now, given that

9    relationship and the fact that a number of police

10   officers are going to testify, are you going to favor

11   the police officers' testimony just because they're

12   police officers?

13           THE JUROR:  No.

14           THE COURT:  Are you going to be hostile or

15   skeptical of police officer testimony just because

16   they're police officers?

17           THE JUROR:  No, your Honor.

18           THE COURT:  Do you think you can be fair and

19   impartial both between the government and these three

20   individuals?

21           THE JUROR:  Yes, sir.

22           THE COURT:  Thank you.  We'll ask you to stay.

23           MR. APFEL:  Motion to strike for cause, your

24   Honor.

25           MR. SWOMLEY:  I join, your Honor.

1          THE COURT:  Noted and denied.

2          THE CLERK:  Number 67.

3          (Next juror.)

4          THE COURT:  Can we have your name, ma'am?

5          THE JUROR:  Yes, it's Marianne Berube.

6          THE COURT:  Yes, ma'am.

7          THE JUROR:  I just feel like I wouldn't be

8   able to put my feelings aside.  I had a sister that, um,

9   her friend that was living with her boyfriend was

10  arrested for drugs.  He was dealing drugs.  He went to

11  prison for 10 years.  Her whole life was uprooted.  Her

12  two children were uprooted.

13         THE COURT:  And you think that affects you in

14  this case where these folks are charged with --

15         THE JUROR:  I have a lot of anger with people,

16  you know, dealing drugs.

17         THE COURT:  Well, I mean that's why we have

18  laws against it, but the fact that we have laws against

19  it doesn't mean that any of these three folks did it.

20  But I want to respect your feelings.

21      You sort of think that you're angry at them, any

22  one of them?

23         THE JUROR:  Well, you know, it brings it back

24  for me and I don't know if I could put my feelings aside

25  and --

```
 1              THE COURT:  Fine.  You're excused in this
 2    case.  We'll find you a case that doesn't have to do
 3    with drug dealing.  You're excused.
 4              THE CLERK:  That's Juror Number 16.
 5              MR. GALLAGHER:  16?
 6              THE CLERK:  Yeah.
 7              MR. APFEL:  I have 16.
 8              (Next juror.)
 9              THE COURT:  Can we have your name?
10              THE JUROR:  Leslie Curry.
11              THE COURT:  Yes, Ms. Curry.
12              THE JUROR:  Yes.  I work in a hospital and I
13    am scheduled to work tonight, overnight, for 12 hours,
14    and I am a per diem employee because I lost my job about
15    a year ago, so financially it's very -- this length of
16    time would be detrimental to my bills being paid.
17              THE COURT:  I understand.  I really need
18    people from all walks of life.  Your job is absolutely
19    protected.  Maybe we can get this done by Wednesday, a
20    week.  I sit from 9:00 in the morning till 1:00 in the
21    afternoon.  You'll leave here every day at 1:00 except
22    for when you're deliberating and then it's 9:00 to 5:00,
23    business hours, but we never sit more than that.  So I'm
24    going to ask you to stay because I need people.
25              THE JUROR:  I work 12-hour shifts, so the 9:00
```

1    to 1:00 thing doesn't help.

2              THE COURT:  Well, you're going to have to tell

3    them that you're serving on a jury.

4              (Juror leaves.)

5              MR. SWOMLEY:  Objection --

6              MR. APFEL:  Objection for cause, your Honor.

7              THE COURT:  Noted, but denied.

8              THE CLERK:  52.

9              (Next juror.)

10             THE COURT:  Your name, sir?

11             THE JUROR:  Matthew Dupree.

12             THE COURT:  Yes, Mr. Dupree.

13             THE JUROR:  I actually have a divorce

14   proceeding on Friday morning at 8:30 in Salem Probate

15   Court, and, um, just because of the time conflict.  I

16   really don't want to reschedule it.

17             THE COURT:  Well, they'll reschedule it for

18   you.  I mean I don't want to have pride of place here,

19   but if you're serving on a jury, my clerk will talk to

20   their clerks and they'll reschedule it, and you won't

21   lose the date, we'll put it on in the afternoon.

22             THE JUROR:  Oh, on the same day, you're

23   saying?

24             THE COURT:  Yeah.

25             THE JUROR:  Okay, if that works for you.

1          THE COURT:  It works for me.

2          THE JURY:  Okay.

3          THE COURT:  And thank you for telling us.

4      And if you're chosen, you remind the Clerk,

5   because we'll have to take care of that.

6          THE JUROR:  Okay.

7          MR. APFEL:  What number?

8          THE CLERK:  Number 54.

9          (Next juror.)

10          THE JUROR:  Justin McCummings.

11          THE COURT:  Yes, Mr. McCummings.

12          THE JUROR:  My wife is 9 months pregnant, so

13   she is due any time within the next two weeks.

14          THE COURT:  Did you notice the Clerk reach for

15   the cards?

16          (Laughter.)

17          THE COURT:  Congratulations, Mr. McCummings.

18   We wish you the best.  You're excused on this case.

19          THE JUROR:  Thank you.

20          THE CLERK:  Juror Number 7.

21          (Next juror.)

22          THE COURT:  Can we have your name, sir?

23          THE JUROR:  Charles Andrews.

24          THE COURT:  Yes, Mr. Andrews.

25          THE JUROR:  I had a death in my family on my

1   mother's side and the funeral and wake is due this week

2   sometime.

3            THE COURT:  Well, the wake will be in the

4   evening, won't it?

5            THE JUROR:  I believe so.  And the family gets

6   together.

7            THE COURT:  Yeah.  But when is the funeral, do

8   you know?

9            THE JUROR:  Yeah, I have the flyer and

10  everything else in the house and I believe it's sometime

11  this week.

12           THE COURT:  It's sometime this week?

13           THE JUROR:  Yeah.

14           THE COURT:  All right, we'll excuse you from

15  service in this case.

16           THE CLERK:  Charles Andrews.

17           THE COURT:  You're excused.  Take that back.

18  Number 61.

19           MR. APFEL:  Number 61.

20           (Next juror.)

21           THE COURT:  Can we have your name, ma'am?

22           THE JUROR:  Michelle Bush.

23           THE COURT:  Yes, Ms. Bush.

24           THE JUROR:  I have some medical conditions

25  I've been struggling with and I'm trying to coordinate

```
 1    appointments with two different specialists and they're
 2    both this week, um, and I'm afraid if I have to
 3    reschedule it will be another three months.
 4              THE COURT:  Well, we don't want that.  Do you
 5    know when are they?
 6              THE JUROR:  One's tomorrow, one's Wednesday.
 7              THE COURT:  Right, when tomorrow?
 8              THE JUROR:  Tomorrow at 3:00, Wednesday at
 9    10:00 in the morning.
10              THE COURT:  Well, do you think you can get the
11    Wednesday one put off until in the afternoon, because
12    I'll have you out of here at 1:00.
13              THE JUROR:  Um, I don't know.
14              THE COURT:  We'll help you.  We'll ask you to
15    stay and we'll see if we can't get the Wednesday one
16    rescheduled for the afternoon.  We'll ask you to stay.
17              MR. APFEL:  Motion to strike for cause, your
18    Honor.
19              THE COURT:  Actually I'm going to allow that
20    motion and we simply won't call her.  We'll take her
21    out.  She won't be called.
22              (Next juror.)
23              THE COURT:  Can I have your name, sir?
24              THE JUROR:  Christian Bragdon, sir.
25              THE COURT:  Yes, Mr. Bragdon.
```

1              THE JUROR:  Um, I've lived with my grandfather

2      my entire life and he was a lieutenant in the New

3      Bedford police.

4              THE COURT:  A lieutenant in the New Bedford

5      police.

6          Does that relationship -- and you did just right

7      to tell us.  But does that relationship -- are you

8      inclined to favor police officers who are going to

9      testify in this case just because they're police

10     officers?

11             THE JUROR:  It does, sir.

12             THE COURT:  It does.  All right, you're

13     excused from service on this case.  Go downstairs and

14     we'll find you a different case.

15             THE CLERK:  Number 32.

16             (Next juror.)

17             THE COURT:  Your name, ma'am?

18             THE JUROR:  Marcia Aigler.

19             THE COURT:  All right.

20             THE JUROR:  And you had asked about law

21     enforcement and my grandfather was the chief of police

22     and a truant officer.  That's one thing.  And the other

23     thing is just for the duration of the trial, I don't

24     want to be excused, but I just came back from Florida,

25     my father had surgery on a subdural hematoma.  My

1    sister's coming home today.  I don't know in the next

2    three weeks if I may feel the need to go there or I may

3    have to go there.  But that's just sort of --

4              THE COURT:  Let's take the police officer

5    business first.  The reason I ask that is, are you going

6    to favor --

7              THE JUROR:  No.

8              THE COURT:  Are you going to be hostile to

9    police officers?

10             THE JUROR:  No, it's just because you asked.

11   I just raised my hand.

12             THE COURT:  Well, truly do you think you can

13   be fair to these three guys and the government equally?

14             THE JUROR:  I don't think it would influence

15   me, your Honor.

16             THE COURT:  Okay.

17        Now, in terms of the -- where is your --

18             THE JUROR:  Sarasota, Florida.

19             THE COURT:  He's in Florida.  Your sister is

20   coming home --

21             THE JUROR:  She's coming home tonight.  He's

22   with my mother.  We're deciding what to do about the

23   situation.

24             THE COURT:  And like what are your options?

25             THE JUROR:  I would go back and help them out,

```
 1    because they're alone.
 2              THE COURT:  Yeah.  Well, I need you this week
 3    and then it's going to be a three-day weekend, I need
 4    you the two days the next week, and then you've got a
 5    week, so between you and your sister it sounds to me
 6    like you could work it out.  I know how uncomfortable it
 7    would be, but I need people from all walks of life.  So
 8    can you give us those days if -- I'm not changing the
 9    schedule, but you have those days off, a three-day
10    weekend is coming, and then the week between Thursday of
11    next week and --
12              THE JUROR:  You picked the perfect days
13    because actually I have one refundable flight to go
14    somewhere between those, so that's fine.
15              THE COURT:  Thank you.  I'll ask you to stay.
16              THE JUROR:  All right.
17              THE CLERK:  Number 50.
18              (Next juror.)
19              THE COURT:  And your name, sir?
20              THE JUROR:  Jason Clark.
21              THE COURT:  Yes, Mr. Clark.
22              THE JUROR:  I have a special needs son.  I'm
23    responsible for putting him on a bus every morning and
24    for his after-school care three days a week.  I just
25    wanted to make sure that the Court schedule is
```

```
 1   compatible with that.
 2            THE COURT:  I'm very big on starting at 9:00
 3   in the morning.  Can you be here at 9:00 in the
 4   morning?
 5            THE JUROR:  Provided there's not lot of
 6   traffic, yes.
 7            THE COURT:  Well, I want to give you the
 8   opportunity to serve.  I really do.
 9        Then every day we'll stop at 1:00, guaranteed,
10   except when the jury is deliberating, and I can't tell
11   how -- it may go one day, it may go two days.  But
12   that's 9:00 to 5:00.  So on those days you're going to
13   have to get a substitute, but you'll know in advance
14   when those days are.
15            THE JUROR:  Okay.  Perfect.
16            THE COURT:  Okay.  Thank you for your
17   willingness to serve.
18            THE CLERK:  Juror Number 35.
19            (Next juror.)
20            THE COURT:  Can we have your name, sir?
21            THE JUROR:  Jason Noonan.
22            THE COURT:  Noonan.  Yes.
23            THE JUROR:  Two things.  Tomorrow we have --
24   my wife and I have an ultrasound appointment at 1:00 and
25   Sunday we fly out for Italy.
```

```
 1                 THE COURT:  For a vacation?

 2                 THE JUROR:  Yeah.

 3                 THE COURT:  Enjoy it.

 4                 THE JUROR:  Thanks.  Take care.

 5                 (Juror leaves.)

 6                 THE JUROR:  Juror Number 37.

 7                 (Next juror.)

 8                 THE COURT:  You'll have to give us your name

 9     again, please.

10                 THE JUROR:  Paul Kleinman.

11                 THE COURT:  Yes, Mr. Kleinman.

12                 THE JUROR:  I've been sitting there doing a

13     little bit of soul searching, um, and I just want to

14     inform you that, um, because I've worked with law

15     enforcement and prosecution over the past 25 years or so

16     --

17                 THE COURT:  You think you're inclined their

18     way?

19                 THE JUROR:  I have to express some

20     reservations.

21                 THE COURT:  You did just right.  You're

22     excused.  Take this back downstairs.

23                 (Juror leaves.)

24                 THE CLERK:  Juror 51.

25                 (Next juror.)
```

```
 1                THE COURT:  Your name, ma'am?
 2                THE JUROR:  My name is Nancy Cedano.
 3                THE COURT:  Yes, Ms. Cedano.
 4                THE JUROR:  I don't speak English, but I don't
 5      very good.
 6                THE COURT:  We face this often, ma'am, and
 7      trials are slow, so if you don't understand, just raise
 8      your hand and I'll have things repeated.  You have the
 9      right to serve as a juror and we'll ask you to stay.
10      We'll see that it's explained to you.
11                THE JUROR:  Okay.  Thank you.
12                THE COURT:  Thank you.
13                THE CLERK:  That's Nancy Cedano, right?
14                THE JUROR:  Right.
15                (Juror leaves.)
16                MR. SWOMLEY:  Objection for cause, your
17      Honor.
18                THE COURT:  Noted, but denied.
19                THE CLERK:  Juror 62.
20                (Next juror.)
21                THE COURT:  Can we have your name, ma'am?
22      Your name.
23                THE JUROR:  Mireille.
24                THE COURT:  And your last name?
25                THE JUROR:  Simon.
```

```
1              THE COURT:  Yes, Ms. Simon, you answered
2    "yes"?
3              THE JUROR:  What?
4              THE COURT:  Are you having trouble
5    understanding?
6              THE JUROR:  I don't understand English.
7              THE COURT:  All right.  She's excused.
8         Take this card we give you, take it downstairs.
9              THE JUROR:  Okay.
10             THE CLERK:  Just say your name again?
11             THE JUROR:  Mireille Simon.
12             MR. SWOMLEY:  Number 48, your Honor.
13             THE COURT:  48.  Simon?
14             THE CLERK:  Ms. Simon.
15             THE JUROR:  Yes.
16             THE COURT:  Thank you.
17        Take this downstairs and thank you.
18             (Juror leaves.)
19
20             (In open court.)
21             THE COURT:  I find this panel indifferent.
22        Proceed, Madam Clerk.
23             THE JUROR:  Juror Number 1, Susana DeSousa,
24   please come forward.  Take Seat 1 in the second row.
25   Juror Number 2, Jennifer Plaza, please come forward and
```

1    take Seat 2 in the second row.  Juror Number 3, Andrew

2    Puopolo, please come forward and take Seat 3 in the

3    second row.

4              (Jurors take seats in box.)

5              THE CLERK:  Juror Number 4, Jennifer Briscoe,

6    please come forward and take Seat 4 in the second row.

7    Juror Number 5, Mackenzie Silverio, please come forward

8    and take Seat 5 in the second row.

9              (Takes seat in box.)

10             THE CLERK:  Juror Number 6, Robert Byers,

11   please come forward and take Seat 6 in the second row.

12   Juror Number 8, David Lovering, please come forward and

13   take Seat 7 in the second row.  Juror Number 11, Robert

14   Habib, please come forward and take Seat 1 in the front

15   row.  Juror Number 12, Carmen Perez, please come forward

16   and take Seat 2 in the front row.

17             (Takes seats in box.)

18             THE CLERK:  Juror Number 13, Michelle Klun,

19   please come forward and take Seat 3 in the front row.

20   Juror Number 14, Thelizia Larochefils, please come

21   forward and take Seat 4 in the front row.  Juror Number

22   15, Michael Zucarelli, please come forward and take Seat

23   5 in the front row.  Juror Number 17, Christopher Pealt,

24   please come forward and take Seat 6 in the front row.

25   And Juror Number 18, Mary Marr, please come forward and

1    take Seat 7 in the front row.

2                  (Jurors seated in box.)

3                  THE COURT:  Now, as I explained, folks, I'm

4    going to call upon each one of you now by name.  You

5    don't have to stand up, you don't have to introduce

6    yourself, but we would like to know, in just a very few

7    words, what do you do?  Where do you work?  What do you

8    do there?  If you're married, could you tell us where

9    your spouse works and what he or she does?  And we'll go

10   in the order you were chosen, starting with Ms. DeSousa.

11                 THE JUROR:  Hi.  I work for Oceanpoint

12   Insurance Agency, I am a personal lines account

13   manager.  My husband is self-employed as a carpenter.

14                 THE COURT:  Thank you.

15        Ms. Plaza.

16                 THE JUROR:  I'm an investment analyst at State

17   Street Mobile Advisors in Boston, and I'm unmarried.

18                 THE COURT:  Okay.  Mr. Puopolo.

19                 THE JUROR:  Puopolo, sir.

20                 THE COURT:  Puopolo.  I'm sorry.

21                 THE JUROR:  I work for JF Whiting as a

22   contractor.  I don't have a spouse.

23                 THE COURT:  Ms. Briscoe.

24                 THE JUROR:  I'm a unit manager of a nursing

25   home.  Not married.

1           THE COURT:  Okay.  Ms. Silverio.

2           THE JUROR:  I'm the vice-president of ticket

3   sales and advertising for the Boston Celtics basketball

4   team, and my husband works for a company called Oxfial

5   and he's in software sales.

6           THE COURT:  Thank you.  Mr. Byers.

7           THE JUROR:  I work for Oracle as a software

8   quality assurance engineer.  My wife works as an

9   administrator at Harvard.

10           THE COURT:  An administrator of what?

11           THE JUROR:  She is in charge of organizing a

12   program that brings in professionals to train on how to

13   sequence DNA.

14           THE COURT:  Thank you.

15       Mr. Lovering.

16           THE JUROR:  Yes, I'm an owner and I

17   participate in a small construction company and my wife

18   works for my company.

19           THE COURT:  Thank you.

20       Mr. Habib.

21           THE JUROR:  I work for WH Riley & Son, which

22   is an oil company.  I'm a service tech.

23           THE COURT:  Thank you.

24       Ms. Perez.

25           THE JUROR:  I'm a nutritionist assistant.  I

```
 1     work for the WIC program.  And I'm separated.
 2                THE COURT:  Okay.
 3          Ms. Klun.
 4                THE JUROR:  I'm a dental practice manager and
 5     my husband is a lieutenant at the Communications Center
 6     at the Barnstable County Sheriff's Department.
 7                THE COURT:  Thank you.
 8          Ms. Larochefils.
 9                THE JUROR:  I'm a caregiver, I work for Abbott
10     Senior Care, and my husband is a dental assistant.  He's
11     working for the Goodman Square Health Center.
12                THE COURT:  Mr. Zucarelli.
13                THE JUROR:  I'm a program director for the
14     YMCA of Attleborough.  My wife is a clinical therapist
15     at the Justice Resource Institute.
16                THE COURT:  And Mr. Pealt.
17                THE JUROR:  I'm a maintenance tech.  I work
18     with Beacon Communities.  My wife, she's a dentist.
19                THE COURT:  Thank you.
20          And, Ms. Marr.
21                THE JUROR:  I'm in sales and design and my
22     husband is a --
23                THE COURT:  You work in sales and design of
24     what?
25                THE JUROR:  Kitchens and baths.
```

```
 1                 THE COURT:  Uh-huh.  And your husband is a
 2    federal employee working in --
 3                 THE JUROR:  Yes, at Hanscom Air Force Base.
 4                 THE COURT:  Doing what?
 5                 THE JUROR:  Working in the housing.
 6                 THE COURT:  Thank you.
 7           Counsel.
 8
 9                 AT THE SIDEBAR
10                 MR. APFEL:  Your Honor, we are going to need a
11    few moments to confer.
12                 THE COURT:  Well, briefly.
13                 MR. APFEL:  But before we do that, there are
14    several other questions I'd like you to put to the
15    entire venire.
16                 THE COURT:  I'm not going to.  And your rights
17    are saved.
18                 MR. APFEL:  That's it?  No other questions?
19                 THE COURT:  That's it.  No other questions.
20                 MR. APFEL:  Um, including the people who are
21    going to play a role in the trial --
22                 THE COURT:  I've read the witnesses.
23                 MR. APFEL:  That's the government's witness
24    list, but --
25                 THE COURT:  Where's the defense witness list?
```

```
 1              MR. APFEL:  It's attached to our voir dire.  I
 2    mean it's not a witness list, it's a list of other
 3    persons --
 4              THE COURT:  I understand.  If I haven't asked
 5    them, I'm not going to.  And your rights are saved.
 6              MR. APFEL:  For instance, your Honor, Dex
 7    Corp. is going to be repeatedly mentioned.
 8              THE COURT:  It may be.  I have -- your rights
 9    are saved.
10              MR. APFEL:  And Jose Paradis is going to come
11    up --
12              THE COURT:  Mr. Apfel, when I make rulings,
13    they're made.  Your rights are saved.
14              MR. APFEL:  Just a moment, your Honor?
15              (Pause.)
16              THE COURT:  All right, counsel.
17         The government first, then the defense.  No back
18    strikes.  The second round, the defense will go first,
19    the last two chosen might be alternates.
20              MR. GALLAGHER:  I'm sorry, your Honor, do we
21    do one and then --
22              THE COURT:  No, you do all.  Go ahead.
23              MR. GALLAGHER:  3 and 8.
24              THE COURT:  3, is Mr. Puopolo, is that right?
25              MR. GALLAGHER:  Puopolo.
```

```
1                THE COURT:  Yes, he's excused.

2                MR. GALLAGHER:  And David Lovering.

3                THE COURT:  Lovering.  He's excused.

4           Are you otherwise content?

5                MR. GALLAGHER:  Yes.  I'm sorry.  With the one

6    in the box or --

7                THE COURT:  With the ones in the box.

8                MR. GALLAGHER:  Oh, yes.

9                THE COURT:  Okay.  Go ahead.

10                MR. APFEL:  We move to strike 13, 14, 15 and

11   18.

12                THE COURT:  It's helpful to give me names.

13   I'm sorry.

14                MR. APFEL:  13 is Michelle Klun.

15                THE COURT:  Klun is excused, yes.

16                MR. GALLAGHER:  Number 14.

17                THE COURT:  He's the man?

18                MR. APFEL:  No, it should be Larochefils.

19   Fourth one over, so.

20           With the blue jacket?

21                THE COURT:  Yes, with the blue jacket.  She's

22   African American, why are you --

23                MR. APFEL:  No, not her.  I'm sorry.  The

24   third.

25                MR. SWOMLEY:  The third from the right.
```

1              THE COURT:  Is a gentleman and he came up,

2    he's the YMCA guy.

3              MR. SWOMLEY:  I'm sorry, 15.

4              MR. APFEL:  15.  But also 14.

5              THE COURT:  Well, if I look at the front row,

6    third from the right, is a fellow who works for the Y

7    who's had peripheral involvement with law enforcement.

8    Do you want to strike him?

9              MR. CONNOLLY:  Third from the left.

10             THE COURT:  Third from the left.

11             MR. SWOMLEY:  We want to strike him.

12             THE COURT:  He's excused.

13             MR. GALLAGHER:  14 and 15.

14             THE COURT:  Right, Mr. Zacarelli.  So far

15    they've struck two.

16             MR. GALLAGHER:  But not 13?

17             THE COURT:  Not 13.

18             MR. APFEL:  Do we want to strike 13?

19             THE COURT:  Well, that's fine.  That's the

20    person next to him.

21             THE CLERK:  Ms. Klun, Michelle Klun.

22             MR. APFEL:  That's right.

23             THE COURT:  Well, she's excused, that's the

24    lady in the -- she's also in the blue top, the dark

25    blue.  She's excused, right?

1          MR. SWOMLEY:  Yes.

2          THE COURT:  So now you've struck those two.

3     Who else?

4          MR. APFEL:  We wanted 14 struck as well.

5          THE COURT:  Well, is that the woman --

6          MR. SWOMLEY:  Larochefls.

7          THE COURT:  Yes, that's the black lady,

8   right?

9          MR. SWOMLEY:  Right.

10          THE COURT:  Why?  Give me a reason.  She's

11   African American.

12          MR. APFEL:  African Americans do not have an

13   automatic right to sit.  We have not moved to strike the

14   other African American on the panel.

15          THE COURT:  Tell me why?  The fact they don't

16   have an automatic right to sit is not a reason.  I'm

17   asking for a reason.

18          MR. APFEL:  There is language used by the

19   defendants in the case that could be viewed as offensive

20   by African Americans, the use of the word "nigger," for

21   instance on tapes.

22          THE COURT:  On the tapes?

23          MR. APFEL:  Yes.

24          THE COURT:  All right.  But you're not going

25   to strike the other fellow?

1           MR. APFEL:  Right, because we have a different

2    sense about the other fellow.

3           THE COURT:  All right.  She's excused.  So now

4    you've exercised three.

5        Who else?

6           MR. SWOMLEY:  18.

7           THE COURT:  That's a lady who has the -- she

8    needs to eat, the hypoglycemic?

9           MR. APFEL:  Yes.

10          THE COURT:  She's excused.

11       And you're otherwise content?

12          MR. SWOMLEY:  Yes.

13          THE COURT:  And you've exercised four

14   challenges.  That's fine.

15

16          (In open court.)

17          THE CLERK:  Juror 3, Andrew Puopolo.  Juror

18   Number 8, David Lovering.  Juror Number 13, Michelle

19   Klun.  Juror Number 14, Thelizia Larochefils.  Juror

20   Number 15, Michael Zucarelli.  Juror Number 18, Mary

21   Marr.  Please come forward.  You've been excused.

22          (Jurors leave box.)

23          THE CLERK:  Juror Number 19, Michael Kelly,

24   please come forward and take Seat Number 3 in the second

25   row.

1                    (Takes seat in box.)

2                    THE CLERK:  Juror Number 22, Adrienne Rahn,

3      please come forward and take Seat 7 in the second row.

4                    (Takes seat.)

5                    THE CLERK:  Juror Number 23, Linda Solferino,

6      please come forward and take Seat 3 in the front row.

7                    (Takes seat.)

8                    THE CLERK:  Juror Number 25, Sarah Lay, please

9      come forward and take Seat 4 in the front row.

10                    (Takes seat.)

11                    THE CLERK:  Juror Number 26, Stefanie Carey,

12      please come forward and take Seat 5 in the front row.

13                    (Takes seat.)

14                    THE CLERK:  Juror 27, Brian Robado, please

15      come forward and take Seat 7 in the front row.

16                    (Takes seat.)

17                    THE COURT:  Now, the same question for the

18      folks who just joined us and we'll start with Mr. Kelly.

19                    THE JUROR:  I'm a bus driver for the Metro

20      West Transit Authority.

21                    THE COURT:  Thank you.

22           Ms. Rahn.

23                    THE JUROR:  I work with WGBH TV in the variety

24      department, and I'm unmarried.

25                    THE COURT:  Um --

1              THE JUROR:  I work on different shows.

2      Whatever they tell me to do.

3              THE COURT:  Sort of like a production

4      assistant?

5              THE JUROR:  Yes.

6              THE COURT:  Thank you.

7          And Ms. Solferino?

8              THE JUROR:  I'm a nurse.  I work in the

9      community.  I'm not married.

10             THE COURT:  Ms. Lay?

11             THE JUROR:  I'm a store manager for Eastern

12     Mountain Sports in Newton.

13             THE COURT:  Okay.

14         Ms. Carey?

15             THE JUROR:  I'm a student and a writer for a

16     nonprofit and I'm unmarried.

17             THE COURT:  Do you mind telling us what you're

18     majoring in?

19             THE JUROR:  Women and gender studies.

20             THE COURT:  Okay.

21         And Mr. Robado.

22             THE JUROR:  A plumber and bath fitter.  I'm

23     married.

24             THE COURT:  Thank you.

25         Counsel.

1

2              AT THE SIDEBAR

3              MR. APFEL:  Your Honor, we're going to need a

4   moment to confer, but one question.  I think that

5   number, um -- Number 19, who is, um, Michael Kelly, is

6   divorced.  Could you inquire what his wife did for a

7   living?

8              THE COURT:  I will do that.

9

10             (In open court.)

11             THE COURT:  Mr. Kelly, when you were married,

12  sir, what did your wife do?  Could you tell us.

13             THE JUROR:  She was a teacher's assistant.

14             THE COURT:  Thank you.  In an elementary

15  school?

16             THE JUROR:  Yes.

17             THE COURT:  Thank you.

18             MR. APFEL:  Give us a moment, your Honor.

19             (Pause.)

20             THE COURT:  All right, counsel.

21

22             AT THE SIDEBAR

23             THE COURT:  All right, Counsel.

24        Defense first.

25             MR. APFEL:  Um, move to strike Number 19,

1    Michael Kelly.

2              THE COURT:  He's excused.

3              MR. APFEL:  Number 23, Linda Solferino.

4              THE COURT:  She's excused.

5              MR. APFEL:  Number 26, Stefanie Carey.

6              THE COURT:  She's excused.  You've used up

7    seven challenges.

8         The government?

9              MR. GALLAGHER:  Juror Number 22, Adrienne

10   Rahn.

11             THE COURT:  She's excused.

12             MR. GALLAGHER:  And Juror Number 27, Brian

13   Robado.

14             THE COURT:  He's excused.

15        The government's used up four challenges.  All

16   right.  They're excused.

17

18             (In open court.)

19             THE CLERK:  Juror Number 19, Michael Kelly.

20   Juror Number 22, Adrienne Rahn.  Juror Number 23, Linda

21   Solferino.  Juror Number 26, Stefanie Carey.  Juror

22   Number 27, Brian Robado.  Please come forward.  You've

23   been excused.

24             (People leave box.)

25             THE CLERK:  Juror Number 29, Daniel

1    Chiavaroli, please come forward, take Seat 3 in the

2    second row.

3                    (Takes seat.)

4                    THE CLERK:  Juror Number 30, Daniel Fogarty,

5    please come forward and take Seat 7 in the second row.

6                    (Takes seat.)

7                    THE CLERK:  Juror Number 31, Evelyn LeBlanc,

8    please come forward and take Seat 3 in the front row.

9                    (Takes seat.)

10                   THE CLERK:  Juror Number 33, Mary Cain, please

11   come forward and take Seat 6 -- Seat 5 in the front row.

12                   (Takes seat.)

13                   THE CLERK:  Juror Number 34, Christopher Ford,

14   please come forward and take Seat 7 in the front row.

15                   (Takes seat.)

16                   THE COURT:  And the same question for the

17   folks who just joined us, starting with Mr. Chiavaroli.

18                   THE JUROR:  A carpenter for Capital Building

19   and Design Construction, and wife is a truck secretary

20   for a trucking company.

21                   THE COURT:  Thank you.

22          Mr. Fogarty.

23                   THE JUROR:  I'm a product development engineer

24   for Hunter Douglas and wife is a homemaker.

25                   THE COURT:  All right.

```
 1          Ms. LeBlanc.
 2              THE JUROR:  I'm retired now.
 3              THE COURT:  And when you worked, what did you
 4   do, ma'am?
 5              THE JUROR:  I was an instructor for the MBTA.
 6              THE COURT:  An instructor.  What did you
 7   teach?
 8              THE JUROR:  How to drive trollies and things.
 9              THE COURT:  All right.
10          Ms. Cain?
11              THE JUROR:  I work for Harvard Vanguard as a
12   nurse practitioner in internal medicine.  My husband is
13   in sales for Optimum Medical Software.
14              THE COURT:  Thank you.
15          Mr. Ford?
16              THE JUROR:  I'm a health safety environmental
17   engineer with VA Systems, a defense contractor.  My wife
18   is an auditor for the Internal Revenue Service.
19              THE COURT:  All right.  Thank you.
20          Counsel.
21
22              AT THE SIDEBAR
23              MR. SWOMLEY:  May we have a moment, your
24   Honor?
25              THE COURT:  Briefly.
```

```
 1                    (Pause.)
 2               THE COURT:  All right.  Counsel?
 3               MR. GALLAGHER:  Nothing, your Honor, we're
 4     content.
 5               THE COURT:  The government's content.
 6          Mr. Apfel?
 7               MR. APFEL:  Number 31, Evelyn LeBlanc.
 8               THE COURT:  She's excused.
 9               MR. APFEL:  And Number 34, Christopher Ford.
10               THE COURT:  Mr. Ford is excused.
11          You're otherwise content?
12               MR. APFEL:  We're otherwise content.
13               THE COURT:  Now, you've used up 9 challenges.
14               MR. APFEL:  And we have 11 total?
15               THE COURT:  Yes.  And now we're talking about
16     the alternates, and the first one chosen will be the
17     first alternate, and the second one will be --
18               MR. APFEL:  Oh, is that the way it works.
19               THE COURT:  Yeah, and so they don't know who
20     the alternates are, but you know.
21               MR. APFEL:  Okay.
22
23                    (In open court.)
24               THE CLERK:  Juror Number 31, Evelyn LeBlanc
25     and Juror Number 34, Christopher Ford, please come
```

```
 1   forward.  You've been excused.
 2                (Two people leave.)
 3                THE CLERK:  Juror Number 35, Jason Clark,
 4   please come forward and take Seat 3 in the front row.
 5                (Takes seat.)
 6                THE CLERK:  Juror Number 36, Francis Grande,
 7   please come forward and take Seat 7 in the front row.
 8                (Takes seat.)
 9                THE COURT:  Now, the same questions for the
10   two of you, starting with Mr. Clark.
11                COURT OFFICER:  I'm an architectural designer
12   for Jacksoncreative Group, and my wife is a customer
13   service representative for Microfiber, a manufacturer.
14                THE COURT:  Mr. Grande?
15                THE JUROR:  I'm retired.  My wife is a medical
16   secretary for a hospital.
17                THE COURT:  And when you worked, sir, what did
18   you do?
19                THE JUROR:  I worked for Kraft Foods, an
20   operations supervisor.
21                THE COURT:  Thank you.
22        Counsel?
23
24                AT THE SIDEBAR
25                THE COURT:  Counsel?  Defense rests?
```

1              MR. APFEL:  We're going to exercise one of our

2      remaining strikes.   Number 36.

3              THE COURT:  He is excused.  You have one

4      challenge left.

5          The government?

6              MR. GALLAGHER:  Nothing, your Honor.  The

7      government is content.

8              THE COURT:  Okay.

9

10             (In open court.)

11             THE CLERK:  Juror Number 36, Francis Grande,

12     please come forward.  You've been excused.

13             (Person leaves box.)

14             THE CLERK:  Juror Number 38, Marie Bertocci,

15     please come forward and take Seat 7 in the front row.

16             (Takes seat.)

17             THE COURT:  Ms. Bertocci, the same question

18     for you, ma'am.

19             THE JUROR:  I'm retired from real estate and

20     I'm a widow.

21             THE COURT:  And when you -- you were a real

22     estate broker, were you?

23             THE JUROR:  Yes.

24             THE COURT:  And when your husband was alive,

25     what work did he do?

```
 1                THE JUROR:  He was in construction.
 2                THE COURT:  Thank you.
 3           Counsel?
 4
 5                AT THE SIDEBAR
 6                THE COURT:  I believe that is it for the
 7      government?
 8                MR. GALLAGHER:  Yes, your Honor.  We're
 9      content.
10                MR. APFEL:  We're content.
11                THE COURT:  Very well.
12
13                (In open court.)
14                THE COURT:  Folks, we have the jury, and the
15      Clerk will give one of you the cards.  We thank you for
16      your participation in this process.  Would you all go
17      back downstairs to the jury lounge.  Oh, here's the jury
18      administer and he will take you down.
19                (People leave.)
20                THE COURT:  Now, ladies and gentlemen of the
21      jury, we have chosen you.  Here's what's going to
22      happen.  We're going to let you go.  And we will
23      actually start the trial tomorrow.  And given the fact
24      that it is Passover tonight, we're going to start at
25      10:00 tomorrow morning, so for all of the people
```

1    involved in the trial, I'm told that that's perfectly

2    okay so that they can all have their religious

3    observances.  And if that interferes with anyone's

4    religious observance, just let the Clerk know.

5         Does it?  Can we start at 10:00 tomorrow?

6             THE JUROR:  I have a traffic hearing on

7    Wednesday.

8             THE COURT:  We'll take care of it.  You can

9    talk to the Clerk.  We'll take care of it.

10        It doesn't mean it will go away --

11            (Laughter.)

12            THE COURT:  It just means we can see what we

13   can do about moving it.  But we'll take care of it.

14        All right.  I am going to let you go, but let me

15   give you more specifically the schedule, because we know

16   now, and we are so grateful for your service as jurors.

17   Here's how we're going to sit.

18        On the usual day -- this isn't so hard to

19   remember, but on the usual day we'll start promptly at

20   9:00 a.m. in the morning.  Tomorrow 10:00 a.m. in the

21   morning, um, for the reason I explained.  But on every

22   other day we sit, we'll start promptly at 9:00 a.m. in

23   the morning.  It's guaranteed we're stopping every day

24   that we sit at 1:00 in the afternoon.  So you can make

25   your arrangements.  1:00 in the afternoon we'll stop,

1    you're on your way, with this exception.

2        When the case comes to the end and the most

3    important part of the case begins, which is your jury

4    deliberations, we work normal business hours.  So let's

5    say we give you the case late some morning, we'll have

6    lunch for you and we'll expect you to stay throughout

7    the afternoon, but no later than 5:00, and if you reach

8    a verdict, so be it, if you don't reach a verdict,

9    you'll come back the next morning at 9:00 and you'll

10   deliberate throughout the day.  But you'll have ample

11   notice of that because we'll know that the case is

12   coming to an end and I will give you advanced warning.

13       So the normal day is 9:00 in the morning till 1:00

14   in the afternoon.

15       I depend upon you all so much.  I can't like start

16   at 9:00 with 11 people here and the last three straggle

17   in and say, "Well, the ones who are here can tell them

18   what went on."  That isn't the way it works.  Each of

19   you now occupy this constitutional office.  You are

20   jurors.  You are the judges of the facts in this case,

21   the only judges of the facts this case is ever going to

22   have.  So tomorrow I'll explain how you're to be fair

23   and impartial and I'll explain some other things to

24   you.  But for now let me explain the following, and then

25   you're free to go to start tomorrow at 10:00.

1          These three points are absolutely important and
2     you must follow them.
3          First, keep your minds suspended.  What does that
4     mean?  It means that trials are linear, they can only go
5     witness by witness by witness and for each witness
6     everyone gets a chance to ask that witness questions.
7     So don't make up your mind tomorrow.  Tomorrow -- we
8     haven't heard any evidence yet and tomorrow we will get
9     going, we'll let the lawyers make some opening
10    statements to you, and then the first witness will be
11    called and we'll see what we learn about the first
12    witness and the like.  Keep your minds suspended until
13    you have heard all the evidence.  Don't make up your
14    mind tomorrow or the next day, wait until you've heard
15    it all.
16         Second, you're not to talk to anybody about the
17    substance of this case and here's why.  It's not that
18    anything's secret, it most emphatically is not secret.
19    The case is going to be tried in this lovely large
20    courtroom, anybody can come in and out.  Under the
21    Constitution these doors must be open so people can see
22    justice being done.  But you have a special role.  You
23    are the jury, you are the constitutional officers in
24    this case, and what that means is that you can only be
25    influenced in this case by the evidence that you see and

1    hear from the witnesses and if there are any exhibits in

2    this case.  That's it.

3         Now, of course you may talk about the schedule and

4    let me rehearse the schedule for you again.  We'll sit

5    all this week, Tuesday, but starting at 10:00,

6    Wednesday, Thursday, Friday, that's Good Friday, we're

7    definitely stopping at 1:00, and the case won't be done

8    by then, but maybe it will be done, to get a three-day

9    weekend on the 22nd, Tuesday, or the 23rd.  Maybe.  But

10   no guarantees.  Then because of my schedule, we're off

11   until the following Wednesday, the 30th, and then surely

12   we will be done sometime the 30th, the 1st, or 2nd of

13   May.  So in these three weeks, we will surely get the

14   trial completed.  You can tell anybody that and you can

15   tell them we're stopping at 1:00, and when we

16   deliberate, we'll sit till 5:00.

17        People are going to ask you, because now you'll be

18   free to go, you can go home, you can go back to work,

19   whatever personally you decide, but when you do people

20   are going to say, "Well, what happened?" and you can

21   say, "Yeah, I went," "Yeah, they chose me," and just as

22   sure as tonight follows today, whoever you're talking to

23   is going to say to you, "What kind of case is it?"

24   "What is it?"  And that you may not talk about, not

25   because it's secret, it's not, but because you, and not

1   the person you're talking to, has been chosen as a juror

2   in this case.  If you talk to anybody about this case,

3   sure as shooting they're going to tell you what they

4   think about it.  We're not interested what they think

5   about it.  In fact that's completely improper.  They

6   don't have that constitutional responsibility.  You do.

7          Now, when it's all over, of course you can talk to

8   anyone about anything and say anything, you haven't lost

9   your freedom of speech, but while the case is going on,

10  no talking to anyone about the case, not even "It's a

11  criminal case" or "It's a civil case," nothing about the

12  case.  And that also includes, in today's marvelous

13  world, twitting or tweeting or Googling or whatever

14  people know how to do that I do not.  That's

15  communication.  That's talking about the case.  If you

16  now suddenly want to put out a tweet that you have been

17  chosen as a juror, you are talking about the case and

18  it's improper.  That's talking about it.

19         No one can communicate to you either about the

20  substance of the case.  And I mentioned Google.  These

21  are very skilled lawyers.  I know them, they're very

22  skilled.  They will do what is required as lawyers in a

23  case.  But to be fair, they have to see -- they all have

24  to see the evidence, they all can question it.  They can

25  all bring out all aspects of a thing.  So it's

```
 1   forbidden, for instance, to start looking up names on
 2   the internet or doing your own research, your own
 3   research about anything having to do with this case.
 4   I'm not saying you've got to stop going on the internet,
 5   just nothing to do with this case.  You'll get your
 6   information about this case right here in the court.
 7         So the second thing is you're not to discuss the
 8   case with anyone.
 9         And the third is somewhat counterintuitive, but
10   just as important, that while the case is going on,
11   don't talk about it among yourselves.  And you say, "Why
12   not?  We're the jury."  Yes, but you're all supposed to
13   wait until you've heard all the evidence before you
14   discuss it, because the very fact of discussing the case
15   means you're taking a slant on it.  You can't talk about
16   it unless you have a view which you're expressing.
17   Don't express any views.  Keep it to yourself, what you
18   think about the evidence.
19         The first point, keep your minds suspended, and
20   when the case is over, then emphatically we do want you
21   to talk about it.  Now I'm not saying don't talk.  Once
22   Ms. Gaudet went in there and you'll see our jury room is
23   a rather splendid room, you have a big conference table
24   and there you all are and all the jury was ready to go,
25   utterly silent.  No, no, get to know each other.  It's a
```

1    community effort.  It is direct democracy in action.

2    Just don't talk about what's going on in this room, this

3    courtroom.  Nothing.  Not how we're dressed, not why I

4    wear a robe, nothing about what's going on in this

5    courtroom.  But anything else, feel free to talk about

6    it.

7           We have back there magazines and books, which we

8    bring in.  Those are souvenirs for you.  You are welcome

9    to any of them.  You may look at them, if any of them

10   interest you, you may take them with you.  My wife will

11   bless you if you do.  There are restrooms back there.

12   It's a nice room.  We'll try not to waste your time.

13   We'll try to stick to this schedule.  We'll take a

14   shorter break tomorrow because we're going to start at

15   10:00, but the usual schedule is 9:00 in the morning, we

16   need everyone ready to come in right at 9:00, we'll go

17   an hour and 45 minutes -- I think maybe there's

18   refreshments out there, as a matter of fact, I didn't

19   know how long this was going to take.  But each day

20   we'll give you your refreshments, time enough to have a

21   cup of coffee, we'll start again at quarter after 11:00,

22   and we'll run until 1:00.

23          Now, it's the tradition in this court that once we

24   have the jury, everyone stands up for the jury.  So

25   before we recess, because what I've told you is terribly

1  important and these are rules you must follow, I remind

2  you of them by saying, "Keep your minds suspended, do

3  not discuss the case either among yourselves nor with

4  anyone else."

5        Very well.  You may stand in recess until

6  10:00 a.m. tomorrow morning.  The juror may recess.

7              (Jury leaves.)

8        THE COURT:  And just one thing.  Mr. Swomley,

9  if Mr. Hagenaars' position changes, I want to do that

10 between 9:00 and 10:00, so that can all be cleared

11 away.

12       And that's not a problem for any of you, is it?

13             MR. SWOMLEY:  No, your Honor.

14             THE COURT:  Fine.  Then we'll resume at 10:00

15 -- yes?

16             MR. GALLAGHER:  Your Honor, I'm sorry.

17             THE COURT:  No, you said you had two things?

18             MR. GALLAGHER:  It's one thing now.

19             THE COURT:  Good.

20             MR. GALLAGHER:  So timing and the Court's

21 order on the wiretap.  We have some additional witnesses

22 tomorrow, we have one coming from Canada, Mr. Barry

23 Stuart, who would testify along the lines that the

24 affidavit was submitted to the Court.  Now, I don't want

25 to waste the Court's time, or the witness's time, but if

1    that witness is still necessary, he will be here, but if

2    he's not, um, I just want to --

3                THE COURT:  Well, I don't compel

4    stipulations.  If there are stipulations, it would take

5    care of it?  Well, what do you want me to do?

6                MR. GALLAGHER:  Well, if the Court is

7    satisfied that since the foundation does not have to be

8    based upon the rules of evidence, that an affidavit

9    would be sufficient, then I would not bring him down

10   here.

11               THE COURT:  Well, then you'd better bring him

12   here.

13               MR. GALLAGHER:  Oh, okay.

14               THE COURT:  Well, to be clear, and I intend to

15   write an opinion.  I think the statute was violated.  I

16   think the explanation is marginally satisfactory.  Under

17   the framework of the law, then the proper result is that

18   you're allowed to use the wiretap.  You're allowed to

19   use the wiretap.  What I said at the very first hearing

20   that dealt with this issue still goes, if they want to

21   pick at the evidentiary foundation of it, I'm going to

22   allow it, and I have made no determination because the

23   weight to be accorded to it is ultimately for the jury.

24   But that's a tactical choice of theirs.

25               Does that answer it?

1           MR. GALLAGHER:  Yes, your Honor.  Thank you.

2           THE COURT:  Very well.

3           MR. APFEL:  One very quick question, your

4    Honor?  Time limit for openings, 20 minutes?

5           THE COURT:  No, 15.  But you can agree among

6    yourselves and so long as you don't exceed 45, they get

7    45.

8       We'll recess until 10:00 tomorrow morning.

9       But, Mr. Swomley, notify the Clerk.  I'll be here

10   before 9:00 in the courthouse.

11           (Ends, 2:00 p.m.)

12

13              C E R T I F I C A T E

14

15       I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

16   do hereby certify that the foregoing record is a true

17   and accurate transcription of my stenographic notes,

18   before Judge William G. Young, on Monday, April 14,

19   2014, to the best of my skill and ability.

20

21

22   /s/ Richard H. Romanow 09-24-14
     _____
23   RICHARD H. ROMANOW  Date

24

25